**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In Re: Overby-Seawell Company Customer Data Security Breach Litigation | Case No. 1:23-md-03056-SDG |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................1

II.  BACKGROUND .................................................................................................2

III. TERMS OF THE SETTLEMENT .......................................................................4

   A.   Settlement Benefits ....................................................................................4

      1.   Compensation for Ordinary Losses.................................................5

      2.   Compensation for Lost Time ...........................................................5

      3.   Compensation for Extraordinary Losses..........................................6

      4.   Credit Monitoring............................................................................6

      5.   Cash Compensation.........................................................................7

   B.   Notice and Settlement Administration .......................................................7

   C.   Opt-Outs and Objections ...........................................................................8

   D.   Attorneys' Fees, Costs, and Expenses, and Possible Service Award ............9

   E.   Release ......................................................................................................9

IV. ARGUMENT....................................................................................................10

   A.   The Settlement Class Should be Certified ................................................11

      1.   The Settlement Class Satisfies Rule 23(a)'s Requirements.......................12

      2.   The Settlement Class Satisfies Rule 23(b)(3)'s Requirements .................16

   B.   The Settlement Should be Preliminarily Approved .......................................19

      1.   The Settlement Class is Adequately Represented.....................................20

      2.   The Settlement Was Negotiated at Arm's Length .....................................21

      3.   The Settlement Benefits are Excellent Compared to the Costs, Risks, and Delays of Further Litigation...................................................................21

      4.   Class Members are Treated Equitably Under the Settlement ....................23

   C.   The Court Should Approve the Proposed Notice .........................................23

V.  CONCLUSION .................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Sentinel Offender Servs., LLC*,
No. 1:17-cv-2813-WSD, 2018 U.S. Dist. LEXIS 78841
(N.D. Ga. May 10, 2018) ....................................................................12, 13, 18

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................18

*Ault v. Walt Disney World Co.*,
692 F.3d 1212 (11th Cir. 2012) ....................................................................14

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ..........................................................11, 19, 20

*Carr v. Ocwen Loan Servicing, LLC*,
No. 1:13-cv-00732-CAP-JCF, 2013 U.S. Dist. LEXIS 204045
(N.D. Ga. Nov. 26, 2013) ..........................................................................10, 12

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
258 F.R.D. 545 (N.D. Ga. 2007) ..........................................................11, 16, 20

*Cox v. Am. Cast Iron Pipe Co.*,
784 F.2d 1546 (11th Cir. 1986) ....................................................................12

*Diakos v. HSS Sys., LLC*,
137 F. Supp. 3d 1300 (S.D. Fla. 2015) .......................................................11, 14

*Edwards v. Horizon Staffing, Inc.*,
No. 1:13-cv-3002-WSD, 2015 U.S. Dist. LEXIS 195895
(N.D. Ga. Jan. 2, 2015) .................................................................12, 13, 14, 17

*Fam. Med. Pharmacy, LLC v. Perfumania Holdings*,
No. 15-0563-WS-C, 2016 U.S. Dist. LEXIS 173255
(S.D. Ala. Dec. 14, 2016) .............................................................................24

*Faught v. Am. Home Shield Corp.*,
 668 F.3d 1233 (11th Cir. 2011) .........................................................................20

*Flournoy v. Honeywell Int'l, Inc.*,
 239 F.R.D. 696 (S.D. Ga. 2006) ........................................................................11

*George v. Acad. Mortg. Corp.*,
 369 F. Supp. 3d 1356 (N.D. Ga. 2019) .............................................................10

*Hillis v. Equifax Consumer Servs.*,
 Nos. 1:04-CV-3400-TCB, 1:07-CV-314-TCB,
 2007 U.S. Dist. LEXIS 48278 (N.D. Ga. June 12, 2007) ..................................15

*In re Checking Acct. Overdraft Litig.*,
 No. 1:09-MD-02036-JLK, 2012 U.S. Dist. LEXIS 56115
 (S.D. Fla. Apr. 20, 2012) ............................................................................11, 21

*Junior v. Infinity Ins. Co.*,
 No: 6:18-cv-1598-Orl-78EJK, 2020 U.S. Dist. LEXIS 248523
 (M.D. Fla. June 5, 2020) ...................................................................................16

*LaBauve v. Olin Corp.*,
 231 F.R.D. 632 (S.D. Ala. 2005) .......................................................................12

*London v. Wal-Mart. Inc.*,
 340 F.3d 1246 (11th Cir. 2003) .........................................................................14

