# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| KATHY KEEFER, individually, and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>OVERBY-SEAWELL COMPANY and FULTON BANK, N.A.,<br><br>   Defendants. | Civil Action No.:<br>1:22-cv-03708-SDG |

## <u>SETTLEMENT AGREEMENT</u>

DocuSign Envelope ID: 25601J0A-63E4-4DGD-89A4-E76AB3C36G7A

This Settlement Agreement ("Agreement" or "Settlement Agreement") is entered into by and between Fulton Bank, N.A. ("Fulton"), and Kathy Keefer ("Plaintiff" or "Class Representative"), both individually and on behalf of the Settlement Class, in the case of *Keefer v. Fulton Bank, N.A.*, 1:22-cv-03708-SDG, which is consolidated with *In Re: Overby-Seawell Company Customer Data Security Breach Litigation*, No. 1:23-md-03056, both currently pending in the Northern District of Georgia (the "Litigation"). Fulton and Plaintiff are each referred to as a "Party" and are collectively referred to herein as the "Parties."

## I.    RECITALS

1.      Fulton is a corporation organized and existing under the laws of Pennsylvania. Fulton's principal place of business is located at 1 Penn Square, Lancaster, PA 17602.

2.      This Litigation arises out of a data security incident, defined below as a "Data Incident," and alleges that an unauthorized third party accessed Overby-Seawell Company's ("OSC") computer systems and data, resulting in the third party's access to personal information belonging to Plaintiff and members of the Settlement Class. OSC is a company that provides various services to financial companies, such as compliance, tracking, outsourcing, and insurance services. Fulton provides certain borrower personal data to OSC in connection with receiving property insurance validation for mortgaged properties. Between May 26, 2022 and

1

July 5, 2022, unauthorized individuals had access to OSC's network systems and acquired or had access to the personal data of Plaintiff and Class members ("Data Incident").

3.      Fulton denies all claims asserted against it in the Litigation, denies all allegations of wrongdoing and liability, and denies all material allegations of the First Amended Class Action Complaint filed on March 10, 2023 ("CAC") against it regarding the Data Incident.

4.      Plaintiff and Class Counsel believe that the legal claims asserted in the Litigation have merit. Class Counsel has investigated the facts relating to the claims and defenses alleged and the underlying events in the Litigation, have made a thorough study of the legal principles applicable to the claims and defenses asserted in the Litigation, and have conducted a thorough assessment of the strengths and weaknesses of the Parties' respective positions.

5.      The Parties' desire to settle the Litigation and all claims arising out of or related to the allegations or subject matter of the CAC and Litigation on the terms and conditions set forth herein for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing to litigate the Litigation.

6.      Counsel for the Parties, each highly experienced in data breach litigation and class actions, have engaged in extensive arm's-length negotiations concerning a possible settlement of the claims asserted in the Litigation.

7.     Plaintiff and Class Counsel, on behalf of the Settlement Class, have concluded, based upon their investigation, and taking into account the contested issues involved, the expense and time necessary to prosecute the Litigation through the various phases of litigation (including potentially trial and appeal), the risks and costs associated with further prosecution of the Litigation, the uncertainties of complex litigation, the desired outcome from continued litigation, and the substantial benefits to be received pursuant to this Settlement Agreement, that a settlement with Fulton on the terms set forth herein is fair and reasonable and in the best interest of Plaintiff and the Settlement Class. Plaintiff and Class Counsel believe that the Settlement confers substantial benefits upon the Settlement Class.

8.     The Parties agree and understand that neither this Settlement Agreement, nor the Settlement it represents, shall be construed as an admission by Fulton of any wrongdoing whatsoever, including an admission of a violation of any statute or law or of liability on the claims or allegations, including class certification, in this Litigation or any other similar claims in other proceedings.

9.     The Parties, by and through their respective duly authorized counsel of record, and intending to be legally bound hereby, agree that all claims against Fulton arising out of or related to the allegations or subject matter of the CAC and Litigation, shall be settled, compromised, and dismissed, on the merits and with prejudice, upon the following terms and conditions.

## II. DEFINITIONS

10. As used herein and in the related documents attached hereto as exhibits, the following terms have the meaning specified below:

a. "Claims Deadline" means the deadline for filing claims under the Settlement set at a date certain that is exactly ninety (90) Days from the date notice of the Settlement is mailed or otherwise provided to the Settlement Class Members.

b. "Claim Form" means the form members of the Settlement Class must complete and submit on or before the Claims Deadline to be eligible for the benefits described herein, and substantially in the form of Exhibit A to this Settlement Agreement. The Claim Form shall require a sworn affirmation under penalty of perjury but shall not require a notarization or any other form of verification.

c. "Claims Period" means the period for filing claims up until a date certain no more than ninety (90) Days from the date notice is mailed or otherwise provided to the Settlement Class Members.

d. "Claimants" shall have the meaning given in Paragraph 34.

e. "Class Counsel" shall mean Ben Barnow of Barnow and Associates, P.C. located at 205 W. Randolph Street, Suite 1630, Chicago, Illinois 60606.

DocuSign Envelope ID: 25601304-63E4-4DGD-89AA-E76AD3C36C7A

f.     "Court" means the United States District Court for Northern District of Georgia.

g.     "Day(s)" means calendar days, but does not include the day of the act, event, or default from which the designated period of time begins to run. Further and notwithstanding the above, when computing any period of time prescribed or allowed by this Settlement Agreement, "Days" includes the last day of the period unless it is a Saturday, a Sunday, or a federal or Georgia state legal holiday, in which event the period runs until the end of the next day that is not a Saturday, Sunday, or federal or Georgia state legal holiday.

h.     "Data Incident" means the exposure of sensitive personal information of Plaintiff and members of the Settlement Class as a result of a third-party's unauthorized access to OSC's computer systems on or around May 26, 2022 through July 5, 2022.

i.     "Fulton's Counsel" means Christopher A. Wiech and other attorneys at Baker & Hostetler LLP, located at 1170 Peachtree Street, Suite 2400, Atlanta, GA 30309-7676.

j.     "Effective Date" means the date defined in Paragraph 95 of this Settlement Agreement.

k.      "Fee Award, Costs, and Expenses" means the amount of attorneys' fees, expenses, and reimbursement of Litigation Costs awarded by the Court to Class Counsel.

l.      "Final" with respect to a judgment or order means that all of the following have occurred: (i) the time expires for noticing any appeal; (ii) if there is an appeal or appeals, completion, in a manner that finally affirms and leaves in place the judgment or order without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration, rehearing en banc, or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) final dismissal of any appeal or the final dismissal of any proceeding on certiorari.

m.      "Final Approval Hearing" means the hearing to determine whether the Settlement should be given final approval and whether the applications of Class Counsel for attorneys' fees, costs, and expenses, and a Service Award, if it is requested, should be approved.

n.      "Final Approval Order" means the order of the Court finally approving this Settlement.

o.     "Final Judgment" means the dismissal with prejudice of the claims against Fulton in the Litigation, entered in connection with the Settlement and Final Approval Order.

p.     "Litigation" means the lawsuit entitled *Keefer v. Fulton Bank, N.A.*, 1:22-cv-03708-SDG, which is consolidated with *In Re: Overby-Seawell Company Customer Data Security Breach Litigation*, No. 1:23-md-03056, both currently pending in the Northern District of Georgia.

q.     "Litigation Costs" means costs and expenses incurred by Class Counsel in connection with commencing, prosecuting, settling the Litigation, and obtaining an order of final judgment.

r.     "Long-Form Notice" means the written notice substantially in the form of Exhibit B to this Settlement Agreement.

s.     "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) reasonable Notice and Claims Administration Costs incurred pursuant to this Settlement Agreement, (ii) any taxes owed by the Settlement Fund, (iii) any Service Award approved by the Court, and (iv) any Attorneys' Fees, Costs, and Expenses approved by the Court.

t.     "Notice and Claims Administration Costs" means all costs incurred or charged by the Settlement Administrator in connection with providing

DocuSign Envelope ID: 2E60130A-63E4-4DCB-30AA-E76A92C36G7A

notice to members of the Settlement Class and administering the Settlement. This does not include any separate costs incurred directly by Fulton or any of Fulton's agents or representatives in this Litigation.

u.      "Notice Program" means the notice program described in Section VII.

v.      "Non-Profit Residual Recipient" means a 26 U.S.C. 501(c)(3) non-profit organization agreed to by the Parties and approved by the Court.

w.      "Objection Deadline" shall have the meaning set forth in Paragraph 63 or as otherwise ordered by the Court.

x.      "Opt-Out Deadline" means the date certain that is exactly sixty (60) days from the date the Postcard Notice is mailed or as otherwise ordered by the Court.

y.      "Opt-Out Members" shall have the meaning set forth in Paragraph 56.

z.      "Parties" means Plaintiff and Fulton, collectively, and a "Party" means one of Plaintiff or Fulton.

aa.     "Plaintiff's Released Claims" means all claims and other matters released in and by Section XV of this Settlement Agreement.

bb.    "Postcard Notice" or "Short-Form Notice" means the written notice to be sent to Settlement Class Members pursuant to the Preliminary Approval Order substantially in the form of Exhibit C to this Settlement Agreement.

cc.    "Preliminary Approval Date" means the date the Preliminary Approval Order has been executed and entered by the Court.

dd.    "Preliminary Approval Order" means the order certifying the proposed Class for settlement purposes, preliminarily approving this Settlement Agreement, approving the Notice Program, and setting a date for the Final Approval Hearing.

ee.    "Released Class Claims" means all claims and other matters released in and by Section XV of this Settlement Agreement.

ff.    "Released Persons" means Fulton and its present and former parents, subsidiaries, divisions, departments, affiliates, employees, servants, members, providers, partners, principals, directors, shareholders, owners, predecessors, successors, assigns, and insurers, and each of the foregoing's former or present directors, trustees, officers, employees, representatives, agents, providers, consultants, advisors, attorneys, accountants, partners, vendors, customers, insurers, reinsurers, and subrogees. Released Persons does not include OSC or its present and former parents, subsidiaries, divisions, departments, affiliates, employees, servants, members, providers, partners, principals, directors, shareholders, owners,

predecessors, successors, assigns, and insurers, and each of the foregoing's former or present directors, trustees, officers, employees, representatives, agents, providers, consultants, advisors, attorneys, accountants, partners, vendors, customers, insurers, reinsurers, and subrogees.

gg.    "Settlement" means the settlement reflected by this Settlement Agreement.

hh.    "Settlement Administrator" means the class action settlement administrator, identified in the Motion for Preliminary Approval, that has been retained to carry out the Notice Program and administer the claims and settlement fund distribution process.

ii.    "Settlement Agreement" means this Settlement Agreement, including releases and all exhibits hereto.

jj.    "Settlement Class" means all persons who provided their personal data to Fulton Bank, N.A. and were notified that their personal data may have been impacted as a result of Overby-Seawell Company's cybersecurity incident that it discovered on or about July 5, 2022 (i.e., the Data Incident, as previously defined). Fulton's and OSC's officers and directors are excluded from the Settlement Class, as well as (i) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (ii) the judges assigned to the Litigation and to evaluate the fairness, reasonableness, and adequacy of this settlement; and (iii) any

DocuSign Envelope ID: 2E60130A-63E4-4DCB-30AA-E76A02C36C7A

other Person found by a court of competent jurisdiction to be guilty under criminal law of perpetrating, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

kk.   "Settlement Class Member[s]" means all persons who are members of the Settlement Class.

ll.   "Settlement Fund" means the non-reversionary sum of seven hundred and fifty thousand dollars and no cents ($750,000.00), to be paid by Fulton as specified in this Agreement, including any interest accrued thereon after payment.

mm.   "Settlement Website" means a dedicated website created and maintained by the Settlement Administrator, which will contain relevant documents and information about the Settlement, including this Settlement Agreement, the Postcard Notice, the Long-Form Notice, and the Claim Form, among other things.

## III.   CERTIFICATION OF THE SETTLEMENT CLASS

11.   For settlement purposes only, Plaintiff will request that the Court certify the Settlement Class.

12.   Solely for the purpose of implementing this Settlement Agreement and effectuating the Settlement, Fulton agrees to stipulate to the certification of the Settlement Class and will not oppose Plaintiff's request for certification. If this Settlement Agreement is terminated or disapproved, or if the Effective Date should

not occur for any reason, then Fulton's stipulation will be withdrawn and deemed to be of no force or effect for any purpose in this or any other proceeding.

## IV.    THE SETTLEMENT FUND

13.    The Settlement Fund: Fulton agrees to make a payment of Seven Hundred and Fifty Thousand Dollars and No Cents ($750,000.00) and deposit that payment into the Settlement Fund as follows: (i) Fulton shall pay Two Hundred Thousand Dollars and No Cents ($200,000.00) into the Settlement Fund thirty (30) calendar days after the Court enters the Preliminary Approval Order, which shall be available to cover Notice and Claims Administration Costs incurred prior to entry of the Final Approval Order and Final Judgment, (ii) Fulton shall pay the balance of the Settlement Fund, Five Hundred and Fifty Thousand Dollars and No Cents ($550,000.00), thirty (30) calendar days after the Effective Date. For the avoidance of doubt, and for purposes of this Settlement Agreement only, Fulton's liability shall not exceed Seven Hundred and Fifty Thousand Dollars and No Cents ($750,000.00) absent an express written agreement between the Parties to the contrary. The timing set forth in this provision is contingent upon the receipt of a W-9 from the Settlement Administrator for the Settlement Fund within 7 Days of the date that the Preliminary Approval Order is issued. If Fulton does not receive this information by 7 Days after the date that the Preliminary Approval Order is issued, the payments specified by

this paragraph shall be made within thirty (30) calendar days after Fulton receives this information.

