# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

In Re: Overby-Seawell Company
Customer Data Security Breach
Litigation

Case No. 1:23-md-03056-SDG

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
## <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

## I.    INTRODUCTION

On May 11, 2023, this Court preliminarily approved the nationwide Settlement[1] between Plaintiff Kathy Keefer ("Plaintiff") and Defendant Fulton Bank, N.A. ("Defendant" or "Fulton Bank").[2] The Settlement related to Plaintiff's and the Settlement Class's[3] claims against Fulton Bank relating to a data security incident that impacted Fulton Bank's customers' personally identifiable information ("PII"). Following preliminary approval, the Notice Program was carried out and notice was successfully disseminated to the Settlement Class in accordance with the Court's Preliminary Approval Order. The reaction to the Settlement has been overwhelmingly positive: as of August 23, 2023, there have been no objections and only sixteen requests for exclusion out of a class of approximately 111,663 Settlement Class Members. The Settlement created a non-reversionary common fund of $750,000 that will provide significant benefits to the Settlement Class.

The preliminarily approved Settlement, as set forth in the executed Settlement Agreement, resolves Plaintiff's claims on a class-wide basis. The Settlement is fair,

---

[1] The Settlement Agreement is attached as an exhibit to the granted motion for preliminary approval. *See* ECF No. 48-2.

[2] Defendant Overby-Seawell Company is not a party to the Settlement and the Settlement does not release any claims against Overby-Seawell Company.

[3] Unless otherwise noted herein, capitalized terms have the same meaning given to them in the Settlement Agreement.

reasonable, and adequate, has been well received by the Class, and satisfies all the criteria for final settlement approval. Accordingly, the Court should grant final settlement approval.

## II.    BACKGROUND

This action arose from a data security incident that impacted the systems of Defendant Overby-Seawell Company ("OSC"), which is a third-party vendor of Fulton Bank. OSC provides compliance, insurance, and other services to financial institutions. *Keefer* Amended Complaint, ECF No. 86 ("Compl."), ¶ 2. Fulton Bank provides certain personal data obtained from its mortgage loan customers to OSC in connection with receiving property insurance validation services. *Id.* ¶ 3. Between May 26, 2022, and July 5, 2022, OSC experienced a data security incident in which an unauthorized individual accessed OSC's network systems and files containing the personal data of Plaintiff and approximately 111,663 other Fulton Bank customers (the "Data Incident"). *See id.* ¶¶ 1, 21. The PII disclosed in the Data Incident included names; Social Security numbers; mailing and collateral addresses; loan information, including loan numbers, amounts, and maturity dates; insurance policy information; and phone numbers. *Id.* ¶ 23.

Plaintiff Keefer's case was consolidated into this MDL on March 9, 2023. *See* ECF No. 20. Shortly thereafter, Plaintiff filed her First Amended Complaint, which

was brought on behalf of herself and a class of similarly situated individuals. The First Amended Complaint alleges that Fulton Bank and OSC failed to adequately safeguard Plaintiff's and Class member's PII and brings claims for negligence, negligence per se, breach of implied contract, unjust enrichment, and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1 *et seq*. *Id*. ¶¶ 51–98. Before Plaintiff's case was consolidated into the instant action, Fulton Bank moved to dismiss the original complaint (which involved different plaintiffs, whom Plaintiff Keefer replaced) and Plaintiff's counsel submitted a response on behalf of the original plaintiffs. *See Sheckard v. Overby-Seawell Company*, No. 22-cv-3708, ECF No. 19.

Beginning in December of 2022, the Parties engaged in extensive arm's length negotiations concerning a possible settlement of this matter. Declaration of Ben Barnow ("Barnow Decl."), attached as Exhibit 1, ¶ 2. Plaintiff served informal discovery on Fulton Bank, and Fulton Bank responded. *Id*. The Parties also discussed their respective positions on the merits of the claims . *Id.*

The Parties recognize and acknowledge the benefits of settling this case. Plaintiff and Class Counsel recognize that  litigation has risks, and that discovery, class certification proceedings,  trial, and appeals will be time-consuming and expensive for both parties and are not without substantial risk. *Id.*, ¶ 5. Plaintiff and

Class Counsel also recognize the potential benefits of early resolution, including that Settlement Class Members will receive proper identity theft protections and compensation far sooner and with certainty. *Id.*, ¶ 6. Plaintiff and Class Counsel have, therefore, determined that the Settlement is fair, reasonable, and adequate. *Id.*, ¶ 3. Defendant maintains that it has several meritorious defenses to the claims asserted in this action and denies all liability.