*Smith v. Wm. Wrigley Jr. Co.*,
 No. 09-60646-CIV-COHN/SELTZER, 2010 U.S. Dist. LEXIS 67832
 (S.D. Fla. June 15, 2010) ............................................................................10, 14

*Strube v. Am. Equity Inv. Life Ins. Co.*,
 226 F.R.D. 688 (M.D. Fla. 2005) .................................................................15, 17

*Tweedie v. Waste Pro of Fla., Inc.*,
 No. 8:19-cv-1827-TPB-AEP, 2021 U.S. Dist. LEXIS 85018
 (M.D. Fla. May 4, 2021) ...........................................................................17, 19, 22

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ........................................................................17

*Valley Drug Co. v. Geneva Pharms., Inc.*,
    350 F.3d 1181 (11th Cir. 2003) .......................................................15

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) .......................................................16

*Williams v. Mohawk Indus., Inc.*,
    568 F.3d 1350 (11th Cir. 2009) ..................................................13, 17

**Statutes**

73 P.S. §§ 201–1 *et seq.* .........................................................................3

**Rules**

Fed. R. Civ. P. 23 ...........................................................................*passim*

iv

## I.      INTRODUCTION

Plaintiff Kathy Keefer, individually and as Class Representative[1] ("Plaintiff"), and Defendant Fulton Bank, N.A. ("Fulton" or "Defendant") (and together with Plaintiff, the "Parties") have settled claims against Fulton arising out of a data security incident that occurred between May 26, 2022 and July 5, 2022. The proposed settlement, as set forth in the executed Settlement Agreement and Release ("Settlement"), attached as Exhibit 1, resolves Plaintiff's claims against Fulton on a class-wide basis, is fair, reasonable, and adequate, and satisfies all the criteria for preliminary approval.

With this motion, Plaintiff respectfully requests that the Court: (1) conditionally certify the Settlement Class for settlement purposes; (2) name Plaintiff Kathy Keefer as Class Representative; (2) appoint Ben Barnow of Barnow and Associates, P.C., as Class Counsel; (4) grant preliminary approval of the Settlement; (5) approve the proposed Notice and direct its distribution to Settlement Class Members; (6) set deadlines for Settlement Class Members to object or opt out; and (7) schedule a final approval hearing, at which time the Court can consider whether to give final approval to the Settlement.

---

[1] Unless otherwise noted herein, capitalized terms have the same meaning given to them in the Settlement Agreement.

## II.    BACKGROUND

This action[2] arose from a data security incident that impacted the systems of Defendant Overby-Seawell Co. ("OSC"), which is Defendant Fulton's third-party vendor. OSC provides compliance, insurance, and other services to financial institutions.[3] Fulton provides certain personal data obtained from its mortgage loan customers to OSC in connection with receiving property insurance validation services.[4] Between May 26, 2022 and July 5, 2022, OSC experienced a data security incident in which an unauthorized individual accessed OSC's network systems and files containing the personal data of Plaintiff and approximately 111,663 other Fulton customers (the "Data Incident").[5] The PII disclosed in the Data Incident included names; Social Security numbers; mailing and collateral addresses; loan

---

[2] *Keefer v. Overby-Seawell Co.*, No. 1:22-cv-03708 (the "*Keefer* Action"), was originally captioned *Sheckard v. Overby-Seawell Co.* On March 10, 2023 Plaintiffs moved for leave to file an amended complaint. Mot. for Leave to File Am. Compl., No. 1:22-cv-03708 ("*Keefer* Docket"), ECF No. 33. Plaintiff's First Amended Class Action Complaint adds Plaintiff Keefer and removes Plaintiffs Scott and Margaret Sheckard. *See id.* ¶ 2. Plaintiff's Motion is currently pending. Declaration of Ben Barnow, ¶ 3.

[3] Plaintiff's Mot. for Leave to File Am. Compl., Ex. A Plaintiff's First Amended Class Action Complaint ("FAC"), *Keefer* Docket, ECF No. 33, ¶¶ 2, 14.

[4] *Id.* ¶ 3.