14. Custody of the Settlement Fund: The Settlement Fund shall be deposited in an appropriate trust established by the Settlement Administrator but shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Agreement or returned to whom paid the Settlement Fund in the event this Agreement is voided, terminated, or cancelled.

a. In the event this Agreement is lawfully voided, terminated, or cancelled due to lack of approval from the Court or any other reason other than breach of the Agreement by Fulton: (i) the Class Representative and Class Counsel shall have no obligation to repay any of the Notice and Claims Administration Costs that have been paid or incurred in accordance with the terms and conditions of this Agreement; (ii) any amounts remaining in the Settlement Fund after payment of Notice and Claims Administration Costs paid or incurred in accordance with the terms and conditions of this Agreement, including all interest earned on the Settlement Fund net of any taxes, shall be returned

to Fulton; and (iii) no other person or entity shall have any further claim whatsoever to such amounts.

15.    Non-Reversionary: This Settlement is not a reversionary settlement. As of the Effective Date, all rights of Fulton in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is lawfully voided, cancelled, or terminated, as described in Section XIV of this Agreement. In the event the Effective Date occurs, no portion of the Settlement Fund shall ever be returned to Fulton.

16.    Use of the Settlement Fund: As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for: (i) reasonable Notice and Claims Administration Costs incurred pursuant to this Settlement Agreement as approved by the Parties and approved by the Court, (ii) any taxes owed by the Settlement Fund, (iii) any Service Award approved by the Court, (iv) any Attorneys' Fee Award, Costs, and Expenses as approved by the Court, and (v) any benefits to Settlement Class Members, pursuant to the terms and conditions of this Agreement.

17.    Financial Account: The Settlement Fund shall be an account established and administered by the Settlement Administrator, at a financial institution recommended by the Settlement Administrator and approved by Class

Counsel and Fulton, and shall be maintained as a qualified settlement fund pursuant to Treasury Regulation § 1.468 B-1, *et seq*.

18.     Payment/Withdrawal Authorization: No amounts from the Settlement Fund may be withdrawn unless (i) expressly authorized by the Settlement Agreement, and, as may be required, (ii) approved by the Court. The Parties, by agreement, may authorize the periodic payment of actual reasonable Notice and Claims Administration Costs from the Settlement Fund as such expenses are invoiced without further order of the Court. The Settlement Administrator shall provide Class Counsel and Fulton with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Settlement Fund before the Effective Date at least seven (7) business days prior to making such withdrawal or payment.

19.     Payments to Class Members: The Settlement Administrator, subject to such supervision and direction of the Court and Class Counsel as may be necessary or as circumstances may require, shall administer and oversee distribution of the Settlement Fund to Claimants pursuant to this Agreement.

20.     Treasury Regulations and Fund Investment: The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall

DocuSign Envelope ID: 2E60130A-63E4-4DCB-30A4-E76A02C36G7A

be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any taxes owed by the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation ('FDIC') at a financial institution determined by the Settlement Administrator and approved by the Parties. Funds may be placed in a non-interest-bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

21.   Taxes: All taxes owed by the Settlement Fund shall be paid out of the Settlement Fund, shall be considered a Notice and Claims Administration Cost, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for taxes (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by the Class

DocuSign Envelope ID: 2E60130A-63E4-4DCB-30A4-E76A03C36G7A

Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. The Class Representative and each Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

22.     Limitation of Liability

a.     Fulton and its counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of Class Counsel, the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns. Fulton also shall have no obligation to communicate with Class Members and others regarding amounts paid under the Settlement.

b.     The Class Representative and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the

DocuSign Envelope ID: 2E60130A-63E4-4DCB-39A4-E76A02C36G7A

Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

## V.   BENEFITS TO SETTLEMENT CLASS MEMBERS

23.    Compensation to Settlement Class Members. Settlement Class Members must timely submit a valid Claim Form in order to receive a settlement benefit. Claims will be subject to review for completeness and plausibility by the Settlement Administrator. For claims deemed invalid, the Settlement Administrator will provide claimants an opportunity to cure in the manner set forth below. Settlement Class Members may elect to file a claim for either 1) a cash payment (estimated to be approximately $60) or 2) a claim for reimbursement of certain losses and Credit Monitoring/Insurance.

24.    Reimbursement/Credit Monitoring Claims. Settlement Class Members who submit a Claim for Reimbursement/Credit Monitoring can seek reimbursement

DocuSign Envelope ID: 2E60130A-63E4-4DCB-30AA-E76A02C36C7A

for each of 1) certain ordinary losses, 2) lost time, and 3) two (2) years of 3 bureau credit monitoring and insurance, all subject to the terms explained below.

    a.  <u>Compensation For Ordinary Losses</u>. Settlement Class Members not selecting the cash payment of approximately $60, may claim up to $150.00 by submitting a valid and timely claim form and reasonable supporting documentation for ordinary losses demonstrably incurred, more likely than not, as a result of the Data Incident. Ordinary losses can arise from the following categories:

    i.  *Out-of-pocket expenses incurred* as a direct result of the Data Incident, including documented bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, gasoline for local travel, all of which must be more likely than not attributable to the Data Incident, must not have been previously reimbursed or subject to reimbursement by insurance or a third party, and that are reasonably described and supported by an attestation under penalty of perjury, which will be a part of the claim form.

    ii.  *Fees for credit reports, credit monitoring, or other identity theft insurance product* purchased between July 5, 2022, and the date of the close of the Claims Period that the claimant attests under penalty of perjury he/she incurred as a result of the Data Incident and not already paid for or reimbursed by a third

party. All such fees must be supported by reasonable documentation substantiating the full extent of the amount claimed.

b. <u>Compensation For Lost Time.</u> Settlement Class Members may claim up to 4.5 hours of lost time, at $25 an hour, if at least one-half hour of documented time was spent dealing with the Data Incident. All such lost time must be reasonably described and supported by an attestation under penalty of perjury that the time spent was reasonably incurred dealing with the Data Incident.

c. <u>Compensation For Extraordinary Losses</u>. Claims under this category must be supported by an attestation under penalty of perjury and documentation substantiating the full extent of the amount claimed. The Settlement Administrator will employ heightened scrutiny in reviewing claims for benefits under this category. Settlement Class Members may submit claims for up to $5,000 in compensation by submitting a valid and timely claim form that proves more likely than not a monetary loss directly arising from identity theft or other fraud perpetuated on or against the Settlement Class Member if:

     i. The loss is an actual, documented, and unreimbursed monetary loss;

     ii. The loss was more likely than not the result of the Data Incident;

      iii.  The loss is not already covered by the "Compensation for

Ordinary Losses" category; and

      iv.  the Settlement Class Member made reasonable efforts to

avoid, or seek reimbursement for, the loss, including but

not limited to exhaustion of all available credit monitoring

insurance and identity theft insurance and other available

insurance.

    d.  <u>Credit Monitoring and Identity Theft Insurance</u>. 24 months of 3

bureau credit and identity theft monitoring will be provided for those Settlement

Class Members who elect and submit valid claims for such monitoring/insurance.

The identity theft monitoring/insurance will have the following features:

      i.  Real time monitoring of the credit file at all three major

credit bureaus;

      ii.  Identity theft insurance (no deductible) of $1,000,000; and

      iii.  Access to fraud resolution agents to help resolve identity

thefts.

25.    Cash Compensation. In lieu of all compensation described in

Paragraph 24(a)-(d), Settlement Class Members may file a claim for a cash payment

that is estimated to be approximately $60, subject to pro rata increase or decrease as

described in Paragraph 37.

DocuSign Envelope ID: 2E60130A-63E4-4DCB-89AA-E76A93C36G7A

## VI.   SETTLEMENT ADMINISTRATION

26.    All Notice and Settlement Administration Costs will be paid from the Settlement Fund.

27.    The Parties agree to solicit competitive bids for settlement administration, including Notice and Claims Administration Costs, to rely upon Postcard Notice, and to utilize other appropriate forms of notice where practicable, all in order to contain the administration costs while still providing effective notice to the Settlement Class Members. Based on this competitive bidding process, the Parties agree to select an experienced class action settlement administrator to serve as the Settlement Administrator.

28.    The Settlement Administrator will provide written notice by United States First Class mail of the settlement terms to all Settlement Class Members for whom they are provided a valid mailing address. The Settlement Administrator shall perform skip-tracing for any returned mail and shall re-mail notice to any Settlement Class Members whose addresses are uncovered by skip-tracing. Settlement Class Members shall have sixty (60) Days from the date the notice is mailed to opt out of the Settlement Class or object to the Settlement.

29.    The Settlement Administrator shall also provide notice via publication if necessary and to the extent such notice is deemed appropriate by the Parties in

consultation with the Settlement Administrator in order to provide the best notice practicable under the circumstances.

30.    The Settlement Administrator will cause the Notice Program to be effectuated in accordance with the terms of the Settlement and any orders of the Court. The Settlement Administrator may request the assistance of the Parties to facilitate providing notice and to accomplish such other purposes as may be approved by both Class Counsel and Fulton's Counsel. The Parties shall reasonably cooperate with such requests.

31.    The Settlement Administrator will administer the claims process in accordance with the terms of the Settlement and any additional processes agreed to by both Class Counsel and Fulton's Counsel, subject to the Court's supervision and direction as circumstances may require.

32.    To make a claim, a Settlement Class Member must complete and submit a valid, timely, and sworn Claim Form. A Claim Form shall be submitted online at the Settlement Website or by U.S. mail and must be postmarked no later than the Claim Deadline.

33.    The Settlement Administrator will review and evaluate each Claim Form, including any required documentation submitted, for validity, timeliness, and completeness.

34.     If, in the determination of the Settlement Administrator, the Settlement Class Member submits a timely but incomplete or inadequately supported Claim Form, the Settlement Administrator shall give the Settlement Class Member notice of the deficiencies, and the Settlement Class Member shall have twenty-one (21) Days from the date of the written notice to cure the deficiencies. The Settlement Administrator will provide notice of deficiencies concurrently to Fulton's Counsel and Class Counsel. If the defect is not cured within the 21-Day period, then the Claim will be deemed invalid. All Settlement Class Members who submit a valid and timely Claim Form, including a Claim Form deemed defective but cured within the 21-Day period, shall be considered "Claimants."

35.     The Settlement Administrator will maintain records of all Claim Forms submitted until three hundred sixty (360) Days after entry of the Final Judgment. Claim Forms and supporting documentation may be provided to the Court upon request and to Fulton, Class Counsel, and Fulton's Counsel to the extent necessary to resolve claims determination issues pursuant to this Settlement Agreement and Settlement. Fulton or the Settlement Administrator will provide other reports or information that the Court may request or that the Court or Class Counsel may reasonably require. Class Counsel or the Settlement Administrator will provide other reports or information as Fulton may reasonably require.

36.     Subject to the terms and conditions of this Settlement Agreement, fourteen (14) Days after the Effective Date, the Settlement Administrator shall mail or otherwise provide Claimants who selected Credit Monitoring/Insurance services under Paragraph 24(d) with enrollment instructions for those services.

37.     Subject to the terms and conditions of this Settlement Agreement, fourteen (14) Days after the Effective Date, the Settlement Administrator shall mail or otherwise provide a payment via check ("Claim Check") or digital payment selected in consultation with the Settlement Administrator (collectively, "Claim Payment") to each Claimant in the amount for which each Claimant has submitted a Claim Form approved by the Settlement Administrator or by the Court, for good cause shown, in accordance with the following distribution procedures:

        a.      The Settlement Administrator will first apply the Net Settlement Fund to pay for Credit Monitoring/Insurance services as described in Paragraph 24(d) claimed by Claimants. If Net Settlement Funds remain after paying for the Credit Monitoring/Insurance services, the Settlement Administrator will next use it to pay for valid claims for Compensation for Ordinary Losses (as described in Paragraph 24(a)), Compensation for Lost Time (as described in Paragraph 24(b)), and Compensation for Extraordinary Losses (as described in Paragraph 24(c)). The amount of the Net Settlement Fund remaining after all payments for Credit Monitoring/Insurance, Compensation for Ordinary Losses, Compensation for Lost

Time, and Compensation for Extraordinary Losses are made shall be referred to as the "Post-Loss Net Settlement Fund."

b.    The Settlement Administrator shall then utilize the Post-Loss Net Settlement Fund to make all Cash Compensation payments as described in Paragraph 25. The amount of each Cash Compensation payment shall be calculated by dividing the Post-Loss Net Settlement Fund by the number of valid claims for Cash Compensation.

38.    Each Claim Check shall be mailed to the address provided by the Claimant on his or her Claim Form. All Claim Checks issued under this section shall be void if not negotiated within ninety (90) calendar days of their date of issue and shall contain a legend to that effect. Claim Checks issued pursuant to this section that are not negotiated within ninety (90) calendar days of their date of issue shall not be reissued.

39.    To the extent any monies remain in the Net Settlement Fund more than one hundred twenty (120) days after the distribution of Claim Payments to the Claimants, a subsequent payment will be evenly made to all Claimants who cashed or deposited their initial Claim Payments they received, provided that the average payment amount is equal to or greater than Three Dollars and No Cents ($3.00). The distribution of this remaining Net Settlement Fund shall continue until the average payment amount in a distribution is less than Three Dollars and No Cents ($3.00),

whereupon the amount remaining in the Net Settlement Fund, if any, shall be distributed to the Non-Profit Residual Recipient. Should any amount remain in the Net Settlement Fund following the redistributions, the parties will petition and obtain approval from the Court as to the Non-Profit Residual Recipient and to distribute the remaining funds to it.

40.    For any Claim Check returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to find a valid address and resend the Claim Check within thirty (30) Days after the check is returned to the Settlement Administrator as undeliverable. The Settlement Administrator shall only make one attempt to resend a Claim Check.

41.    No portion of the Settlement Fund shall revert or be repaid to Fulton after the Effective Date. Any residual funds remaining in the Net Settlement Fund, after all payments and distributions are made pursuant to the terms and conditions of this Agreement shall be distributed to the Non-Profit Residual Recipient, as approved by the Court.

## VII.  NOTICE TO SETTLEMENT CLASS MEMBERS

42.    The Parties agree the following Notice Program provides reasonable notice to the Settlement Class.

43.     Direct Notice shall be provided to Settlement Class Members by First Class U.S. Mail for Settlement Class Members for whom the Settlement Administrator has a valid address. Additional Notice may be provided via publication as described in Paragraph 29, to the extent such notice is deemed appropriate by the Settlement Administrator in consultation with the Parties in order to provide the best notice practicable under the circumstances.