## III.    TERMS OF THE SETTLEMENT

### A.    Settlement Benefits

The Settlement requires Fulton Bank to pay $750,000.00 into the Settlement Fund. Settlement, ¶ 13. Compensation will be paid from the Settlement Fund to Settlement Class Members who submit a timely and valid claim form approved by the Settlement Administrator. *See id.*, ¶ 23. Claims will be subject to review for completeness and plausibility by the Settlement Administrator. *See id.*, ¶ 34. For claims deemed invalid, the Settlement Administrator will provide claimants an opportunity to cure. *Id.*, ¶ 35.

#### 1.    Compensation for Ordinary Losses

Settlement Class Members may claim up to $150.00 by submitting a valid and timely claim form and supporting documentation for demonstrable ordinary losses incurred more likely than not as a result of the Data Incident. *Id.*, ¶ 24(a). Ordinary

losses include out-of-pocket expenses incurred as a direct result of the Data Incident, as well as fees for credit reports, credit monitoring, or other identity theft insurance product purchased between July 5, 2022, and the end of the Claims Period. *Id.*, ¶ 24(a)(i)–(ii).

### 2.    Compensation for Lost Time

Settlement Class Members may claim up to 4.5 hours of lost time spent dealing with the Data Incident at $25.00 per hour, if they spent at least one-half hour dealing with the Data Incident. *Id.*, ¶ 24(b). All such lost time must be reasonably described and supported by an attestation that the time spent was related to the Data Incident. *Id.*

### 3.    Compensation for Extraordinary Losses

Settlement Class Members may claim up to $5,000.00 for Extraordinary Losses by submitting a valid and timely claim form supported by an attestation and documentation supporting the amount claimed. *Id.*, ¶ 24(c). The Settlement Administrator will "employ heightened scrutiny" when assessing claims under this category. *Id.* The claim must demonstrate:

> (i) The loss is an actual, documented, and unreimbursed monetary loss;
> (ii) The loss was more likely than not the result of the Data [Incident];
> (iii) The loss is not already covered by the 'Compensation for Ordinary Losses' category; and (iv) the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit

5

monitoring insurance and identity theft insurance and other available insurance.

*Id.*

### 4.    Credit Monitoring

Settlement Class Members may claim 24 months of three-bureau credit and identity theft monitoring. The credit monitoring will include real-time credit monitoring at all three major credit bureaus; identity theft insurance of $1,000,000.00 with no deductible; and access to fraud resolution agents to help avoid identity theft. *Id.*

### 5.    Cash Compensation

In the alternative to all the compensation described above, Settlement Class Members may select a one-time cash payment estimated to be approximately $60.00, subject to proration depending on the number of valid claims filed. *Id.*, ¶ 25.

### B.    Release

In exchange for the relief described above, Class Members who do not opt out of the Settlement will fully release Fulton Bank for all Released Claims, including:

> [A]ny and all past, present, and future claims, counterclaims, lawsuits, set-offs, costs, expenses, attorneys' fees, costs, and expenses, losses, rights, demands, charges, complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, known, unknown, or capable of being known, in law or equity, fixed or contingent, accrued or unaccrued and matured or not matured that arise out of, are connected to, or relate in any way to the

6

Data Incident, including such claims that were or could have been
asserted in the Litigation.

*Id.* ¶¶ 88–89. The Release does not include or release claims against OSC or its
related persons or entities. *Id.*

### C.    Notice and Settlement Administration

The Court appointed KCC Class Action Services, LLC ("KCC") as Claims
Administrator. *See* ECF No. 88, ¶ 12. The Claims Administrator provided notice to
the Class in the manner set forth below. *See* Declaration of Jay Geraci re: Notice
Procedures ("Geraci Decl."), attached hereto as Exhibit 2. The cost of such Notice
will be paid from the Settlement Fund. Settlement, ¶ 16.