[5] *See id.* ¶¶ 1, 21.

information, including loan numbers, amounts, and maturity dates; insurance policy information; and phone numbers.[6]

An initial Complaint was filed in the *Keefer* Action on September 14, 2022.[7] On March 9, 2023, the Court ordered this action to be consolidated into the above-captioned multidistrict litigation.[8] On March 10, 2023, Plaintiff sought leave to file her First Amended Complaint on behalf of herself and a class of similarly situated individuals based on Fulton and OSC's alleged failure to adequately safeguard Plaintiff's and Class member's personal data, bringing claims for negligence, negligence per se, breach of implied contract, unjust enrichment, and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1 *et seq.*[9]

Beginning in December, 2022, the Parties engaged in extensive arm's length negotiations concerning a possible settlement of this matter. Declaration of Ben Barnow ("Barnow Decl."), attached as Exhibit 2, ¶ 3. Plaintiff served informal discovery on Fulton, and Fulton responded. *Id.* The Parties also discussed their respective positions on the merits of the claims and class certification. *Id.*

---

[6] *Id.* ¶ 23.
[7] Class Action Complaint, *Keefer* Docket, ECF No. 1; *see also supra* note 2.
[8] Order Granting Mot. to Consol. Cases, *Keefer* Docket, ECF No. 34.
[9] FAC ¶¶ 51–98; *see also supra* note 2.

The Parties recognize and acknowledge the benefits of settling this case. Plaintiff and Class Counsel recognizes that all litigation has risks, and that discovery, class certification proceedings, and trial will be time-consuming and expensive for both parties and are not without substantial risk. *Id.* ¶ 6. Plaintiff and Class Counsel also recognize the potential benefits of early resolution, including that Settlement Class Members will receive proper identity theft protections and compensation far sooner and with certainty. *Id.* ¶ 7. Plaintiff and Class Counsel have, therefore, determined that the Settlement is fair, reasonable, and adequate. *Id.* ¶ 4.

Defendant maintains that it has a number of meritorious defenses to the claims asserted in this action and denies any and all liability. Nevertheless, Defendant recognizes the risks and uncertainties inherent in litigation, the significant expense associated with defending class actions, the costs of any appeals, and the disruption to its business operations. Accordingly, Defendant believes that the Settlement is likewise in its best interests. Defendant does not dispute that the Settlement Class should be certified for the purposes of settlement only.

## III.   TERMS OF THE SETTLEMENT

### A.   Settlement Benefits

The Settlement requires Fulton to pay $750,000.00 into the Settlement Fund. Settlement, ¶ 13. Compensation will be paid from the Settlement Fund to Settlement

Class Members who submit a timely and valid claim form approved by the Settlement Administrator. *See id.* ¶ 23. Claims will be subject to review for completeness and plausibility by the Settlement Administrator. *See id.* ¶ 34. For claims deemed invalid, the Settlement Administrator will provide claimants an opportunity to cure. *Id.* ¶ 35.

### 1. Compensation for Ordinary Losses

Settlement Class Members may claim up to $150.00 by submitting a valid and timely claim form and supporting documentation for demonstrable ordinary losses incurred more likely than not as a result of the Data Incident. *Id.* ¶ 24(a). Ordinary losses include out-of-pocket expenses incurred as a direct result of the Data Incident, as well as fees for credit reports, credit monitoring, or other identity theft insurance product purchased between July 5, 2022, and the end of the Claims Period. *Id.* ¶ 24(a)(i)–(ii).

### 2. Compensation for Lost Time

Settlement Class Members may claim up to 4.5 hours of lost time spent dealing with the Data Incident at $25.00 per hour, if they spent at least one-half hour dealing with the Data Incident. *Id.* ¶ 24(b). All such lost time must be reasonably described and supported by an attestation that the time spent was related to the Data Incident. *Id.*

### 3.    Compensation for Extraordinary Losses

Settlement Class Members may claim up to $5,000.00 for Extraordinary Losses by submitting a valid and timely claim form supported by an attestation and documentation supporting the amount claimed. *Id.* ¶ 24(c). The Settlement Administrator will "employ heightened scrutiny" when assessing claims under this category. *Id.* The claim must demonstrate:

> (i) The loss is an actual, documented, and unreimbursed monetary loss;
> (ii) The loss was more likely than not the result of the Data [Incident];
> (iii) The loss is not already covered by the 'Compensation for Ordinary Losses' category; and (iv) the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance and other available insurance.

*Id.*

### 4.    Credit Monitoring

Settlement Class Members may claim 24 months of three-bureau credit and identity theft monitoring. The credit monitoring will include real-time credit monitoring at all three major credit bureaus; identity theft insurance of $1,000,000.00 with no deductible; and access to fraud resolution agents to help avoid identity theft. *Id.*

### 5.      Cash Compensation

In the alternative to all of the compensation described above, Settlement Class Members may select a one-time cash payment estimated to be approximately $60.00, subject to proration depending on the number of claims filed. *Id.* ¶ 25.