44.     Within seven (7) Days of the entry of the Preliminary Approval Order, Fulton shall provide the Settlement Administrator and Class Counsel with the names and last-known addresses known to Fulton for the Settlement Class Members (the "Class List"). The Settlement Administrator shall, by using the National Change of Address database maintained by the United States Postal Service ("Postal Service"), obtain updates, if any, to the mailing addresses.

45.     Within twenty-one (21) Days following entry of the Preliminary Approval Order ("Notice Date"), the Settlement Administrator shall mail the Postcard Notice and Claim Form to all Settlement Class Members by first class United States mail. It has been mutually agreed by the Parties that the Settlement Administrator may rely upon Postcard Notice.

46.     If any Short-Form Notice is returned by the Postal Service as undeliverable, the Settlement Administrator shall re-mail the Postcard Notice to the forwarding address, if any, provided by the Postal Service on the face of the returned

mail. Other than as set forth above, neither the Parties nor the Settlement Administrator shall have any other obligation to re-mail Notices.

47.    The mailed notice will consist of the Postcard Notice substantially in the form of Exhibit C and the Claim Form in the form of Exhibit A. The Settlement Administrator shall have discretion to format this Postcard Notice in a reasonable manner to minimize mailing and administrative costs. Before the mailing of the Postcard Notice is commenced, Class Counsel and Fulton's Counsel shall first be provided with a proof copy (including what the items will look like in their final form) and shall have the right to inspect the same for compliance with the Settlement Agreement and the Court's orders.

48.    No later than thirty (30) Days following entry of the Preliminary Approval Order, the Settlement Administrator shall effectuate any publication notice made pursuant to Paragraph 29.

49.    No later than thirty (30) Days following entry of the Preliminary Approval Order, and prior to the mailing of the Postcard Notice and Claim Form to all Settlement Class Members, the Settlement Administrator will create a dedicated Settlement Website. The Settlement Administrator shall cause the CAC, Postcard Notice, Long-Form Notice, Claim Form, this Settlement Agreement, and other relevant settlement and court documents to be available on the Settlement Website. Any other content proposed to be included or displayed on the Settlement Website

DocuSign Envelope ID: 2E60130A-63E4-4DCB-89AA-E76A03C36C7A

shall be approved in advance by counsel for the Parties, which approval shall not be unreasonably withheld. The website address and the fact that a more detailed Long-Form Notice and a Claim Form are available through the website shall be included in the Postcard Notice.

50.     Claimants shall be able to submit their claims via the Settlement Website.

51.     The Settlement Website shall be maintained from the Notice Date until sixty (60) Days after the Claims Deadline has passed

52.     Claim Forms shall be returned or submitted to the Settlement Administrator online or via U.S. mail, postmarked by the Claims Deadline set by the Court, or be forever barred unless such claim is otherwise approved by the Court at the Final Approval Hearing, for good cause shown as demonstrated by the applicable Settlement Class Member.

53.     Prior to the Final Approval Hearing, the Settlement Administrator shall provide to Class Counsel to file with the Court, an appropriate affidavit or declaration from the Settlement Administrator respecting compliance with the Court-approved Notice Program.

## VIII. OPT-OUT PROCEDURE

54.     Each member of the Settlement Class shall have the right to request exclusion from the Settlement Class and not participate in the Settlement Agreement, as provided for in the Preliminary Approval Order.

55.     The Short-Form Notices shall inform each Settlement Class Member of his or her right to request exclusion from the Settlement Class and not to be bound by this Settlement Agreement, if, before the Opt-Out Deadline, the Settlement Class Member personally completes and mails a request for exclusion ("Opt-Out Request") to the Settlement Administrator at the address set forth in the Short-Form Notices.

56.     For a Settlement Class Member's Opt-Out Request to be valid, it must (a) state his or her full name, address, and telephone number; (b) contain the Settlement Class Member's personal and original signature (or the original signature of a person authorized by law, such as a trustee, guardian, or person acting under a power of attorney to act on behalf of the Settlement Class Member with respect to a claim or right such as those in the Litigation); and (c) state unequivocally the Settlement Class Member's intent to be excluded from the Settlement Class and from the Settlement. The Settlement Administrator shall promptly inform Class Counsel and Fulton's Counsel of all valid and timely Opt-Out Requests, with all such Settlement Class Members being referred to herein as "Opt-Out Member(s)."

57.     Opt-Out Members shall receive no benefit or compensation under this Settlement Agreement and shall have no right to object to the proposed Settlement Agreement or address the Court at the Final Approval Hearing.

58.     A request for exclusion that does not comply with all of the foregoing, that is not postmarked by the Opt-Out Deadline, or that is sent to an address other than that set forth in the Short-Form Notices shall be invalid, and that Settlement Class Member shall remain in and be treated as being in the Settlement Class and as being bound by this Settlement Agreement and the release contained herein.

59.     Prior to the Final Approval Hearing, the Settlement Administrator shall create a comprehensive list of all Opt-Out Members for submission to the Court and to be provided to Class Counsel and Fulton's Counsel.

60.     Opt-Out Members shall not (a) be bound by any orders or judgments entered in the Litigation or relating to the Settlement; (b) be entitled to relief under, or be affected by, the Settlement Agreement; (c) gain any rights by virtue of the Settlement Agreement; or (d) be entitled to object to any aspect of the Settlement.

## IX.    OBJECTIONS TO THE SETTLEMENT

61.     Any Settlement Class Member who wishes to object to the proposed Settlement must file with the Court and serve a written objection(s) to the Settlement ("Objection(s)") to Class Counsel and Fulton's Counsel, at the addresses set forth in the Long-Form Notice via First Class U.S Mail.

62.     Each Objection must (i) set forth the Settlement Class Member's full name, current address, and telephone number; (ii) contain the Settlement Class Member's original signature; (iii) state that the Settlement Class Member objects to the Settlement, in whole or in part; (iv) set forth a statement of the legal and factual basis for the Objection; and (v) provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position.

63.     Objections must be filed with the Court and served on Class Counsel and Fulton's Counsel no later than sixty (60) Days after the Notice Date (the "Objection Deadline"). The Objection Deadline shall be included in the Short-Form and Long-Form Notices.

64.     Class Counsel and Fulton's Counsel may, but need not, respond to the Objections, if any, by means of a memorandum of law served prior to the Final Approval Hearing.

65.     An objecting Settlement Class Member has the right, but is not required, to attend the Final Approval Hearing. If an objecting Settlement Class Member intends to appear at the Final Approval Hearing, either with or without counsel, he or she must also file a notice of appearance with the Court (as well as serve the notice on Class Counsel and Fulton's Counsel) by the Objection Deadline.

a.     If the objecting Settlement Class Member intends to appear at the Final Approval Hearing through counsel, he or she must also identify the attorney(s)

representing the objecting Settlement Class Member who will appear at the Final Approval Hearing and include the attorney(s) name, address, phone number, e-mail address, state bar(s) to which counsel is admitted, as well as associated state bar numbers.

b.      Any Settlement Class Member who fails to timely file and serve an Objection and notice, if applicable, of his or her intent to appear at the Final Approval Hearing in person or through counsel pursuant to this Settlement Agreement, as detailed in the Long-Form Notice, and otherwise as ordered by the Court, shall not be permitted to object to the approval of the Settlement at the Final Approval Hearing and shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement by appeal or other means.

66.    Any Settlement Class Member who does not submit a timely Objection in complete accordance with this Settlement Agreement, the Long-Form Notice, and otherwise as ordered by the Court, shall not be treated as having filed a valid Objection to the Settlement and shall forever be barred from raising any objection to the Settlement.

## X.    ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARD

67.    Class Counsel shall request the Court to approve an award of attorneys' fees not to exceed $187,500 and reasonable costs and expenses incurred in prosecuting the litigation. Class Counsel's attorneys' fees, costs, and expenses

awarded by the Court shall be paid no later than twenty-one (21) Days after the Effective Date. For the avoidance of doubt, the Court-approved amount shall be paid from the Settlement Fund. The Parties did not discuss payment of attorneys' fees, costs, and expenses until after they agreed on all materials terms of relief to the Settlement Class.

68.    Class Counsel may request the Court to approve a Service Award of $1,000 for Class Representative, which award is intended to recognize Class Representative for her efforts in the litigation and commitment on behalf of the Settlement Class ("Service Award"). In *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020), the Eleventh Circuit Court of Appeals held that incentive awards for representative plaintiffs in class action lawsuits are prohibited. On October 21, 2022, Petitioner Charles Johnson filed a Petition for a Writ of Certiorari to the United States Supreme Court (Case No. 22-389) seeking review of this issue. In the event the United States Supreme Court reverses the decision of the Eleventh Circuit prior to the final fairness hearing scheduled in this matter, Plaintiff may seek a Service Award in connection with approval of this settlement.  If approved by the Court, the Service Award will be paid no later than twenty-one (21) Days after the Effective Date. For the avoidance of doubt, the Court approved amount shall be paid from the Settlement Fund. The Parties did not discuss or agree upon payment of a Service Award until after they agreed on all materials terms of relief to the Settlement Class.

69.     Class Counsel will file applications with the Court for the requested Service Award (if applicable) and attorneys' fees, costs, and expenses, and a motion in support of the final approval, at least fourteen (14) Days prior to the Objection Deadline.

70.     The Parties agree that the Court's approval or denial of any request for a Service Award or attorneys' fees, costs, and expenses, are not conditions to this Settlement Agreement and are to be considered by the Court separately from final approval, reasonableness, and adequacy of the Settlement. Any reduction to the Service Award or award of attorneys' fees, costs, and expenses shall not operate to terminate or cancel this Settlement Agreement.

## XI.    NOTICES

71.     All notices to the Parties required by the Settlement Agreement shall be made in writing and communicated by First Class U.S. mail to the following addresses:

All notices to Class Counsel or Plaintiff shall be sent to:

Ben Barnow
Barnow and Associates, P.C.
205 W. Randolph Street, Suite 1630
Chicago, Illinois 60606
Tel: (312) 621-2000

All notices to Fulton's Counsel or Fulton shall be sent to:

Christopher A. Wiech
Baker & Hostetler LLP

DocuSign Envelope ID: 2E60130A-63E4-4DCB-30AA-E76A03C36C7A

1170 Peachtree Street Northeast, Suite 2400
Atlanta, GA 30309-7676
Tel.: 404-459-0050

72.     Other than attorney-client communications or communications otherwise protected from disclosure pursuant to law or rule, the Parties shall promptly provide to each other copies of comments, Objections, Opt-Out Requests, or other documents or filings received from a Settlement Class Member as a result of the Notice Program.

## XII.   SETTLEMENT APPROVAL PROCESS

73.     After execution of this Settlement Agreement, the Parties shall promptly move the Court to enter the Preliminary Approval Order, which:

   a.     Preliminarily approves this Settlement Agreement;

   b.     Certifies the Settlement Class;

   c.     Finds the proposed Settlement is sufficiently fair, reasonable, adequate, and in the best interests of the Settlement Class;

   d.     Finds the Notice Program constitutes valid, due, and sufficient notice to the Settlement Class Members, and constitutes the best notice practicable under the circumstances, complying fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, and any other applicable law and that no further notice to the Class is required beyond that provided through the Notice Program;

e.  Appoints the Settlement Administrator in accordance with the provisions of Section VI;

f.  Directs the Settlement Administrator to provide notice to Settlement Class Members in accordance with the Notice Program provided for in this Settlement Agreement;

g.  Approves the Claim Form and directs the Settlement Administrator to administer the Settlement in accordance with the provisions of this Settlement Agreement;

h.  Approves the Opt-Out and Objection procedures as outlined in this Settlement Agreement;

i.  Schedules a Final Approval Hearing to consider the final approval, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved by the Court; and

j.  Contains any additional provisions agreeable to the Parties that might be necessary or advisable to implement the terms of this Settlement Agreement and the Settlement.

## XIII. FINAL APPROVAL HEARING

75.  The Parties will recommend that the Final Approval Hearing shall be scheduled no earlier than one hundred (100) Days after the entry of the Preliminary Approval Order.

76.     The Parties may file a response to any objections in further support of Final Approval no later than fourteen (14) Days after the Objection Deadline or after receipt of any timely submitted objection, whichever is the later. In their discretion, the Parties may respond to late-filed objections, as they deem appropriate.

77.     Any Settlement Class Member who wishes to appear at the Final Approval Hearing, whether pro se or through counsel, must, by the Objection Deadline, either mail or hand-deliver to the Court or file a notice of appearance in the Litigation, take all other actions or make any additional submissions as may be required in the Long-Form Notice or as otherwise ordered by the Court, and mail that notice and any other such pleadings to Class Counsel and Fulton's Counsel as provided in the Long-Form Notice.

78.     The Parties shall ask the Court to enter a Final Approval Order and Judgment which includes the following provisions:

a.      A finding that the Notice Program fully and accurately informs all Settlement Class Members entitled to notice of the material elements of the Settlement, constitutes the best notice practicable under the circumstances, constitutes valid, due, and sufficient notice, and complies fully Fed. R. Civ. P. 23, the United States Constitution, and any other applicable law;

b.      A finding that after proper notice to the Class, and after sufficient opportunity to object, no timely objections to this Settlement Agreement have been made, or a finding that all timely objections have been considered and denied;

c.      Approval of the Settlement, as set forth in the Settlement Agreement, as fair, reasonable, adequate, and in the best interests of the Class, in all respects, finding that the settlement is in good faith, and ordering the Parties to perform the Settlement in accordance with the terms of this Settlement Agreement;

d.      A finding that neither the Final Judgment, the Settlement, nor the Settlement Agreement shall constitute an admission of liability by the Parties, or any liability or wrongdoing whatsoever by any Party;

e.      Subject to the reservation of jurisdiction for matters discussed in subparagraph (g) below, a dismissal with prejudice of claims pending against Fulton in the Litigation;

f.      A finding that Plaintiff shall as of the entry of the Final Judgment, conclusively be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from the Plaintiff's Released Claims;

g.      A finding that all Settlement Class Members not opting out or who have not properly opted out of the Settlement Class shall, as of the entry of the Final Judgment, conclusively be deemed to have fully, finally, and forever

DocuSign Envelope ID: 2E60130A-63E4-4DCB-39AA-E76A03C36C7A

completely released, relinquished, and discharged the Released Persons from the Released Class Claims; and

h.    A reservation of exclusive and continuing jurisdiction over the Litigation and the Parties for the purposes of, among other things, (i) supervising the implementation, enforcement, construction, and interpretation of the Settlement Agreement, the Preliminary Approval Order, and the Final Judgment; and (ii) supervising the administration and distribution of the relief to the Settlement Class and resolving any disputes that may arise with regard to the foregoing.