Direct notice was sent to 111,094 Settlement Class Members via First Class
U.S. Mail after the Claims Administrator ran all names and addresses through the
National Change of Address Database. *See* Geraci Decl., ¶¶ 7–8. When notice
packets were returned as undeliverable, the Claims Administrator re-mailed the
notice packets with the forwarding addresses provided by USPS or after searching
for new addresses. *See id.* ¶¶ 9–10. The Claims Administrator also created a publicly
available website devoted to providing relevant information related to the case and
settlement, and through which Class Members can submit their claims. *See id.* ¶¶

11.[4] The Claims Administrator also created a telephone hotline, which Settlement Class Members can call and obtain information about the Settlement. *See id.* ¶¶ 12.

As of August 23, 2023, the Claims Administrator has received 4,110 claims. *See id.*, ¶ 13. Additionally, the Claims Administrator received only 16 timely requests for exclusion. *See id.*, ¶ 14. Neither the Claims Administrator nor Class Counsel have received any objections to the Settlement. *See* Geraci Decl., ¶ 15; Barnow Decl. ¶ 14.

## IV.    ARGUMENT

A class action may not be settled without the Court's approval. Fed. R. Civ. P. 23(e). The Court must determine whether the Settlement is "fair, reasonable, and adequate." *See Taylor v. Serv. Corp. Int'l*, No. 20-CV-60709-RAR, 2023 U.S. Dist. LEXIS 35167, at *9 (S.D. Fla. Mar. 3, 2023) (citing Fed. R. Civ. P. 23(e)). When "the Court is presented with a proposed settlement prior to a decision on class certification, the Court must determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23." *Carr v. Ocwen Loan Servicing, LLC*, No. 1:13-cv-00732-CAP-JCF, 2013 U.S. Dist. LEXIS 204045, at *3 (N.D. Ga. Nov. 26, 2013).

---

[4] *See* http://fultonbankdataincidentsettlement.com/ (last accessed August 23, 2023).

Federal courts "have long recognized a strong policy and presumption in favor of class settlements." *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1367 (N.D. Ga. 2019). "In reviewing proposed settlements, courts should also be bear in mind the judicial policy favoring settlements." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558 (N.D. Ga. 2007) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

## A.    The Court Should Grant Final Certification of the Settlement Class

Pursuant to the Settlement, the Court should certify the following Settlement Class:

> All persons who provided their personal data to Fulton Bank, N.A. and were notified that their personal data may have been impacted as a result of Overby-Seawell Company's cybersecurity incident that it discovered on or about July 5, 2022.

SA ¶ 10(jj).

A class may be certified under Rule 23 if the following "prerequisites" are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23(a). In this case, the Settlement Class meets all the prerequisites. In addition to these prerequisites, a settlement under Rule 23(b)(3) must meet additional

9

requirements. In order to certify a class under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The Court preliminarily certified the Settlement Class in its Preliminary Approval Order, finding that the Rule 23 elements were all met. *See* ECF No. 88, ¶ 2. Nothing has occurred that would change the Court's previous determination that Plaintiff has proven the requirements under Rule 23. First, pursuant to Rule 23(a)(1), there can be no doubt that numerosity is satisfied as the Settlement Class consists of approximately 111,663 persons. Pursuant to Rule 23(a)(2), there are questions of law or fact common to the Settlement Class, including whether Fulton Bank violated common law duties and breached an implied contract with its customers; whether Fulton Bank failed to properly secure and protect Settlement Class Members' PII; and whether Settlement Class Members are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Here, the claims of the named Plaintiff are typical of the claims of the Settlement Class. Plaintiff's and Settlement Class Members' claims arise from the same nucleus of facts relating to the Data Breach, pertain to a

common defendant Fulton Bank, and are based on the same legal theories. Finally, under Rule 23(a)(4), Plaintiff and her counsel do not have any conflicts of interest with Settlement Class Members and have demonstrated their commitment to prosecute the action vigorously on behalf of the class.

   The facts here also meet the requirements of Rule 23(b). Plaintiff's claims depend on whether Fulton Bank had a duty to protect the personal data of Plaintiff and Class Members, and whether Fulton Bank breached that duty; whether an implied contract was formed between the Parties and whether Fulton Bank breach that implied contract; whether Fulton Bank engaged in deceptive or unfair acts and practices in violation of Pennsylvania law; and whether and to what extent Plaintiff and Class Members are entitled to damages or other relief. These questions can be resolved by resort to common evidence for all Settlement Class Members, including Fulton Bank's internal documents, testimony of its employees, and expert analysis. In addition, the class action mechanism is superior for resolving this matter given the very large size of the proposed class weighed against the expense and burden of individual actions. Because this case satisfies the Rule 23 requirements, the Court should grant final certification of the Class.