### B.      Notice and Settlement Administration

After a competitive bidding process, the Parties have agreed to the appointment of KCC Class Action Services, LLC ("KCC") as Settlement Administrator. *See* Declaration of Christie K. Reed ("KCC Decl."), attached as Exhibit 3. The Settlement Administrator will, subject to Court approval, provide notice to the Class in the manner set forth below. Settlement, ¶ 19. The cost of such Notice will be paid from the Settlement Fund. Settlement, ¶ 16.

Direct notice will be sent to Settlement Class Members via First Class U.S. Mail to Class Members for whom the Settlement Administrator has a valid address. Settlement, ¶¶ 44, 46; KCC Decl., ¶¶ 10–11. The Settlement Administrator will perform a National Change of Address search on the Class List, as well as skip-tracing for any returned mail, and shall re-mail notice to any Settlement Class Members for whom the Postal Service provides a forwarding address. Settlement, ¶¶ 29, 45–47; KCC Decl., ¶¶ 12–13. The Settlement Administrator will also create a publicly available website devoted to providing relevant information related to the

7

case and settlement, and through which Class Members can submit their claims. Settlement, ¶¶ 50–51; KCC Decl., ¶ 15. The Settlement Administrator will review and evaluate each Claim Form, including any required documentation submitted, for validity, timeliness, and completeness. Settlement, ¶ 34; KCC Decl., ¶ 17.

### C.    Opt-Outs and Objections

The Short Form Notice will inform Settlement Class Members of their right to request exclusion from the Settlement Class and not to be bound by the Settlement if the Settlement Class Member personally completes and mails an Opt-Out Request to the Settlement Administrator at the address set forth in the Short Form Notice. Settlement, ¶ 56. A valid Opt-Out Request must (a) state the Class Member's name, address, and phone number; (b) be signed by the Class Member or person authorized by law to sign on the Class Member's behalf; and (c) unequivocally state the Class Member's desire to be excluded from the Settlement and Settlement Class. *Id.* ¶ 57.

Settlement Class Members may object to the Settlement by filing a written objection with the Court and serving the objection to Class Counsel and Fulton's Counsel. *Id.* ¶ 62. Objections must "(i) set forth the Settlement Class Member's full name, current address, and telephone number; (ii) contain the Settlement Class Member's original signature; (iii) state that the Settlement Class Member objects to the Settlement, in whole or in part; (iv) set forth a statement of the legal and factual

basis for the Objection; and (v) provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position." *Id.* ¶ 63.

**D.     Attorneys' Fees, Costs, and Expenses, and Possible Service Award**

Class Counsel will seek Court approval of an award of attorneys' fees not to exceed $187,500, plus reasonable costs and expenses incurred in prosecuting the litigation. *Id.* ¶ 68. Class Counsel may, depending on the outcome of the plaintiff's appeal in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), also request the Court to approve a Service Award of $1,000.00 for Plaintiff in recognition of Plaintiff's efforts in the litigation and on behalf of the Settlement Class. *Id.* ¶ 69; Barnow Decl. ¶ 8.

**E.     Release**

In exchange for the relief described above, Class Members who do not opt out of the Settlement will fully release Fulton for all Released Claims, including:

> [A]ny and all past, present, and future claims, counterclaims, lawsuits, set-offs, costs, expenses, attorneys' fees, costs, and expenses, losses, rights, demands, charges, complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, known, unknown, or capable of being known, in law or equity, fixed or contingent, accrued or unaccrued and matured or not matured that arise out of, are connected to, or relate in any way to the Data Incident, including such claims that were or could have been asserted in the Litigation.

*Id.* ¶¶ 88–89. The Release does not include or release claims against OSC or related persons or entities. *Id.*

## IV.   ARGUMENT

A class action may not be settled without the Court's approval. Fed. R. Civ. P. 23(e). "Judicial review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646-CIV-COHN/SELTZER, 2010 U.S. Dist. LEXIS 67832, at *5 (S.D. Fla. June 15, 2010). "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Id.* at *5–*6. When "the Court is presented with a proposed settlement prior to a decision on class certification, the Court must determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23." *Carr v. Ocwen Loan Servicing, LLC*, No. 1:13-cv-00732-CAP-JCF, 2013 U.S. Dist. LEXIS 204045, at *3 (N.D. Ga. Nov. 26, 2013).