79.    If and when the Settlement becomes Final, the claims against Fulton in the Litigation shall be dismissed with prejudice, with the Parties to bear their own costs and attorneys' fees, costs, and expenses not otherwise awarded in accordance with this Settlement Agreement.

## XIV.  TERMINATION OF THIS SETTLEMENT AGREEMENT

80.    Each Party shall have the right to terminate this Settlement Agreement if:

a.    The Court denies preliminary approval of this Settlement Agreement (or grants preliminary approval through an order that materially differs in substance to Exhibit D hereto);

b.    The Court denies final approval of this Settlement Agreement (or grants final approval through an order that materially differs in substance from Exhibit E hereto);

c.    The Final Approval Order and Final Judgment do not become final by reason of a higher court reversing final approval by the Court, and the Court thereafter declines to enter a further order or orders approving the Settlement on the terms set forth herein;

d.    More than 350 Settlement Class Members Opt-Out of the Settlement; or

e.    The Effective Date cannot occur.

81.    Class Counsel agrees to work in good faith to effectuate this Settlement Agreement and will not solicit or encourage, in any manner, Settlement Class Members to submit Opt-Out Requests.

82.    If a Party elects to terminate this Settlement Agreement under this Section XIV, that Party must provide written notice to the other Party's counsel, by hand delivery, mail, or e-mail within ten (10) Days of the occurrence of the condition permitting termination.

83.    Nothing shall prevent Plaintiff or Fulton from appealing or seeking other appropriate relief from an appellate court with respect to any denial by the Court of final approval of the Settlement.

84.     If this Settlement Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then: (i) this Settlement Agreement, the Preliminary Approval Order, the Final Approval Order (if applicable), and all of their provisions shall be rendered null and void; (ii) the Litigation and all Parties shall be deemed to have reverted to their respective status in the Litigation as of the date and time immediately preceding the execution of this Settlement Agreement; (iii) except as otherwise expressly provided, the Parties shall stand in the same position and shall proceed in all respects as if this Settlement Agreement and any related orders had never been executed, entered into, or filed; and (iv) no term or draft of this Settlement Agreement nor any part of the Parties' settlement discussions, negotiations, or documentation (including any declaration or brief filed in support of the motion for preliminary approval or motion for final approval), nor any rulings regarding class certification for settlement purposes (including the Preliminary Approval Order and, if applicable, the Final Approval Order and Final Judgment), will have any effect or be admissible into evidence for any purpose in the Litigation or any other proceeding.

85.     If the Court does not approve the Settlement or the Effective Date cannot occur for any reason, Fulton shall retain all its rights and defenses in this Litigation. For example, Fulton shall have the right to object to the maintenance of the Litigation as a class action, to move for summary judgment, and to assert

defenses at trial, and nothing in this Settlement Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any Party concerning whether the Litigation may properly be maintained as a class action, or for any other purpose.

## XV.   RELEASE

86.    The Final Approval Order and Final Judgment shall provide that claims against Fulton in the Litigation are dismissed with prejudice as to Plaintiff and all Settlement Class Members who are not Opt-Out Members.

87.    On the Effective Date, Plaintiff and each and every Settlement Class Member who is not an Opt-Out Member (i.e., has not been excluded from the Settlement Class by the Court), shall be bound by this Settlement Agreement and shall have recourse only to the benefits, rights, and remedies provided hereunder. No other action, demand, suit, arbitration, or other claim or proceeding, regardless of forum, may be pursued against Released Persons with respect to the Plaintiff's Released Claims or the Released Class Claims.

88.    On the Effective Date and in consideration of the promises and covenants set forth in this Settlement Agreement, Plaintiff will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from any and all past, present, and future claims, counterclaims, lawsuits, set-offs, costs, expenses, attorneys' fees, costs, and expenses, losses, rights,

demands, charges, complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, known, unknown, or capable of being known, in law or equity, fixed or contingent, accrued or unaccrued and matured or not matured that arise out of, are connected to, or relate in any way to the Data Incident, including such claims that were or could have been asserted in the Litigation (the "Plaintiff's Release"). This release does not include claims against OSC or related persons or entities. There is no release by Plaintiff and the Settlement Class and its members (including heirs, assigns, etc.), as to any claim against OSC. The Plaintiff's Release shall be included as part of the Final Approval Order so that all claims released thereby shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion (the "Plaintiff's Released Claims"). The Plaintiff's Released Claims shall constitute and may be pled as a complete defense to any proceeding arising from, relating to, or filed in connection with the Plaintiff's Released Claims.

89.     On the Effective Date and in consideration of the promises and covenants set forth in this Settlement Agreement, each Settlement Class Member who is not an Opt-Out Member will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from any and all past, present, and future claims, counterclaims, lawsuits, set-offs, costs, expenses, attorneys' fees, costs, and expenses, losses, rights, demands, charges,

DocuSign Envelope ID: 2E60130A-63E4-4DCB-80A4-E76A02C36C7A

complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, known, unknown, or capable of being known, in law or equity, fixed or contingent, accrued or unaccrued and matured or not matured that arise out of, are connected to, or relate in any way to the Data Incident, including such claims that were or could have been asserted in the Litigation (the "Settlement Class Release"). This release does not include claims against OSC or related persons or entities. The Settlement Class Release shall be included as part of the Final Approval Order so that all claims released thereby shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion (the "Released Class Claims"). The Released Class Claims shall constitute and may be pled as a complete defense to any proceeding arising from, relating to, or filed in connection with the Released Class Claims.

90.    Subject to Court approval, as of the Effective Date, Plaintiff and all Settlement Class Members who are not Opt-Out Members shall be bound by this Settlement Agreement and the Settlement Class Release and all of Plaintiff's Released Claims and the Released Class Claims shall be dismissed with prejudice and released, irrespective of whether the Settlement Class Members received actual notice of the Litigation or this Settlement.

91.    Plaintiff's Released Claims and Released Class Claims include the release of Unknown Claims. "Unknown Claims" means claims that could have been

raised in the Litigation and that either of Plaintiff or any Settlement Class Member (other than Opt-Out Members), and each of their respective heirs, executors, administrators, representatives, agents, partners, trustees, successors, attorneys, and assigns do not know to exist or suspects to exist, which, if known by him, her or it, might affect his, her, or its agreement to release Fulton and all other Released Persons, or might affect his, her, or its decision to agree to, or object or not to object to the Settlement. Plaintiff's Released Claims and Released Class Claims include a waiver of the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by the law of any state, province, or territory of the United States, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY**.

92.     On entry of the Final Approval Order and Final Judgment, Plaintiff and Settlement Class Members (other than Opt-Out Members) shall be enjoined from prosecuting, respectively, Plaintiff's Released Claims and/or the Released Class Claims, in any proceeding in any forum against any of the Released Persons or based on any actions taken by any Released Persons authorized or required by this Settlement Agreement or the Court or an appellate court as part of this Settlement.

93.     Without in any way limiting the scope of the Plaintiff's Release or the Settlement Class Release (the "Releases"), the Releases cover, without limitation, any and all claims for attorneys' fees, costs, expenses, or disbursements incurred by Class Counsel or any other counsel representing Plaintiff or Settlement Class Members, or any of them, in connection with or related in any manner to the claims against Fulton in the Litigation, the Settlement, the administration of such Settlement and/or Plaintiff's Released Claims or Released Class Claims, as well as any and all claims for the Service Award to Plaintiff.

94.     Nothing in the Releases shall preclude any action to enforce the terms of this Settlement Agreement, including participation in any of the processes detailed herein.

## XVI.  EFFECTIVE DATE

95.     The "Effective Date" of this Settlement Agreement shall be the first Day after the date when all of the following conditions have occurred:

a.      This Settlement Agreement has been fully executed by all Parties and their counsel;

b.      Orders have been entered by the Court certifying the Settlement Class, granting preliminary approval of this Settlement Agreement and approving the Notice Program and Claim Form, all as provided above;

c.    The Court-approved Postcard Notice has been mailed and other notice required by the Notice Program has been effectuated and the Settlement Website has been duly created and maintained as ordered by the Court;

d.    The Court has entered a Final Approval Order finally approving this Settlement Agreement, as provided above; and

e.    The Final Approval Order and Final Judgment have become Final.

## XVII. MISCELLANEOUS PROVISIONS

96.    The recitals and exhibits to this Settlement Agreement are integral parts of the Settlement and are expressly incorporated and made a part of this Settlement Agreement.

97.    This Settlement Agreement is for settlement purposes only. Neither the fact of nor any provision contained in this Settlement Agreement nor any action taken hereunder shall constitute or be construed as an admission of the validity of any claim or any fact alleged in the CAC or Litigation or of any wrongdoing, fault, violation of law or liability of any kind on the part of Fulton or any admission by Fulton of any claim in this Litigation or allegation made in any other proceeding, including regulatory matters, directly or indirectly involving the Data Incident or allegations asserted in the CAC and Litigation. This Settlement Agreement shall not be offered or be admissible in evidence against the Parties or cited or referred to in

any action or proceeding between the Parties, except in an action or proceeding brought to enforce its terms. Nothing contained herein is or shall be construed or admissible as an admission by Fulton that Plaintiff's claims or any similar claims are suitable for class treatment.

98.     In the event that there are any developments in the effectuation and administration of this Settlement Agreement that are not dealt with by the terms of this Settlement Agreement, then such matters shall be dealt with as agreed upon by the Parties, and failing agreement, as shall be ordered by the Court. The Parties shall execute all documents and use their best efforts to perform all acts necessary and proper to promptly effectuate the terms of this Settlement Agreement and to take all necessary or appropriate actions to obtain judicial approval of this Settlement Agreement to give this Settlement Agreement full force and effect.

99.     In the event the Net Settlement Fund is insufficient to cover the payment for Credit Monitoring/Insurance services claimed by Claimants, the duration of the coverage described in Paragraph 24(d) will be reduced to exhaust the fund. In such an event, no Net Settlement Funds would be distributed for the benefits described in Paragraphs 24(a)-(c), 25. In the event the aggregate amount of all payments for Compensation for Ordinary Losses, Compensation for Lost Time, and Compensation for Extraordinary Losses exceeds the total amount of the Net Settlement Fund, then the value of those payments shall be reduced on a pro rata

basis, such that the aggregate value of Compensation for Ordinary Losses, Compensation for Lost Time, and Compensation for Extraordinary Losses and payments for Credit Monitoring/Insurance services does not exceed the Net Settlement Fund. In such an event, no Net Settlement Funds would be distributed to Claimants seeking Cash Compensation. All such determinations shall be performed by the Settlement Administrator.

100.   No person shall have any claim against Plaintiff, Class Counsel, Fulton, Fulton's Counsel, the Settlement Administrator, or the Released Persons or any of the foregoing's agents or representatives based on the administration of the Settlement substantially in accordance with the terms of the Settlement Agreement or any order of the Court or appellate court.

101.  This Settlement Agreement constitutes the entire Settlement Agreement between and among the Parties with respect to the Settlement of the Litigation. This Settlement Agreement supersedes all prior negotiations and settlement agreements and may not be modified or amended except by a writing signed by the Parties and their respective counsel. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part of the subject matter of this Settlement Agreement has been made or relied on except as expressly set forth in this Settlement Agreement.

102.   There shall be no waiver of any term or condition in this Settlement Agreement absent an express writing to that effect by the non-waiving Party. No waiver of any term or condition in this Settlement Agreement shall be construed as a waiver of a subsequent breach or failure of the same term or condition, or waiver of any other term or condition of this Settlement Agreement.

103.   In the event a third party, such as a bankruptcy trustee, former spouse, or other third party has or claims to have a claim against any payment made to a Settlement Class Member, it is the responsibility of the Settlement Class Member to transmit the funds to such third party. Unless otherwise ordered by the Court, the Parties will have no, and do not agree to, any responsibility for such transmittal.

104.   This Settlement Agreement shall not be construed more strictly against one Party than another merely because it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's-length negotiations resulting in this Settlement Agreement, all Parties have contributed substantially and materially to the preparation of the Settlement Agreement. All terms, conditions and exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

105.   This Settlement Agreement shall be construed under and governed by the laws of the State of Georgia without regard to its choice of law provisions.

DocuSign Envelope ID: 2E60130A-63E4-4DCB-30AA-E76A02C36G7A

106.   If any press release is to be issued by the Parties, including their respective counsel, concerning the Settlement, it will be a joint press release for which the Parties will agree upon the language therein prior to release.

107.   In the event that one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect the other provisions of the Settlement Agreement, which shall remain in full force and effect as though the invalid, illegal, or unenforceable provision(s) had never been a part of this Settlement Agreement as long as the benefits of this Settlement Agreement to Fulton or the Settlement Class Members are not materially altered, positively or negatively, as a result of the invalid, illegal, or unenforceable provision(s).

108.   This Settlement Agreement will be binding upon and inure to the benefit of the successors and assigns of the Parties, Released Persons, and Settlement Class Members. The Parties waive the right to appeal or collaterally attack the Final Judgment entered under this Settlement Agreement.

109.   The headings used in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement. In construing this Settlement Agreement, the use of the

singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

110.   The Parties stipulate to stay all proceedings in the Litigation until the approval of this Settlement Agreement has been finally determined, except the stay of proceedings shall not prevent the filing of any motions, affidavits, and other matters necessary to obtain and preserve judicial approval of this Settlement Agreement.

111.   This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it and all of which shall be deemed a single Settlement Agreement.