## B.    Final Approval of the Settlement is Warranted

After "the determination that proceeding as a class action for purposes of settlement is warranted, the inquiry turns to whether the [Settlement] should be approved." *Tweedie v. Waste Pro of Fla., Inc.*, No. 8:19-cv-1827-TPB-AEP, 2021 U.S. Dist. LEXIS 85018, at *23 (M.D. Fla. May 4, 2021). "To approve a class action settlement, a district court must determine that the settlement is fair, adequate, and reasonable and is not the result of collusion between the parties. *Id.* at *24 (citing *Bennett*, 737 F.2d at 986). In making this determination courts consider:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Eleventh Circuit has identified six additional factors to aid the Court's analysis, which Plaintiff addresses within the 23(e)(2) factors below: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011); *see also Bennett*, 737 F.2d at 986. The Settlement is fair, reasonable, and adequate, and should be finally approved.

### 1.    The Settlement Class is Adequately Represented

Plaintiff and Plaintiff's counsel have adequately represented the Class. Plaintiff's counsel has significant experience in data breach consumer class actions such as this and is well-informed of the legal theories and claims at issue. Barnow Decl. Ex. A. Since the initiation of this litigation, Plaintiff's counsel has worked diligently to advance Plaintiff and the Settlement Class Members' interests. Barnow Decl., ¶¶ 7–8. After learning of the Data Incident, Plaintiff's counsel conducted a thorough preliminary investigation into the law and facts of the case, filed the lawsuit, engaged in informal discovery with Fulton Bank, and negotiated the Settlement. *Id.* Plaintiff's counsel also responded to Fulton Bank's motion to dismiss prior to consolidation into the MDL. *See id.*

### 2.    The Settlement Was Negotiated at Arm's Length

The Settlement is the product of extensive hard-fought arm's length negotiations after a careful assessment of the strengths of Plaintiff's claims and Fulton Bank's defenses. Barnow Decl., ¶ 5. Beginning in December, 2022, the Parties engaged in arm's length negotiations. Plaintiff's counsel is highly

experienced and has negotiated settlements in many similar data breach cases. *See* Barnow Decl. Ex. A. Plaintiff served informal discovery on Fulton Bank, which Fulton Bank answered. Barnow Decl., ¶ 3. For several months, the Parties engaged in negotiations before coming to an agreement on the terms of the Settlement. The Settlement was not the product of fraud or collusion. This factor favors approval. *See Williams v. Mohawk Indus.*, No. 4:04-CV-0003-HLM, 2010 U.S. Dist. LEXIS 152308, at *22 (N.D. Ga. July 22, 2010) (holding that evidence of arms-length negotiations with a lack of collusion supports final approval).

### 3.    The Settlement Benefits are Excellent Compared to the Costs, Risks, and Delays of Further Litigation

The Settlement provides excellent relief to the Class, especially when weighed against the risks, costs, and delays of further litigation. Plaintiff and Plaintiff's counsel believe the claims asserted in the litigation have merit. Fulton Bank has maintained its position that Plaintiff cannot state a claim for relief, that a class could not be certified, that it would not be found liable at trial, and that Plaintiff would not be able to prove damages resulting from the Data Incident. While he disagrees with Fulton Bank's views, Plaintiff's counsel is mindful of the inherent problems of proof and possible defenses to the claims asserted in the litigation. He also recognizes the difficulties in establishing liability on a class-wide basis through summary judgment or at trial and in achieving a result better than that offered by the Settlement here.

Furthermore, the complicated legal and factual questions regarding class certification, claims, and defenses would require substantial discovery and motion practice. There is a high likelihood that the Court's judgment would be appealed and the appellate court presented with various issues of law. Even if Plaintiff were to succeed in obtaining all the relief she seeks, it would take considerable time, expense, and the assumption of significant risk.

Pursuing this litigation through trial and appeal would be lengthy, complex, and impose significant costs on all parties. The Settlement provides prompt, guaranteed benefits in the form of compensation for ordinary and extraordinary losses, lost time, and credit monitoring, or alternatively a cash payment. *See* Section II.A., *supra*; *see also Tweedie*, 2021 U.S. Dist. LEXIS 85018, at *33 ("Settlement Class Members also benefit from the potential receipt of a monetary payment without the expense and risks associated with litigation, including the risk of a smaller or no award.").