Federal courts "have long recognized a strong policy and presumption in favor of class settlements." *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1367 (N.D. Ga. 2019). "In reviewing proposed settlements, courts should also be bear in mind the judicial policy favoring settlements." *Columbus Drywall & Insulation, Inc.*

*v. Masco Corp.*, 258 F.R.D. 545, 558 (N.D. Ga. 2007) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). District Courts have broad discretion when deciding to certify a settlement class and preliminarily approve a settlement. *Flournoy v. Honeywell Int'l, Inc.*, 239 F.R.D. 696, 698 (S.D. Ga. 2006); *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1311 (S.D. Fla. 2015).

### A.    The Settlement Class Should be Certified

"A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Diakos*, 137 F. Supp. 3d at 1306 (S.D. Fla. 2015) (quotations omitted). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class — *i.e.*, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied — except that the Court need not consider" manageability issues. *In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2012 U.S. Dist. LEXIS 56115, at *44 (S.D. Fla. Apr. 20, 2012).

The Settlement Class is defined as "all persons who provided their personal data to Fulton Bank, N.A. and were notified that their personal data may have been impacted as a result of Overby-Seawell Company's cybersecurity incident that it

discovered on or about July 5, 2022." Settlement, ¶ 10(jj). The Settlement Class should be provisionally certified because it satisfies all of Rule 23's requirements.

### 1. The Settlement Class Satisfies Rule 23(a)'s Requirements

"The requirements that must be met under Rule 23(a) are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Carr*, 2013 U.S. Dist. LEXIS 204045, at *3; *see also* Fed. R. Civ. P. 23(a).

### i. Numerosity

"To satisfy the numerosity requirement, Plaintiff must establish that the members of the proposed class are 'so numerous that joinder of all members is impracticable.'" *Edwards v. Horizon Staffing, Inc.*, No. 1:13-cv-3002-WSD, 2015 U.S. Dist. LEXIS 195895, at *8 (N.D. Ga. Jan. 2, 2015) (quoting Fed. R. Civ. P. 23(a)(1)). Numerosity is generally satisfied when a class contains more than forty members. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Here, the putative Settlement Class is composed of approximately 111,663 persons, FAC ¶ 45, well over the general 40-member guideline, and joinder of so many individuals is clearly impracticable. *See LaBauve v. Olin Corp.*, 231 F.R.D. 632, 665 (S.D. Ala. 2005) (The "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied."). As such, the proposed Settlement Class satisfies Rule 23(a)'s numerosity requirement. *See, e.g.*, *Adams v. Sentinel Offender*

*Servs., LLC*, No. 1:17-cv-2813-WSD, 2018 U.S. Dist. LEXIS 78841, at \*11 (N.D. Ga. May 10, 2018) (finding numerosity satisfied by 2,352-member settlement class); *Edwards*, 2015 U.S. Dist. LEXIS 195895, at \*8 (276-member settlement class).

### ii.   Commonality

"To satisfy the commonality requirement, Plaintiff must show that questions of law or fact are common to the entire class." *Adams*, 2018 U.S. Dist. LEXIS 78841, at \*11 (citing Fed. R. Civ. P. 23(a)(2)). "Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Id.* (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1354 (11th Cir. 2009)). There are numerous questions of law or fact common to all Settlement Class Members, including: (a) whether Fulton violated common law duties and breached an implied contract with its customers; (b) whether Fulton failed to properly secure and protect Settlement Class Members' PII; and (c) whether Settlement Class Members are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief. As such, the commonality requirement is satisfied.

### iii.   Typicality

"To satisfy the typicality requirement, the claims of the class representative must be typical of the claims of the class members. *Id.* at \*12 (citing Fed. R. Civ. P.

13

23(a)(3)). A class representative's claims are typical if they "arise from the same event or pattern or practice and are based on the same legal theory" as claims of Class Members. *Id.* (quoting *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012)). Here, Plaintiff's injuries and claims arise out of the same Data Incident that impacted all Settlement Class Members, and her claims are based on the same legal theories as Settlement Class Members' potential claims. Plaintiff, like Settlement Class Members, received a notice letter indicating her personal information was included in the Data Incident. *See* FAC ¶ 8; Settlement, ¶ 10(jj). Plaintiff's claims are typical of those of Settlement Class Members. *See Diakos*, 137 F. Supp. 3d at 1309 (typicality satisfied where plaintiff was a member of the settlement class and suffered the same injury as class members).