112.   Each Party to this Settlement Agreement and the signatories thereto warrant that he, she, or it is acting upon his, her or its independent judgment and the advice of his, her or its counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

113.   Each signatory below warrants that he or she has authority to execute this Settlement Agreement and bind the Party on whose behalf he or she is executing the Settlement Agreement.

IN WITNESS WHEREOF, the Parties have hereby accepted and agreed to the

Settlement Agreement.

Approved as to form and content by counsel for Plaintiff and the Settlement Class:

By: _____

Ben Barnow
Barnow and Associates, P.C.
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Tel: (312) 621-2000
b.barnow@barnowlaw.com


Dated: April 7, 2023


Approved as to form and content by counsel for Fulton:

By: _____

Christopher A. Wiech
Baker & Hostetler LLP
1170 Peachtree Street Northeast
Suite 2400
Atlanta, GA 30309-7676
Tel: (404) 459-0050
cwiech@bakerlaw.com


Dated: April 7, 2023

# EXHIBIT A

<table>
<tr><td>

**Your claim must be submitted online or <u>postmarked by</u>:**
MONTH DD, 2023

</td><td>

### CLAIM FORM FOR DATA INCIDENT SETTLEMENT

*Keefer v. Fulton Bank, N.A.*,
Cause No. 1:22-cv-03708

</td><td>

**FULTON BANK**

</td></tr>
</table>

### USE THIS FORM <u>ONLY IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS</u> TO MAKE A CLAIM FOR IDENTITY THEFT PROTECTION AND CREDIT MONITORING SERVICES AND/OR COMPENSATION FOR UNREIMBURSED LOSSES

### GENERAL INSTRUCTIONS

If you provided your personal information to Fulton Bank, N.A. ("Fulton Bank") and were notified that that your personal information, including your name, address, phone number, Social Security number, and certain loan information, may have been impacted as a result of the cyberattack on Fulton's third-party vendor, Overby-Seawell Company, which was discovered on or about July 5, 2022 ("Data Incident"), you are a member of the Settlement Class and are eligible to complete this Claim Form to request 24 months of identity protection and credit monitoring service free of charge, compensation for up to 4.5 hours of lost time at a rate of $25.00 per hour, compensation for ordinary losses up to $150.00 and/or compensation for extraordinary unreimbursed losses up to a total of $5,000 ("Unreimbursed Losses"). As an alternative to making a claim for Unreimbursed Losses, Lost Time, and/or Credit Monitoring you may elect to receive an Alternative Cash Payment (estimated to be $60), which will be determined based on the amount remaining in the Settlement Fund after the amounts in the Settlement Fund have been distributed in accordance with the Settlement Agreement.

Please read the claim form carefully and answer all questions. Failure to provide required information could result in a denial of your claim.

This Claim Form may be submitted electronically via the Settlement Website at URL or completed and mailed to the address below. Please type or legibly print all requested information, in blue or black ink. Mail your completed Claim Form, including any supporting documentation, by U.S. mail to:

*Fulton Bank Data Incident Claims Administrator*
Claims Administrator mailing address

---

## I. CLASS MEMBER NAME AND CONTACT INFORMATION

Provide your name and contact information below. You must notify the Claims Administrator if your contact information changes after you submit this form.

| | |
|---|---|
| **First Name** | **Last Name** |

**Street Address**

| | | |
|---|---|---|
| **City** | **State** | **Zip Code** |

| | |
|---|---|
| **Email Address** | **Telephone Number** |

Questions? Go to URL or call 1-XXX-XXX-XXXX.

**CLAIM FORM FOR DATA INCIDENT SETTLEMENT**

*Keefer v. Fulton Bank, N.A.,*
Cause No. 1:22-cv-03708

<table>
<tr><td>Your claim must be submitted online or <u>postmarked by</u>: <br> <span style="background:yellow">MONTH DD, 2023</span></td></tr>
</table>

<table>
<tr><td>**FULTON BANK**</td></tr>
</table>

---

## II. PROOF OF CLASS MEMBERSHIP

☐   Check this box to certify that you provided your personal data to Fulton Bank, N.A. and received notification that your personal data might have been impacted in the Data Incident that was discovered on or about July 5, 2022.

Enter the Notice ID Number provided on your Notice <u>or</u> the last four digits of your Social Security Number:

| | |
|---|---|
| **Notice ID Number** | **Social Security Number (last four digits only)** |

---

## III. ALTERNATIVE CASH PAYMENT

☐   Check this box if you wish to receive an Alternative Cash Payment instead of payment for Unreimbursed Losses, Lost Time, and/or Credit Monitoring. The amount of the Alternative Cash Payment will depend on the amount of claims for Alternative Cash Payments and the amount of funds remaining in the Settlement Fund after all other distributions have been made, as explained in the Settlement Agreement.

*You may **NOT** claim the Alternative Cash Payment AND claim Unreimbursed Losses, Lost Time, and/or Credit Monitoring. If you claim the Alternative Cash Payment, you give up the right to receive reimbursement for Unreimbursed Losses, Lost Time, and Credit Monitoring.*

---

## IV. IDENTITY THEFT PROTECTION

☐   Check this box if you did not select the Alternative Cash Payment and wish to receive 24 months of free identity protection and credit monitoring service.

---

## V. COMPENSATION FOR LOST TIME

All members of the Settlement Class who have spent time dealing with the Data Incident may claim up to four and one-half (4.5) hours of lost time at a rate of $25.00 per hour, if they spent at least one-half hour dealing with the Data Incident and did not select the Alternative Cash Payment above. You must reasonably describe the lost time and attest that the time was spent dealing with the Data Incident. No supporting documentation is required.

*Examples: You spent at least one-half hour calling customer service lines, writing letters or emails, or on the Internet in order to get fraudulent charges reversed or in updating automatic payment programs because your card number changed.*

**Hours claimed (up to 4.5 hours):** _____ hours at $25.00 per hour (minimum 0.5 hours).

**Questions? Go to <span style="background:yellow">URL</span> or call 1-<span style="background:yellow">XXX-XXX-XXXX</span>.**

<table>
<tr><td>

**Your claim must be submitted online or <u>postmarked by</u>: <mark>MONTH DD, 2023</mark>**

</td><td>

<u>**CLAIM FORM FOR DATA INCIDENT SETTLEMENT**</u>

*Keefer v. Fulton Bank, N.A.*,
Cause No. 1:22-cv-03708

</td><td>

**FULTON BANK**

</td></tr>
</table>

I attest and affirm under penalty of perjury that to the best of my knowledge and belief any claimed lost time was spent related to the Data Incident.

**Describe the Lost Time:**

_____
_____
_____
_____
_____
_____
_____
_____

## VI.  UNREIMBURSED LOSSES

All members of the Settlement Class who submit a Valid Claim using this Claim Form and supporting documentation are eligible for reimbursement of documented out-of-pocket expenses that were incurred as a result of the Data Incident, so long as you did not select the Alternative Cash Payment above. Check the box for each category of benefits you would like to claim.

You must reasonably describe the Unreimbursed Losses, provide supporting documentation, and attest that the losses were incurred as a result of the Data Incident. <u>Please provide as much information as you can to help us figure out if you are entitled to a settlement payment.</u>

### A.  ORDINARY LOSSES

Settlement Class Members who submit a Valid Claim using this Claim Form and supporting documentation are eligible for reimbursement of up to $150.00 of ordinary out-of-pocket expenses resulting from the Data Incident.

> *Examples: Documented bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel relating to the Data Incident; fees for credit reports, credit monitoring, or other identity theft insurance products purchased between July 5, 2022 and [<mark>Claim Deadline</mark>].*

◯   I incurred ordinary losses as a result of the Data Incident totaling $ _____ (max $150.00).

Describe your ordinary losses below, including the date the loss was incurred and its relation to the Data Incident:

_____
_____
_____
_____
_____

**Questions? Go to <mark>URL</mark> or call 1-<mark>XXX-XXX-XXXX</mark>.**

<table>
<tr><td>

**Your claim must be submitted online or postmarked by:**
<mark>MONTH DD, 2023</mark>

</td><td>

**CLAIM FORM FOR DATA INCIDENT SETTLEMENT**

*Keefer v. Fulton Bank, N.A.*,
Cause No. 1:22-cv-03708

</td><td>

**FULTON BANK**

</td></tr>
</table>

**Documentation of ordinary losses is required.** You may mark out any transactions that are not relevant to your claim before sending in the documentation.

If you are seeking reimbursement for fees, expenses, or charges, you MUST attach a copy of a statement from the company that charged you, or a receipt for the amount you incurred. If you are seeking reimbursement for credit reports, credit monitoring, or other identity theft insurance products purchased between July 5, 2022 and [<mark>CLAIM DEADLINE</mark>], you MUST attach a copy of a receipt or other proof of purchase for each credit report or product purchased.

> *Examples: Phone bills, gas receipts, postage receipts; detailed list of locations to which you traveled (i.e., police station, IRS office), indication of why you traveled there (i.e., police report or letter from IRS re: falsified tax return) and number of miles you traveled; receipts or account statements reflecting purchases made for Credit Monitoring or Identity Theft Insurance Services.*

All ordinary losses must be more likely than not attributable to the Data Incident and must not have been previously reimbursed.

◯   I attest and affirm under penalty of perjury that to the best of my knowledge and belief any claimed ordinary losses have not been previously reimbursed and were incurred as a result of the Data Incident.

## B.  EXTRAORDINARY LOSSES

Settlement Class Members who submit a Valid Claim using this Claim Form and supporting documentation are eligible for reimbursement of up to $5,000.00 of extraordinary out-of-pocket expenses due to identity theft or other fraud resulting from the Data Incident, so long as you did not select the Alternative Cash Payment above.

> **Extraordinary expenses MUST:** (1) be an actual, documented, unreimbursed monetary loss; (2) be more likely than not a result of the Data Incident; (3) not be covered by a claim for Ordinary Losses (Section A above); and (4) have been incurred despite reasonable efforts to avoid or be reimbursed for the loss (including exhaustion of all available credit monitoring insurance, identity theft insurance, and other available insurance).

◯   I incurred extraordinary losses as a result of the Data Incident totaling $ _____ (max $5,000.00).

Describe your extraordinary losses below, including the date the loss was incurred and its relation to the Data Incident:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

<table>
<tr><td>

**Your claim must be submitted online or <u>postmarked by</u>:**
<mark>**MONTH DD, 2023**</mark>

</td><td>

## CLAIM FORM FOR DATA INCIDENT SETTLEMENT

*Keefer v. Fulton Bank, N.A.*,
Cause No. 1:22-cv-03708

</td><td>

**FULTON BANK**

</td></tr>
</table>

<u>**Documentation of extraordinary loss is required.**</u> The documentation must show the full amount of the claimed loss. You may mark out any transactions that are not relevant to your claim before sending in the documentation.

The loss must be more likely than not the result of the Data Incident and must not already be covered by the ordinary reimbursement category.

◯ I attest and affirm under penalty of perjury that to the best of my knowledge and belief any claimed extraordinary losses were actual monetary losses incurred due to identity theft or fraud as a result of the Data Incident and are not covered by a claim for ordinary losses.

## VII.  PAYMENT SELECTION

Please select <u>**one**</u> of the following payment options, which will be used should you be eligible to receive a settlement payment:

☐ **PayPal** - Enter your PayPal email address: _____

☐ **Venmo -** Enter the mobile number associated with your Venmo account: __ __ __-__ __ __-__ __ __ __

☐ **Zelle -** Enter the mobile number or email address associated with your Zelle account:

Mobile Number: __ __ __-__ __ __-__ __ __    or Email Address: _____

☐ **Physical Check -** Payment will be mailed to the address provided above.

## VIII.  ATTESTATION & SIGNATURE

I swear and affirm under the laws of my state that the information I have supplied in this Claim Form is true and correct to the best of my recollection, and that this form was executed on the date set forth below.

| _____ | _____ | _____ |
|:---:|:---:|:---:|
| Signature | Printed Name | Date |

# EXHIBIT B

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*THIS IS A COURT-AUTHORIZED NOTICE. IT IS NOT A NOTICE OF A LAWSUIT AGAINST YOU OR A SOLICITATION FROM A LAWYER.*

### PLEASE READ THIS NOTICE CAREFULLY

**To:** **All persons who provided their person information to Fulton Bank, N.A. ("Fulton Bank") and were notified that that their personal information may have been impacted as a result of the cyberattack on Fulton Bank's third-party vendor, Overby-Seawell Company, which was discovered on or about July 5, 2022 ("Data Incident"), referred to herein as the "Settlement Class";**

A proposed Settlement of claims against Fulton Bank has been reached in a class action lawsuit against Fulton Bank. The lawsuit asserted claims against Fulton Bank arising out of or related to a cyberattack against Overby-Seawell Company that was discovered on or about July 5, 2022.

If you are a member of the Settlement Class, you have the following options:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM BY _____ __, 2023** | You must submit a valid claim form to receive credit monitoring services from Settlement, reimbursement for unreimbursed time or expenses, or an Alternative Cash Payment. |
| **DO NOTHING** | You will receive no benefits from the Settlement and will no longer be able to sue the Released Parties,[1] including Fulton Bank, over the claims resolved in the Settlement. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT BY _____ ___, 2023** | You will receive no benefits from the Settlement, but you will retain your legal claims against the Released Parties. |
| **OBJECT BY _____ __, 2023** | Write to the Court about why you do not like the Settlement. You must remain in the Settlement Class to object to the Settlement. |

---

[1] The Released Parties are Fulton Bank and its present and former parents, subsidiaries, divisions, departments, affiliates, employees, servants, members, providers, partners, principals, directors, shareholders, owners, predecessors, successors, assigns, and insurers, and each of the foregoing's former or present directors, trustees, officers, employees, representatives, agents, providers, consultants, advisors, attorneys, accountants, partners, vendors, customers, insurers, reinsurers, and subrogees. Released Parties does not include OSC or related entities.

1

For more information visit URL or call toll-free XXX-XXX-XXXX

| **GO TO A HEARING ON** <span style="background-color: yellow">_____ ___</span>**, 2023** | Ask to speak in Court about the fairness of the Settlement. |
|---|---|

No payments or other settlement benefits will be issued until after the Court gives final approval to the Settlement and any appeals are resolved.