Plaintiff's counsel has negotiated numerous data breach class settlements and evaluated many settlements reached in other cases. The deal reached by the Parties here compares favorably with these settlements. *See* Barnow Decl., ¶ 13. The Settlement Fund provides approximately $6.72 per person, which is a significantly higher per capita recovery than in many recent financial data breach settlements. *See*,

*e.g.*, *McPherson v. American Bank Systems, Inc.*, No. 20-cv-1307-G (W.D. Okl.), ECF Nos. 54, 73 (finally approving financial data breach settlement with a $1,700,000 fund for class of 554,000 persons ($3.07 per class member)); *In re Morgan Stanley Data Sec. Litig.*, No. 1:20-cv-05914-AT (S.D.N.Y), ECF No. 156 (finally approving financial data breach settlement with a $60,000,000 fund for a class of approximately 15,400,000 persons (~$3.90 per class member)); *In re Equifax Inc. Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga.) (finally approving data breach settlement with a $380,600,000 fund for over 147,000,000 persons (approximately $2.59 per class member)).

### 4.    Class Members are Treated Equitably Under the Settlement

The Settlement also meets the final of the Rule 23(e)(2) factors, as all Settlement Class Members are given an equal opportunity to claim benefits under the Settlement. *See Millstein v. Holtz*, No. 21-CV-61179-RAR, 2022 U.S. Dist. LEXIS 233782, at *21 (S.D. Fla. Dec. 30, 2022) (holding that Rule 23(e)(2)(d) is met where distribution of benefits "will effectively benefit every member of the Class and treat them equitably relative to each other"). Specifically, each Settlement Class Member has the option to be reimbursed for documented losses and lost time as a result of the data breach in addition to obtaining credit monitoring services or they can forego those options and chose a cash payment.

### 5.    The Lack of Opposition to the Settlement Supports Final Approval

Settlement Class Members have shown their approval of the Settlement through the dearth of opposition. "A low percentage of objections demonstrates the reasonableness of a settlement." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007). To date, zero Settlement Class Members have objected to the Settlement and only 16 submitted timely requests for exclusion. *See* Geraci Decl., ¶¶ 14, 15; Barnow Decl. ¶ 14. Courts often find a higher percentage of objections and opt-outs demonstrates a settlement class's lack of opposition to a settlement. *See*, *e.g.*, *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838-WBH, 2008 U.S. Dist. LEXIS 121093, at *44 (N.D. Ga. Oct. 20, 2008) (holding that 352 requests for exclusion and 14 objections where notice was sent to 776,400 class members "strongly supports approval of the settlement"); *In re Home Depot Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 U.S. Dist. LEXIS 200113, at *34 (N.D. Ga. Aug. 23, 2016) (five objections and 51 requests for exclusion in a class of tens of millions of persons "weighs strongly in favor of final approval").

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order (i) granting final approval of the Settlement Agreement, (ii) ordering final

certification of the Settlement Class for settlement purposes, (iii) finding that the Notice Program was carried out as required by the Preliminary Approval Order and that the notice to the Class was sufficient, (iv) appointing Plaintiff Kathy Keefer as Class Representative, (v) appointing Ben Barnow of Barnow and Associates, P.C., as Class Counsel, and (vii) granting the motion for attorneys' fees, costs, and expenses, filed on July 17, 2023.

Dated: August 23, 2023

Respectfully submitted,

/s/ *Ben Barnow*
Ben Barnow*
Anthony L. Parkhill*
Riley W. Prince*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Tel: 312.621.2000
Fax: 312.641.5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com
rprince@barnowlaw.com

James M. Evangelista
(GA Bar No. 707807)
**EVANGELISTA WORLEY, LLC**
500 Sugar Mill Road, Ste. 245A
Atlanta, GA 30350
(404) 205-8400
jim@ewlawllc.com

*admitted pro hac vice*

*Counsel for Plaintiff Kathy Keefer*

## **LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), undersigned counsel certifies that the foregoing brief has been prepared using Times New Roman font, 14 point.

/s/ *Ben Barnow*
Ben Barnow

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above document was served upon all counsel of record via ECF electronic filing on August 23, 2023.

<u>/s/ *Ben Barnow*   </u>
Ben Barnow