### iv.    Adequacy of Representation

"To satisfy the adequacy of representation requirement, Plaintiff must show that she 'will fairly and adequately protect the interests of the class.'" *Edwards*, 2015 U.S. Dist. LEXIS 195895, at *10 (quoting Fed. R. Civ. P. 23(a)(4)). "This requirement applies to both the named plaintiffs and their counsel." *Smith*, 2010 U.S. Dist. LEXIS 67832, at *12 (citing *London v. Wal-Mart. Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003)). Adequacy of representation involves two questions: "(1) whether any substantial conflicts of interest exist between the representatives and the class;

14

and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Plaintiff and her counsel have adequately represented the Class.

Plaintiff came forward and agreed to represent the Class, and has been involved in this matter since that time by reviewing and approving court filings, corresponding with counsel as appropriate during the course of the litigation, and reviewing and evaluating the Settlement Agreement. Plaintiff has no conflicts of interest with Class Members, and as a Settlement Class Member she shares the common interest of pursuing this litigation to a favorable resolution. *See Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 696 (M.D. Fla. 2005) ("[W]here adequacy of representation is considered in the settlement context, so long as all class members are united in asserting a common right . . . the class interests are not antagonistic for representation purposes." (quotations and citation omitted)).

Plaintiff's counsel are well-qualified to represent the Settlement Class. They possess significant experience in class action and data breach litigation, and have settled numerous similar cases. *See* Barnow Decl. Ex. A. They have adequately represented the Class, and will continue to do so. *See Hillis v. Equifax Consumer Servs.*, Nos. 1:04-CV-3400-TCB, 1:07-CV-314-TCB, 2007 U.S. Dist. LEXIS 48278, at *24 (N.D. Ga. June 12, 2007) ("Based upon their representation of the

class in this case and their successful representation of plaintiffs in similar litigation, Class Counsel have provided capable and adequate representation for the Settlement Class.").

### 2.      The Settlement Class Satisfies Rule 23(b)(3)'s Requirements

"If Rule 23(a)'s four prerequisites are satisfied, the district court must consider the relevant Rule 23(b) requirements." *Junior v. Infinity Ins. Co.*, No: 6:18-cv-1598-Orl-78EJK, 2020 U.S. Dist. LEXIS 248523, at *12 (M.D. Fla. June 5, 2020) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009)). Here, Plaintiff seeks certification of the Settlement Class under Rule 23(b)(3). "Rule 23(b)(3) asks whether: (1) issues of law and fact common to members of the class predominate over questions only affecting individual members; and (2) whether a class action is the superior method of resolving the dispute." *Columbus Drywall*, 258 F.R.D. at 556 (citing Fed. R. Civ. P. 23(b)(3)).

### i.      Common Questions Predominate

"Rule 23(b)(3) requires a finding that 'questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Junior*, 2020 U.S. Dist. LEXIS 248523, at *13 (quoting Fed. R. Civ. P. 23(b)(3)). A common question is one that "can be resolved by the same evidence for each class member, or it can be proven by generalized, class-wide proof." *Id.* (citing *Tyson*

*Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and . . . entitlement to . . . relief." *Edwards*, 2015 U.S. Dist. LEXIS 195895, at *11 (second alteration in original) (quoting *Williams*, 568 F.3d at 1357).

Commons questions clearly predominate here. Plaintiff's and Class Members' claims all arise out of the Data Breach, and Fulton's alleged wrong-doings apply to all Class Members. *See Strube*, 226 F.R.D. at 696–97 (finding predominance where defendant's wrongful conduct was "common to all class members"); *Edwards*, 2015 U.S. Dist. LEXIS 195895, at *11 (finding predominance where "Settlement Class Members assert[ed] that they were harmed by the same conduct"). Common questions include whether Fulton had a duty to protect the personal data of Plaintiff and Class Members, and whether Fulton breached that duty; whether an implied contract was formed between the Parties, and whether Fulton breach that implied contract; whether Fulton engaged in deceptive or unfair acts and practices in violation of Pennsylvania law; and whether and to what extent Plaintiff and Class Members are entitled to damages or other relief. These shared issues of law and fact are based on the same alleged conduct of Fulton, and can be decided by the same evidence; therefore, predominance is satisfied. *See Tweedie*, 2021 U.S. Dist. LEXIS

85018, at *21 (predominance established where common issues could "be determined uniformly for members of the settlement class").