**Please review this notice carefully.** You can learn more about the Settlement by visiting <span style="background-color: yellow">**URL**</span> or by calling <span style="background-color: yellow">1-XXX-XXX-XXXX</span>.

## Further Information about this Notice and the Lawsuit

| 1.    Why was this Notice issued? |
|---|

You received this notice because you may be a member of the Settlement Class eligible to receive benefits from a proposed settlement of the class action lawsuit *Keefer v. Fulton Bank, N.A.*, Cause No. 1:22-cv-03708, which has been consolidated with *In Re: Overby-Seawell Company Customer Data Security Breach Litigation*, Cause No. 1:23-md-03056, in the United States District Court for the Northern District of Georgia (the "Lawsuit"). The Court overseeing the Lawsuit authorized this Notice to advise Settlement Class Members about the proposed Settlement that will affect their legal rights. The Notice explains certain legal rights and options you have in connection with that Settlement.

| 2.    What is the Lawsuit about? |
|---|

The Lawsuit is a proposed class action lawsuit relating to the Data Incident, may have impacted the personal data of certain of Fulton Bank's customers.

| 3.    Why is the Lawsuit a class action? |
|---|

In a class action, one or more representative plaintiffs bring a lawsuit for others who are alleged to have similar claims. Together, these people are the "class" and each individually is a "class member." There is one Plaintiff (or Representative Plaintiff) in this case: Kathy Keefer.

| 4.    Why is there a Settlement? |
|---|

The Plaintiff in the Lawsuit, through her attorneys, investigated the facts and law relating to the issues in the Lawsuit. The Plaintiff and Class Counsel believe that the settlement is fair, reasonable, and adequate and will provide substantial benefits to the Settlement Class. The Court has not decided whether the Plaintiff's claims or Fulton Bank's defenses have any merit, and it will not do so if the proposed Settlement is approved. By agreeing to settle, both sides avoid the cost and risk of a trial, and people who submit valid claims will receive benefits from the Settlement. The Settlement does not mean that Fulton Bank did anything wrong, or that the Plaintiff and the Settlement Class would or would not win the case if it were to go to trial.

For more information visit <span style="background-color: yellow">URL</span> or call toll-free <span style="background-color: yellow">XXX-XXX-XXXX</span>

## **Terms of the Proposed Settlement**

| 5. | Who is in the Settlement Class? |
|---|---|

The Settlement Class is defined as all persons who provided their personal data to Fulton Bank, N.A. and were notified that their personal data may have been impacted as a result of Overby-Seawell Company's cybersecurity incident that it discovered on or about July 5, 2022.

Excluded from the Settlement Class are: (1) Fulton Bank's and OSC's officers and directors; (2) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (3) the judges assigned to the Litigation and to evaluate the Settlement; and (4) any other Person found by a court of competent jurisdiction to be guilty under criminal law of perpetrating, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

| 6. | What are the Settlement Benefits? |
|---|---|

**Compensation for Unreimbursed Losses and Credit Monitoring**

The Settlement provides compensation for the following unreimbursed losses:

1. **Time Spent:** Up to 4.5 hours of lost time at a rate of $25.00 per hour for time spent dealing with the Data Incident, if the Settlement Class Member spent at least one-half (0.5) hours dealing with the Data Incident;

2. **Ordinary Out-of-Pocket Expenses or Losses:** Out-of-pocket expenses incurred as a result of the Data Incident, including: documented bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, gasoline for local travel, and fees for credit reports, credit monitoring, or other identity theft insurance product purchased between July 5, 2022 and [the Claims Deadline].

3. **Extraordinary Out-of-Pocket Expenses or Losses:** Out-of-pocket expenses directly arising from identity theft or other fraud perpetuated on or against the Settlement Class Member as a result of the Data Incident.

Compensation for lost time requires only an attestation that any claimed lost time was spent related to the Data Incident.

Compensation for unreimbursed losses (except for lost time), shall be paid only if: (1) the loss is an actual, documented,[2] and unreimbursed monetary loss; (2) the loss was more likely than not caused by the Data Incident; and (3) the Settlement Class Member made reasonable efforts to

---

[2] Self-prepared documents, such as handwritten receipts, are, by themselves, insufficient to receive reimbursement.

For more information visit URL or call toll-free XXX-XXX-XXXX

avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

4. **Credit Monitoring and Identity Theft Protection Services:** Settlement Class Members who do not opt for the Alternative Cash Payment are eligible to receive 24 months of Credit Monitoring and Identity Theft Protection Services free of charge. The Credit Monitoring and Identity Theft Protection Services will be provided to all valid claimants who timely enroll in these services for a period of 24 months from the date of activation, including daily three-bureau credit monitoring with Equifax, Experian, and TransUnion; identity restoration services; and $1 million in identity theft insurance, among other features.

**Alternative Cash Payment:** As an alternative to a claim for Unreimbursed Losses, Lost Time, and/or Credit Monitoring, Settlement Class Members may submit a claim to receive a pro rata cash payment from the Settlement Fund ("Alternative Cash Payment"). The amount of the Alternative Cash Payment will be calculated in accordance with the Settlement Agreement, which provides for a distribution of the Settlement Fund to first cover other costs and then distribute the remaining funds evenly amongst Settlement Class Members who elected to receive an Alternative Cash Payment.

| 7. | What claims are Settlement Class Members giving up under the Settlement? |
|---|---|

Settlement Class Members who do not validly exclude themselves from the Settlement will be bound by the Settlement Agreement and Release ("Settlement Agreement"), and any final judgment entered by the Court, and will give up their right to sue the Released Parties for the claims being resolved by the Settlement.

The claims that are being released and the persons and entities being released from those claims are described in the Settlement Agreement. To view the Settlement Agreement, please visit **URL**.

## Your Options as a Settlement Class Member

| 8. | If I am a Settlement Class Member, what options do I have? |
|---|---|

If you are a Settlement Class Member, you do not have to do anything to remain in the Settlement. However, if you want to obtain the benefits available to Settlement Class Members under the Settlement, you **must** complete and submit a Claim Form postmarked or submitted online by **Month DD, 2023**. You may download or submit a Claim Form online at **URL**.

If you do not want to give up your right to sue the Released Parties related to the Data Incident or the issues raised in this case, you must exclude yourself (or "opt out") from the Settlement Class. See Question 12 below for instructions on how to exclude yourself.

If you object to the settlement, you must remain a Settlement Class Member (*i.e.*, you may not also exclude yourself from the Settlement Class by opting out) and file a written objection in this case

4

For more information visit **URL** or call toll-free **XXX-XXX-XXXX**

with the Court. (See Question 20 below.) If you object, you must still submit a claim if you want compensation for unreimbursed losses or credit monitoring services.

| 9. | What happens if I do nothing? |
|---|---|

If you do nothing, you will get no benefit from this Settlement. Unless you exclude yourself, after the Settlement is granted final approval and the judgment becomes final, you will be bound by the judgment and you will never be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Released Parties related to the claims released by the Settlement.

| 10. | How do I submit a claim? |
|---|---|

You may complete the Claim Form online at **URL.** You may also obtain a paper Claim Form by downloading it at **URL** or by calling the claims administrator at **1-XXX-XXX-XXXX**. If you choose to complete a paper Claim Form, you may either submit the completed and signed Claim Form and any supporting materials electronically at **URL** or mail them to:

**Fulton Bank Data Incident Claims Administrator**
**{Claims Administrator Mailing Address}**
**{Claims Administrator City/State/Zip}**

| 11. | Who decides my Settlement claim and how do they do it? |
|---|---|

The Claims Administrator will initially decide whether a Claim Form is complete and valid and includes all required documentation. The Claims Administrator may require additional information from any claimant. Failure to timely provide all required information will invalidate a claim and it will not be paid.

| 12. | How do I exclude myself from the Settlement? |
|---|---|

You must make a signed written request that (a) states your name, address, and phone number; (b) is signed by you or a person authorized by law to sign on your behalf; (c) unequivocally states your desire to be excluded from the Settlement and Settlement Class. You must send your request by **Month DD, 2023** to this address:

**Fulton Bank Data Incident Claims Administrator**
**Attn: Exclusions**
**{Claims Administrator Mailing Address}**
**{Claims Administrator City/State/Zip}**

| 13. | If I exclude myself, can I receive a benefit from this Settlement? |
|---|---|

No. If you exclude yourself, you will not be entitled to any Settlement benefits. However, you will also not be bound by any judgment in this Lawsuit.

For more information visit **URL** or call toll-free **XXX-XXX-XXXX**

| 14. | If I do not exclude myself, can I sue the Released Parties for the Data Incident later? |
|---|---|

No. Unless you exclude yourself, you give up any right to sue the Released Parties for the claims that this Settlement resolves. You must exclude yourself from the Settlement Class to start your own lawsuit or to be part of any different lawsuit relating to the claims in this case. If you exclude yourself, do not submit a Claim Form requesting a benefit from this Settlement.

| 15. | How do I object to the settlement? |
|---|---|

All Settlement Class Members who do not request exclusion from the Settlement Class have the right to object to the Settlement or any part of it. You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no Settlement benefits will be sent out and the lawsuit will continue.

Any objection to the proposed Settlement must be in writing and it and any supporting papers must be filed with the Court and a copy mailed to Class Counsel and Fulton Bank's Counsel at the addresses listed below.

| Class Counsel | Fulton Bank's Counsel |
|---|---|
| Ben Barnow<br>**BARNOW AND ASSOCIATES, P.C.**<br>205 West Randolph Street, Ste. 1630<br>Chicago, IL 60606 | Christopher A. Wiech<br>**Baker & Hostetler LLP**<br>1170 Peachtree Street, Ste. 2400<br>Atlanta, GA 30309 |

Objections must be filed or postmarked no later than ==Month DD, 2023==.

To be considered by the Court, your objection must include: (a) the title of the case; (b) your name, address, and telephone number; (c) all legal and factual bases for your objection; (d) copies of any documents that you want the Court to consider; (e) whether you object to the Settlement in whole or in part; (f) the name, address, telephone number, email address, and state bar admissions of any attorneys representing you; (g) whether you (or your attorney) intends to appear at the Final Approval Hearing; and (h) your signature.

Should you wish to appear at the Final Approval Hearing, you must so state, and must identify any documents or witnesses you intend to call on your behalf.

If you fail to object in this manner, you will be deemed to have waived and forfeited any and all rights you may have to appear separately and/or to object to the Settlement Agreement, and you shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions set forth in this paragraph. Without limiting the foregoing, any challenge to the Settlement Agreement, the Final Judgment and Order approving this Settlement

Agreement, or the judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

## Court Approval of the Settlement

| 16. | How, when, and where will the Court decide whether to approve the Settlement? |
|---|---|

The Court will hold a Final Approval Hearing to decide whether to approve the Settlement. That hearing is scheduled for **Month DD, 2023,** at **XX:XX A.M./P.M.,** at Richard B. Russell Federal Building & United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309, Courtroom 1706. At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are timely objections, the Court will consider them and will listen to people who have properly requested to speak at the hearing. The Court may also consider Plaintiff's request for attorneys' fees, costs, and expenses, and Plaintiff's request for service awards for the Representative Plaintiff. After the hearing, the Court will decide whether to approve the Settlement.

It is possible the Court could reschedule the hearing to a different date or time without notice, so it is a good idea before the hearing to check **URL** to confirm the schedule if you wish to attend.

| 17. | Do I have to attend the hearing? |
|---|---|

No. You do not need to attend the hearing unless you object to the Settlement and wish to appear in person. It is not necessary to appear in person to make an objection; the Court will consider any written objections properly submitted pursuant to the instructions in Question 15. You or your own lawyer are welcome to attend the hearing at your expense, but you are not required to do so.

| 18. | What happens if the Court approves the Settlement? |
|---|---|

If the Court approves the Settlement, there may still be appeals. If an appeal is taken, it is possible the Settlement could be disapproved on appeal. We do not know how long this process may take.

| 19. | What happens if the Court does not approve the Settlement? |
|---|---|

If the Court does not approve the Settlement, there will be no Settlement benefits available to Settlement Class Members, Class Counsel, or the Plaintiff, and the case will proceed as if no Settlement had been attempted.

## Lawyers for the Settlement Class and Fulton Bank

| 20. | Who represents the Settlement Class? |
|---|---|

The Court has appointed the following Class Counsel to represent the Settlement Class in this Lawsuit:

Ben Barnow
**BARNOW AND ASSOCIATES, P.C.**

7

For more information visit URL or call toll-free XXX-XXX-XXXX

205 West Randolph Street, Ste. 1630
Chicago, IL 60606

Settlement Class Members will not be charged for the services of Class Counsel; Class Counsel will be paid by Fulton Bank out of the Settlement Fund, subject to Court approval. However, you may hire your own attorney at your own expense to advise you in this matter or represent you in making an objection or appearing at the Final Approval Hearing.

| 21. | How will the lawyers for the Settlement Class be paid? |
|---|---|

Plaintiff will seek an order from the Court requesting that attorneys' fees not to exceed $187,500 and reasonable costs and expenses be awarded to Class Counsel out of the Settlement Fund.

Plaintiff may also seek an order from the Court requesting that a Service Award in the amount of $1,000 be awarded to the Representative Plaintiff for her time and effort expended on behalf of the Settlement Class in the Litigation.