### ii. A Class Action is the Superior Method of Adjudication

"The second part of Rule 23(b)(3) requires that Plaintiffs establish that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Adams*, 2018 U.S. Dist. LEXIS 78841, at *16 (quoting Fed. R. Civ. P. 23(b)(3)). Rule 23(b)(3) sets forth the following factors for consideration:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

A class action is the only reasonable method to fairly and efficiently adjudicate Settlement Class Members' claims. The damages suffered by each Class Member are relatively small and are unlikely to be pursued through individual litigation. *Adams*, 2018 U.S. Dist. LEXIS 78841, at *17 ("The small recoveries that would likely be available to potential plaintiffs do not provide the incentive for any individual to bring a solo action." (quotations omitted) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997))). Indeed, "given the large number of purported class members, the similarity of the claims of all class members, and the relatively

small potential recovery in individual suits, proceeding as a class action lawsuit is superior over any other forms of litigation." *Tweedie*, 2021 U.S. Dist. LEXIS 85018, at *21–*22.

### B.    The Settlement Should be Preliminarily Approved

After "the determination that proceeding as a class action for purposes of settlement is warranted, the inquiry turns to whether the [Settlement] should be approved." *Tweedie*, 2021 U.S. Dist. LEXIS 85018, at *23. "To approve a class action settlement, a district court must determine that the settlement is fair, adequate, and reasonable and is not the result of collusion between the parties. *Id.* at *24 (citing *Bennett*, 737 F.2d at 986). In making this determination courts consider:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Eleventh Circuit has identified six additional factors to aid the Court's analysis, which Plaintiff addresses within the 23(e)(2) factors below:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and

duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.[10]

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011); *see also*

*Bennett*, 737 F.2d at 986. The Settlement is fair, reasonable, and adequate, and

should be preliminarily approved.

### 1.   The Settlement Class is Adequately Represented

As described above, Plaintiff and Plaintiff's counsel have adequately represented the Class. Plaintiff's counsel have significant experience in data breach consumer class actions such as this and are well-informed of the legal theories and claims at issue. Barnow Decl. Ex. A. Since the initiation of this litigation, Plaintiff's counsel have worked diligently to advance Plaintiff and the Settlement Class Members' interests. Barnow Decl. ¶¶ 10–11. After learning of the Data Incident, Plaintiff's counsel conducted a thorough preliminary investigation into the law and facts of the case, filed the lawsuit, engaged in informal discovery with Fulton, and negotiated the Settlement. *Id.* Plaintiff sent Fulton informal discovery requests, which Fulton responded to. Barnow Decl. ¶¶ 3–4.

---

[10] Opposition to the settlement is analyzed at the final fairness hearing, after Class Members have had an opportunity to object. *Columbus Drywall*, 258 F.R.D. at 560.

### 2.      The Settlement Was Negotiated at Arm's Length

The Settlement is the product of extensive hard-fought arm's length negotiations after a careful assessment of the strengths of Plaintiff's claims and Fulton's defenses. Barnow Decl. ¶ 5. Beginning in December, 2022, the Parties engaged in arm's length negotiations. Plaintiff's counsel are highly experienced and have negotiated settlements in many similar data breach cases. *See* Barnow Decl. Ex. A. Plaintiff served informal discovery on Fulton, which Fulton answered. Barnow Decl. ¶ 3. For several months, the Parties engaged in negotiations before coming to an agreement on the terms of the Settlement. The Settlement was not reached through fraud or collusion. This factor favors approval. *See In re Checking Acct. Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51 ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.").

### 3.      The Settlement Benefits are Excellent Compared to the Costs, Risks, and Delays of Further Litigation

The Settlement provides excellent relief to the Class, especially when weighed against the risks, costs, and delays of further litigation. Plaintiff and Plaintiff's counsel believe the claims asserted in the litigation have merit. Fulton has maintained its position that Plaintiff cannot state a claim for relief, that a class could not be certified, that it would not be found liable at trial, and that Plaintiff would not

be able to prove damages resulting from the Data Incident. While they disagree with Fulton's views, Plaintiff's counsel are mindful of the inherent problems of proof and possible defenses to the claims asserted in the litigation. They also recognize the difficulties in establishing liability on a class-wide basis through summary judgment or at trial and in achieving a result better than that offered by the Settlement here. Furthermore, the complicated legal and factual questions regarding class certification, claims, and defenses would require substantial discovery and motion practice. There is a high likelihood that the Court's judgment would be appealed and the appellate court presented with numerous issues of law. Even if Plaintiff were to succeed in obtaining all the relief she seeks, it would take considerable time, expense, and the assumption of significant risk.