## For Further Information

| 22. | What if I want further information or have questions? |
|---|---|

For additional information, please visit URL. You may also contact the Claims Administrator by mail, email or phone:

Mail:
Fulton Bank Data Incident Claims Administrator
{Claims Administrator Mailing Address}
{Claims Administrator City/State/Zip}
Email:
EMAIL ADDRESS

Phone:
XXX-XXX-XXXX

**PLEASE DO NOT CONTACT THE COURT OR FULTON BANK'S COUNSEL FOR INFORMATION REGARDING THIS SETTLEMENT.**

For more information visit URL or call toll-free XXX-XXX-XXXX

# EXHIBIT C

Fulton Bank Data Incident Claims Administrator
{Claims Administrator mailing address}

**LEGAL NOTICE
ONLY TO BE OPENED
BY THE INTENDED
RECIPIENT**

*A federal court has
authorized this Notice.*

*This is not a solicitation
from a lawyer.*

«ScanString»

Postal Service: Please do not mark barcode

Notice ID: «Notice ID»
Confirmation Code: «Confirmation Code»
«FirstName» «LastName»
«Address1»
«Address2»
«City», «StateCd» «Zip»
«CountryCd»

**If Your Personal Information Was Exposed in a Data Security Incident Involving Fulton Bank, N.A., You May Be
Eligible for a <u>CASH PAYMENT</u> or Other Benefits from a Class Action Settlement.**
*PLEASE VISIT [InsertWebsiteLink] FOR MORE INFORMATION.*

**Why am I receiving this notice?** A class action settlement in the case entitled *Keefer v. Fulton Bank, N.A.*, No. 1:22-cv-03708, which has been consolidated with *In Re: Overby-Seawell Company Customer Data Security Breach Litigation*, No. 1:23-md-03056, in the United States District Court for the Northern District of Georgia, has been reached between the Plaintiff and Defendant Fulton Bank, N.A. ("Fulton Bank"). The case concerns a cyberattack on Overby-Seawell Company ("OSC") which between May 26, 2022 and July 5, 2022 (the "Data Incident"). You are receiving this notice because Fulton Bank's records show that your personal information was potentially compromised as a result of the Data Incident. **The records show that you may be a member of the Settlement Class, defined below.**

**Who's Included in the Settlement Class?** The Settlement Class includes all persons who provided their personal data to Fulton Bank, N.A. and were notified that their personal data may have been impacted as a result of Overby-Seawell Company's cybersecurity incident that it discovered on or about July 5, 2022.

**What are the Settlement benefits?** The Settlement provides for payments to people who submit valid claims for reimbursement of: (i) up to 4.5 hours of lost time for Class Members who spent at least one-half hour responding to the Data Incident, at the rate of $25 per hour, (ii) up to $150 for ordinary unreimbursed out-of-pocket expenses incurred as a result of the Data Incident, (iii) up $5,000 for extraordinary unreimbursed out-of-pocket expenses incurred as a result of the Data Incident, and (iv) two years of three-bureau credit monitoring services; or (iv) an Alternative Cash Payment (estimated to be $60). Please visit **URL** for a full description of Settlement benefits and more information on how to submit a Claim Form. The deadline to submit a Claim Form is **Month DD, 2023.**

**What are my options?** To receive payment, you much submit a Claim Form by **Month DD, 2023**. The Claim Form can be found on the website **URL**. If you do not want to be legally bound by the Settlement, you must **opt out** of the Settlement by **Month DD, 2023**. If you want to **object** to the Settlement, you must file an objection by **Month DD, 2023**. The Long Form Notice available on the Settlement Website explains how to submit a Claim Form, opt out, or object.

**The Court's Fairness Hearing.** The Court will hold a Fairness Hearing on **Month DD, 2023,** to consider whether to approve the Settlement, a request for attorneys' fees, costs, and expenses for Plaintiff's counsel, and possibly a service award for the Settlement Class Representative. You may appear at the hearing, either yourself or through an attorney hired by you, but it is not required. More information is available on the website.

For more information, please visit URL or call toll-free XXX-XXX-XXXX

_____

_____

_____

Fulton Bank Data Incident Claims Administrator
{Claims Administrator Mailing Address}

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In Re: Overby-Seawell Company Customer Data Security Breach Litigation | Case No. 1:23-md-03056-SDG |

## [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

This matter came before the Court on Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement Agreement (the "Motion"). Plaintiff Kathy Keefer, individually and on behalf of the proposed Settlement Class, and Fulton Bank, N.A. ("Defendant" or "Fulton") have entered into a Settlement Agreement and Release (the "Settlement Agreement") that settles claims against Fulton in the above-captioned litigation.

Ten putative class actions were filed in response to a cyberattack of Overby-Seawell Company's ("OSC") network systems (*Sheckard v. Overby-Seawell Co.*, No. 1:22-cv-03708; *Marlowe v. Overby-Seawell Co.*, No. 1:22-cv-03648-SDG; *Archer v. Overby-Seawell Co.*, No. 1:22-cv-03780-SDG; *Martin v. Keybank N.A.*, No. 1:23-cv-00505-SDG; *Samsel v. Overby-Seawell Co.*, No. 1:22-cv-03593-SDG; *Bozin v. Key Bank, N.A.*, No. 1:23-cv-00506-SDG; *West v. Overby-Seawell Co.*, No. 1:22-cv-03858-SDG; *Urciuoli v. KeyBank N.A.*, No, 1:23-cv-00507-SDG; Brouty v.

KeyBank N.A., No. 1:23-cv-00672-SDG; *West v. Overby-Seawell Co.*, No. 1:22-cv-03858-SDG; and *Pittman v. KeyBank N.A.*, No. 1:23-cv-00673-SDG). The various cases were transferred to and consolidated before this Court as *In Re: Overby-Seawell Company Customer Data Security Breach Litigation* under lead case no. 1:23-md-03056-SDG. *See, e.g.*, ECF No. 1, 20.

The *Sheckard* action was initiated on September 14, 2022. *See Sheckard v. Overby-Seawell Co.*, No. 1:22-cv-03708, ECF No. 1. On March 10, 2023, Plaintiffs in the *Sheckard* action sought leave to file Plaintiff's First Amended Complaint, which names Kathy Keefer as an additional plaintiff and removes Plaintiffs Scott and Margaret Sheckard. *Sheckard v. Overby-Seawell Co.*, No. 1:22-cv-03708, ECF No. 33. The Amended Complaint alleges that between May 26, 2022 and July 5, 2022 OSC was the target of a cyberattack perpetrated by an unauthorized third-party threat actor who gained access to OSC's network systems, including information about Fulton's customers (the "Data Incident"). This cyberattack may have impacted Plaintiff's and Class Members' personal information. *See First Amended Class Action Complaint* ("FAC" or "Amended Complaint"), ¶¶ 1–4. The personal data allegedly compromised in the Data Incident included Plaintiff's and Class members' names; Social Security numbers; mailing and collateral addresses; loan information

such as loan numbers, amounts, and maturity dates; insurance policy information; and phone numbers.

In the Amended Complaint, Plaintiff alleges five causes of action: (1) negligence, (2) negligence per se, (3) breach of implied contract, (4) unjust enrichment, and (6) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1 *et seq. See* FAC ¶¶ 51–98. Plaintiff alleges that Fulton and OSC failed to safeguard Plaintiff's and Class Members' personal data. *See id.* ¶ 5. Plaintiff also alleges that, as a result of the Data Incident, Plaintiff and Settlement Class Members suffered ascertainable losses, including (without limitation) a substantially increased risk of identity theft, improper disclosure of their PII, breach of confidentiality of their PII, deprivation of the value of their PII, lost time and money incurred to mitigate and remediate the effects of the Data Incident, including increased risks of identity theft they face and will continue to face, and overpayment for the services that were received without adequate data security. *See id.* ¶ 39. Plaintiff and the putative class seek monetary and equitable relief. Defendant Fulton denies the allegations in the Lawsuit, denies any allegation of wrongdoing on its part, and denies liability for Plaintiff and Class Members' claims.

After prolonged and serious arm's-length settlement negotiations, the Parties reached a Settlement Agreement and Release (the "Settlement Agreement") that they consider fair, reasonable, and adequate, and in the best interests of all the Settlement Class Members.

WHEREAS, Plaintiff, on behalf of the proposed Settlement Class Members, having made a motion for an order preliminarily approving a settlement in accordance with the Settlement Agreement, executed on April 7, 2023, and attached as **Exhibit 1** to the Motion, which, together with the Exhibits attached thereto, set forth the terms and conditions for a proposed settlement; and the Court having read and considered the Settlement Agreement and the exhibits attached thereto; and

WHEREAS, unless otherwise defined, all terms used herein have the same meanings as set forth in the Settlement Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.     The Court has reviewed the Settlement Agreement and does hereby preliminarily approve the settlement set forth therein as fair, reasonable, and adequate, subject to further consideration at the Final Approval Hearing described below.

2.     Pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e), and for purposes of this Settlement only, the Court grants provisional certification to the following Settlement Class:

> **<u>The Settlement Class</u>:** All persons who provided their personal data to Fulton Bank, N.A. and were notified that their personal data may have been impacted as a result of Overby-Seawell Company's cybersecurity incident that it discovered on or about July 5, 2022.

Excluded from the Settlement Class are: (1) Fulton's and OSC's officers and directors; (2) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (3) the Judges assigned to the Litigation and to evaluate the fairness, reasonableness, and adequacy of this settlement; and (4) any other Person found by a court of competent jurisdiction to be guilty under criminal law of perpetrating, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. The Settlement Class may include as many as 111,663 individuals—each, a "Settlement Class Member."

3.      The Court provisionally finds, for settlement purposes only, that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members would be impracticable; (b) there are issues of law and fact common to the Settlement Class; (c) the claims of the Settlement Class Representative are typical of and arise from the same operative facts and seek similar relief as the claims of the Settlement Class Members; (d) the Settlement Class Representative and Settlement Class Counsel will fairly and adequately protect the interests of the Settlement Class as the Settlement Class Representative has no interest antagonistic to or in conflict

with the Settlement Class and has retained experienced and competent counsel to prosecute this matter on behalf of the Settlement Class; (e) questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and (f) a class action and class settlement is superior to other methods available for a fair and efficient resolution of this controversy.

4. For the purposes of the settlement only, Plaintiff Kathy Keefer is preliminarily certified as the Class Representative.

5. The Court finds that Ben Barnow of Barnow & Associates, P.C., is experienced and adequate counsel and is hereby provisionally designated as Settlement Class Counsel under Federal Rule of Civil Procedure 23(a)(4).

6. The Court preliminarily finds that the proposed settlement should be approved as: (a) the result of serious and extensive arm's-length and non-collusive negotiations; (b) falling within a range of reasonableness warranting final approval; (c) having no obvious deficiencies; and (d) warranting notice of the proposed settlement to Settlement Class Members and further consideration of the settlement at the Final Approval Hearing described below.

7. The Final Approval Hearing shall be held before this Court on _____ _____, 2023 at _____ ___. at the Richard B. Russell Federal Building and United States Courthouse, Northern District of Georgia, 2211 U.S.

6

Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303, Courtroom 1706. At this hearing, the Court will determine: (a) whether the proposed settlement on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate to the Settlement Class and should be approved by the Court; (b) whether the [Proposed] Final Judgment and Order as provided under the Settlement Agreement should be entered; (c) whether the Settlement Class should be finally certified for purposes of the settlement; (d) whether Plaintiff and Class Counsel should be finally appointed as Class Representatives and Class Counsel; (e) the amount of attorneys' fees, costs, and expenses that should be awarded to Class Counsel; and (f) a possible Service Award to the Class Representative. The Court will also hear any objections by Settlement Class Members to: (a) the settlement; (b) the award of attorneys' fees and costs to Class Counsel; (c) a potential Service Award to the Class Representative; and the Court will consider such other matters the Court deems appropriate.

8. The Court approves, as to form and content, the use of the Claim Form in a form substantially similar to the claim form attached as Exhibit A to the Settlement Agreement;

9.     The Court approves as to form and content the Long Form Notice to be posted on the Settlement Website, in a form substantially similar to the one attached as Exhibit B to the Settlement Agreement.

10.     The Court approves as to form and content, the Short Form Notice (Postcard Notice) to be mailed to Settlement Class Members in a form substantially similar to the one attached as Exhibit C to the Settlement Agreement.

11.     The Court finds that the mailing and distribution of the Class Notice substantially in the manner and form set forth in the Settlement Agreement, attached as Exhibit 1 to the Motion: (a) constitute the best notice to Settlement Class Members practicable under the circumstances; (b) are reasonably calculated, under the circumstances, to describe the terms and effect of the Settlement Agreement and of the settlement and to apprise Settlement Class Members of their right to object to the proposed settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive such notice; and (d) satisfies all applicable requirements of Federal Rule of Civil Procedure 23(c)(2) and (e), the Due Process Clauses under the United States Constitution, the Rules of this Court, and other applicable laws.

12.     The firm KCC Class Action Services, LLC ("Claims Administrator") is hereby appointed as Claims Administrator to supervise and administer the notice procedure, as well as the processing of claims as more fully set forth below.

13.     No later than 21 days after entry of the Preliminary Approval Order (the "Notice Date"), the Claims Administrator will notify Settlement Class Members of the settlement with the Short Form Notices (Postcard Notices), substantially similar to the form attached to the Settlement Agreement as Exhibit C, by U.S. mail to all Settlement Class Members that Fulton has known addresses for. The Claims Administrator will establish and maintain a Settlement Website throughout the Claims Period, which will contain the Short Form Notices, the Long Form Notice, and the Claim Forms to either submit online or download and mail to the Claims Administrator before the Claims Deadline.

14.     Settlement Class Members who wish to submit a claim in the settlement shall complete and submit Claim Forms in accordance with the instructions contained therein. Any such claim must be postmarked or submitted electronically no later than 90 days from the date that the Class Notice is sent to submit a claim— the "Claims Deadline."

15.     The Claim Forms submitted by each Settlement Class Member must: (a) be properly completed, signed, and submitted in a timely manner in accordance

with the preceding paragraph; (b) be accompanied by adequate supporting documentation, as required by and as specified in the Settlement Agreement; and (c) be complete and contain no deletions or modifications of any of the printed matter contained therein.

16.     Any Settlement Class Member who files a Claim Form shall reasonably cooperate with the Claims Administrator, including by promptly responding to any inquiry made by the Claims Administrator. Any Settlement Class Member who does not timely submit a Claim Form within the time provided in the Settlement Agreement (except those Settlement Class Members who opt-out) are barred from receiving any benefits under the Settlement Agreement and shall be bound by the Settlement Agreement, the Final Judgment and Order, and the Releases therein, unless otherwise ordered by the Court.