Pursuing this litigation through trial and appeal would be lengthy, complex, and impose significant costs on all parties. The Settlement provides prompt, guaranteed benefits in the form of compensation for ordinary and extraordinary losses, lost time, and credit monitoring, or alternatively a cash payment. *See* Section II.A., *supra*; *see also Tweedie*, 2021 U.S. Dist. LEXIS 85018, at *33 ("Settlement Class Members also benefit from the potential receipt of a monetary payment without the expense and risks associated with litigation, including the risk of a smaller or no award."). Plaintiff's counsel have negotiated numerous data breach

22

class settlements and evaluated many settlements reached in other cases; the deal reached by the Parties here compares favorably with these settlements. *See* Barnow Decl. ¶ 22.

### 4. Class Members are Treated Equitably Under the Settlement

The Settlement also meets the final of the Rule 23(e)(2) factors, as all Settlement Class Members are given an equal opportunity to claim benefits under the Settlement. *See Millstein v. Holtz*, No. 21-CV-61179-RAR, 2022 U.S. Dist. LEXIS 233782, at *21 (S.D. Fla. Dec. 30, 2022) (holding that Rule 23(e)(2)(d) is met where distribution of benefits "will effectively benefit every member of the Class and treat them equitably relative to each other"). Specifically, each Settlement Class Member has the option to be reimbursed for documented losses and lost time as a result of the data breach in addition to obtaining credit monitoring services or they can forego those options and chose a cash payment. The Settlement meets all of the Rule 23(e)(2) and Eleventh Circuit factors for a fair, reasonable, and adequate settlement.

### C. The Court Should Approve the Proposed Notice

If the Court finds the proposed Settlement falls within the range of possible approval, the Court must "communicate the proposed settlement to the class . . . approve the proposed form of notice . . . [and] authorize the manner and form of

dissemination of the notice." *Fam. Med. Pharmacy, LLC v. Perfumania Holdings*, No. 15-0563-WS-C, 2016 U.S. Dist. LEXIS 173255, at *12 (S.D. Ala. Dec. 14, 2016). For a proposed settlement class certified under Rule 23(b)(3), the Court "must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The notice must inform Class Members of:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23 (c)(2)(B).

The proposed Notice plan satisfies all of these criteria. The Notice will inform Class Members of the substantive terms of the Settlement, their options for opting-out of or objecting to the Settlement, and how to obtain additional information about the Settlement. *See* Settlement Exs. A–C. Specifically, the Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Plaintiff's counsel's motion for award of attorneys' fees, reimbursement of costs and expenses, and Class Representative service awards. The Notice will also provide specifics on the date, time, and location of the Final Fairness Hearing and set forth the procedures and deadlines for submitting a Claim Form, opting out of the Settlement, and objecting

to the Settlement. Altogether, the Notice documents fairly apprise the Settlement Class Members of the terms of the Settlement and the options that are open to them in connection with this litigation.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order (1) conditionally certifying the Settlement Class for settlement purposes; (2) naming Plaintiff Kathy Keefer as Class Representative; (3) appointing Ben Barnow of Barnow and Associates, P.C., as Class Counsel; (4) granting preliminary approval to the Settlement; (5) approving the proposed Notice and directing its distribution to Settlement Class Members; (6) setting deadlines for Settlement Class Members to object or opt out; and (7) scheduling a final approval hearing, at which time the Court can consider whether to give final approval to the Settlement.

Dated: April 7, 2023

Respectfully submitted,

/s/ *Ben Barnow*
Ben Barnow*
Anthony L. Parkhill*
Riley W. Prince*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Tel: 312.621.2000
Fax: 312.641.5504
b.barnow@barnowlaw.com

aparkhill@barnowlaw.com
rprince@barnowlaw.com

James M. Evangelista
(GA Bar No. 707807)
**EVANGELISTA WORLEY, LLC**
500 Sugar Mill Road, Ste. 245A
Atlanta, GA 30350
(404) 205-8400
jim@ewlawllc.com

*admitted pro hac vice*

*Counsel for Plaintiff Kathy Keefer*

## **LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), undersigned counsel certifies that the foregoing brief has been prepared using Times New Roman font, 14 point.

/s/ *Ben Barnow*
Ben Barnow

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above document was served

upon all counsel of record via ECF electronic filing on April 7, 2023.


<u>/s/ *Ben Barnow*</u>
Ben Barnow