17.     Settlement Class Members will have no later than 60 days from the date the Class Notice is issued to decide whether exclude themselves from the Settlement (the "Opt-Out Deadline"). Any Class Member wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to the Claims Administrator at the address provided in the Class Notice. A written opt-out notice must include an individual signature and state the name, address, and phone number of the person seeking exclusion. A written opt-out notice must also clearly

10

manifest a person's intent to be excluded from the Settlement Class. To be effective, a written opt-out notice must be postmarked no later than 60 days from the date the Class Notice is issued, or any other date set by the Court. Settlement Class Members who exclude themselves from the Settlement shall not be eligible to receive any benefits of nor be bound by the terms of the Settlement Agreement.

18.     Any Settlement Class Member may appear in person or through counsel, at his or her own expense, at the Final Approval Hearing to object to the Settlement. No Settlement Class Member will be heard, and no papers submitted by any Settlement Class Member will be considered, unless, no later than 60 days from the date the Class Notice is issued, the Settlement Class Member files with the Court and serves Class Counsel and Fulton's Counsel with written objections that: (i) set forth the Settlement Class Member's full name, current address, and telephone number; (ii) contain the Settlement Class Member's original signature; (iii) state that the Settlement Class Member objects to the Settlement, in whole or in part; (iv) set forth a statement of the legal and factual basis for the Objection; and (v) provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position. Any Settlement Class Member who fails to object in this manner will be deemed to have waived and forfeited any and all rights he or she may have to appear separately and to object to the Settlement Agreement, and the

11

Settlement Class Member shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation.

19.    All opening briefs and documents in support of any application by Plaintiff for a motion for attorney's fees, costs, and expenses, and possibly for a service award for Class Representative, shall be filed and served by no later than 14 days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement Agreement. Plaintiff shall file a Motion for Final Approval of the Class Action Settlement no later than 14 days prior to the Final Approval Hearing.

20.    At or after the Final Approval Hearing, the Court shall determine whether any applications for a possible service award and for attorney's fees, costs, and expenses should be approved. The Court reserves the right to enter a Final Judgment and Order approving the Settlement regardless of whether it has awarded the service award, or attorney's fees, costs, and expenses.

21.    All reasonable expenses incurred in identifying and notifying Settlement Class Members, as well as administering the settlement, shall be the responsibility of Fulton and shall be paid out of the Settlement Fund as set forth in the Settlement Agreement.

22.     Neither this Order, the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Fulton of the truth of any of the allegations in the Litigation, or of any liability, fault, or wrongdoing of any kind.

23.     The Court reserves the right to adjourn the date of the Final Approval Hearing without further notice to the Settlement Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the proposed settlement. The Court may approve the settlement, with such modifications as may be agreed to by the Parties to the Settlement Agreement, if appropriate, without further notice to the Settlement Class.

24.     If the Settlement Agreement and the settlement set forth therein is not approved or consummated for any reason whatsoever, the Settlement Agreement and settlement and all proceedings had in connection therewith shall be without prejudice to the rights of the parties to the Settlement Agreement *status quo ante*.

25.     Until otherwise ordered by the Court, the Court shall continue to stay all proceedings relating to Fulton Bank, N.A. in the Lawsuit other than proceedings necessary to carry out or enforce the terms and conditions of the Settlement Agreement.

26.     The preliminarily approved Settlement shall be administered according to its terms pending the Final Approval Hearing. Deadlines arising under the Settlement and this Order include, but are not limited to:

| EVENT | DATE |
|---|---|
| Defendant to provide the Class Member Information to Settlement Administrator | 7 days after entry of Preliminary Approval Order |
| Notice Date | 21 days after entry of Preliminary Approval Order |
| Deadline for Plaintiffs to File Motion for Attorneys' Fees, Costs, Expenses, and Service Awards for Class Representatives | 14 days before the Opt-Out and Objection Deadlines |
| Opt-Out and Objection Deadlines | 60 days after Notice Date |
| Deadline for Parties to Respond to Objections | 14 Days after the Objection Deadline or Receipt of Any Timely Submitted Objection, whichever is later |
| Deadline for Class Members to Submit Claim Forms | 90 days after Notice Date |
| Deadline for Plaintiffs to File Motion for Final Approval of Class Action Settlement | 14 days prior to Final Approval Hearing |
| Final Approval Hearing | No less than 100 Days after the entry of this Order |

14

IT IS SO ORDERED.

Date: _____          _____
                              Judge, Steven D. Grimberg

# EXHIBIT E

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In Re: Overby-Seawell Company Customer Data Security Breach Litigation | Case No. 1:23-md-03056-SDG |

## [PROPOSED] FINAL APPROVAL ORDER

Before the Court is Plaintiff's Unopposed Motion for Final Approval of Class Settlement Agreement (the "Motion") requesting that the Court enter an Order granting final approval of the class action settlement involving Plaintiff Kathy Keefer ("Plaintiff" or "Class Representative") and Defendant Fulton Bank, N.A. ("Defendant" or "Fulton") as fair, reasonable, and adequate.

Having reviewed and considered the Settlement Agreement and Plaintiff's Motion, and having conducted a Final Approval Hearing, the Court makes the findings and grants the relief set forth below approving the settlement upon the terms and conditions set forth in this Final Approval Order.

**THE COURT** not being required to conduct a trial on the merits of the case or determine with certainty the factual and legal issues in dispute when determining whether to approve a proposed class action settlement; and

**THE COURT** being required under Federal Rule of Civil Procedure 23(e) to make the findings and conclusions hereinafter set forth for the limited purpose of determining whether the settlement should be approved as being fair, reasonable, adequate and in the best interests of the Settlement Class Members;

**IT IS ON THIS** _____ day of _____, 2023,

**ORDERED** that:

1.      The settlement involves allegations in Plaintiff's Amended Class Action Complaint that Fulton failed to safeguard and protect the sensitive and personal data of Plaintiff and the Settlement Class Members.

2.      The settlement does not constitute an admission of liability by Fulton, and the Court expressly does not make any finding of liability or wrongdoing by Fulton.

3.      Unless otherwise noted, words spelled in this Final Approval Order with initial capital letters have the same meaning as set forth in the Settlement Agreement.

4.      On _____, the Court entered an Order Granting Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order"), which, among other things: (a) approved the Class Notice to the Settlement Class, including approval of the form and manner of notice set forth in the Settlement Agreement; (b) provisionally certified a class in this matter, including defining the Settlement Class; (c) appointed Plaintiff as the Class Representative and Ben

Barnow of Barnow & Associates, P.C., as Class Counsel; (d) preliminarily approved the settlement; (e) set deadlines for opt-outs and objections; (f) approved and appointed the Claims Administrator; and (g) set the date for the Final Approval Hearing.

5.      In the Preliminary Approval Order, Federal Rule of Civil Procedure 23(b)(3) and 23(e) the Court defined the Settlement Class for settlement purposes only. The Court defined the Settlement Class as follows:

> **<u>The Settlement Class</u>:** All persons who provided their personal data to Fulton Bank, N.A. and were notified that their personal data may have been impacted as a result of Overby-Seawell Company's cybersecurity incident that it discovered on or about July 5, 2022.

Excluded from the Settlement Class are: (1) Fulton's and OSC's officers and directors; (2) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (3) the Judges assigned to the Litigation and to evaluate the fairness, reasonableness, and adequacy of this settlement; and (4) any other Person found by a court of competent jurisdiction to be guilty under criminal law of perpetrating, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. The Court, having reviewed the terms of the Settlement Agreement submitted by the Parties, grants final approval of the Settlement Agreement and certifies the Settlement Class as defined herein and in the Preliminary Approval Order, and finds that the settlement

is fair, reasonable, and adequate and meets the requirements of Federal Rule of Civil Procedure 23(e).

6.     The Settlement Agreement provides, in part, and subject to a more detailed description of the settlement terms in the Settlement Agreement, for:

a.  A process by which Settlement Class Members who submit valid and timely Settlement Class Claim Forms to the Claims Administrator will receive 24 months of credit monitoring services free of charge.

b.  A process by which Settlement Class Members who submit valid and timely Settlement Class Claim Forms to the Claims Administrator are eligible to receive compensation for up to 4.5 hours of lost time at $25.00 per hour.

c.  A process by which Settlement Class Members who submit valid and timely Settlement Class Claim Forms with supporting documentation to the Claims Administrator are eligible to receive compensation for ordinary unreimbursed losses up to a total of $150.00.

d.  A process by which Settlement Class Members who submit valid and timely Settlement Class Claim Forms with supporting

documentation to the Claims Administrator are eligible to receive compensation for extraordinary unreimbursed losses up to a total of $5,000.00.

e. Settlement Class Members may, as an alternative to the compensation described above, elect to receive an Alternative Cash Payment (estimated to be $60) based on the amount remaining in the Settlement Fund following the distribution of funds from the Settlement Fund in accordance with the manner set forth in the Settlement Agreement.

f. All costs of class notice and claims administration will be paid from the Settlement Fund as in accordance with the Settlement Agreement.

g. A possible Service Award in the amount of $1,000 to the Class Representative, and any benefits provided to Settlement Class Members and the costs of notice and settlement administration and separate from any payment for attorneys' fees, costs, and expenses. This payment will be distributed from the Settlement Fund in accordance with the Settlement Agreement.

h. Fulton to pay the Court-approved attorneys' fees, costs, and expenses up to $187,500, separate from any Service Award to the Class Representative. This payment will be distributed from the Settlement Fund in accordance with the Settlement Agreement.

7.     The terms of the Settlement Agreement are fair, reasonable, and adequate, and are hereby approved, adopted, and incorporated by the Court. The Parties, their respective attorneys, and the Claims Administrator are hereby directed to consummate the settlement  in accordance with this Order and the terms of the Settlement Agreement.

8.     Notice of the Final Approval Hearing and the proposed Motion for Attorneys' Fees, Costs, and Expenses[, and Service Award] have been provided to Settlement Class Members as directed by this Court's orders.

9.     The Court finds that such notice as therein ordered constituted the best practicable notice under the circumstances, apprised Settlement Class Members of the pendency of the action, gave them an opportunity to opt out or object, complied with the requirements of Federal Rule of Civil Procedure 23(c)(2), and satisfied due process under the United States Constitution, and other applicable law.

10.     As of the final date of time for opting out of the settlement, _____ Settlement Class Members have submitted a valid request to be excluded from the

settlement. The names of those persons are set forth in **Exhibit A** to this Order. Those persons are not bound by this Final Approval Order, as set forth in the Settlement Agreement.

11.     The Court has considered all the documents filed in support of the settlement, and has fully considered all matters raised, all exhibits and affidavits filed, all evidence received at the Final Approval Hearing, all other papers and documents comprising the record herein, and all oral arguments presented to the Court.

12.     The Court has considered Class Counsel's motion for attorneys' fees, costs, expenses, and service awards. The Court awards Class Counsel the sum of $_____ as an award of attorneys' fees and $_____ as an award of costs, and the Court finds this amount of fees and costs to be fair and reasonable. These payments shall be paid in accordance with the Settlement Agreement.

13.     Class Counsel [also filed/did not file] a motion for a service award for the Class Representative. The Court [having considered the motion, grants Class Counsel's request for service awards to the Class Representative and awards $_____ to Plaintiff Kathy Keefer/does not grant any service award].

14.     Pursuant to the Settlement Agreement, Fulton and the Claims Administrator shall implement the Settlement in the manner and timeframe as set forth herein.

15.     As of the Effective Date, the Plaintiff named in the Settlement Agreement and Release and every Settlement Class Member (except those who timely opted out), will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from any and all past, present, and future claims, counterclaims, lawsuits, set-offs, costs, expenses, attorneys' fees, costs, and expenses, losses, rights, demands, charges, complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, known, unknown, or capable of being known, in law or equity, fixed or contingent, accrued or unaccrued and matured or not matured that arise out of, are connected to, or relate in any way to the Data Incident, including such claims that were or could have been asserted in the Litigation.

16.     The Released Claims do not include any claims against OSC or related entities. Released Persons does not include OSC or its present and former parents, subsidiaries, divisions, departments, affiliates, employees, servants, members, providers, partners, principals, directors, shareholders, owners, predecessors, successors, assigns, and insurers, and each of the foregoing's former or present

directors, trustees, officers, employees, representatives, agents, providers, consultants, advisors, attorneys, accountants, partners, vendors, customers, insurers, reinsurers, and subrogees.

17.     Plaintiff and the Settlement Class Members waive any principles of law similar to and including Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Plaintiff and the Settlement Class Members agree that Section 1542 and all similar federal or state laws, rules, or legal principles of any other jurisdiction are knowingly and voluntarily waived in connection with the claims released in the Settlement Agreement and agree that this is an essential term of the Settlement Agreement. Plaintiff and the Settlement Class Members acknowledge that they may later discover claims presently unknown or suspected, or facts in addition to or different from those which they now believe to be true with respect to the matters released in the Settlement Agreement. Nevertheless, Plaintiff and the Settlement Class Members fully, finally, and forever settle and release the Released Claims against the Released Parties.

18.     Notwithstanding Paragraphs 15, 16, and 17, *supra*, the Parties expressly agree and acknowledge that the Release negotiated in the Settlement Agreement shall not apply to any litigation or claim not related to or arising out of the Data Incident.

19.     In no event shall the Settlement Agreement, any of its provisions, or any negotiations, statements, or proceedings relating to it be offered or received as evidence in the Lawsuit or in any other proceeding, except in a proceeding to enforce the Settlement Agreement (including its Release).

20.     Released Claims shall not include the claims of those persons identified in **<u>Exhibit A</u>** to this Order who have timely  and validly requested exclusion from the Settlement Class.

21.     The matter is hereby dismissed with prejudice and without costs as to Plaintiff Kathy Keefer's claims against Defendant Fulton Bank, N.A. except that the Court reserves jurisdiction over the consummation and enforcement of the settlement. This Order does not affect any Plaintiff's claims against Defendant Overby-Seawell Company or any other Defendant that is not Fulton Bank, N.A.

22.     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and the Parties submit to the

jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

IT IS SO ORDERED.

Date: _____            _____
                                  Judge, Steven D. Grimberg