**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| In re Overby-Seawell Company Customer Data Security Breach Litigation | Case No. 1:23-md-03056-SDG<br><br>Judge Steven D. Grimberg |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS AND SUPPORTING MEMORANDUM

## TABLE OF CONTENTS

**Summary of Settlement** ........................................................................ 1

**I. BACKGROUND** ............................................................................. 2

   A. History of Litigation ..................................................................... 2

   B.  Negotiations and Settlement ......................................................... 3

   C.  Summary of Settlement Terms ....................................................... 4

      1. Settlement Benefits ................................................................. 4

        a.  Financial Monitoring ......................................................... 4

        b.  Reimbursement of Out-of-Pocket Losses up to $6,000 ................. 5

        c.  Lost Time Payments ........................................................ 5

        d.  California Consumer Privacy Act Payments ............................. 5

        e.  Alternative *Pro Rata* Cash Payments ..................................... 5

        f.  Fulton Bank Subclass Members ........................................... 5

      2. Scope of the Release .............................................................. 6

      3. The Notice and Administration Plans ......................................... 7

      4. Attorneys' Fees and Expenses .................................................. 8

**II. LEGAL STANDARD** ..................................................................... 9

**III. ARGUMENT** ............................................................................. 10

  A.  Certification of the Settlement Class is Appropriate. ........................... 10

      1. Numerosity ......................................................................... 11

      2. Commonality ...................................................................... 11

      3. Typicality ........................................................................... 12

      4. Adequacy of Representation .................................................... 13

      5. Certification under Rule 23(b)(3) is appropriate ........................... 13

        a.  *Common Questions of Law and Fact Predominate* ................... 14

        b.  *A Class is the Superior Method of Adjudicating this Case* ....... 15

B.  The Proposed Settlement Satisfies the Standard for Preliminary Approval...16

    1.  The proposed Settlement was reached after serious, informed, and arm's-length negotiations .........................................................17

    2.  The proposed Settlement falls within the range of reasonableness and has no obvious deficiencies, and thus, warrants issuance of notice and a hearing on final approval of settlement ...................18

    3.  The *Bennett* factors support preliminary approval.........................19

C.  The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator .........................................................21

D.  The Proposed Form and Manner of Notice is Reasonable and Should be Approved....................................................................................................22

E.  The Court Should Approve a Settlement Schedule .......................................24

**CONCLUSION**......................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Agnone v. Camden Cnty.*,
   No. 2:14-cv-00024-LGW-BKE, 2019 WL 1368634
   (S.D. Ga. Mar. 26, 2019) .................................................................................25

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................. 11, 14, 17

*Anderson v. Garner*,
   22 F. Supp. 2d 1379 (N.D. Ga. 1997)..................................................................12

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ...........................................................................18

*Burrows v. Purchasing Power, LLC*,
   No. 1:12-CV-22800, 2013 WL 10167232 (S.D. Fla. Oct. 7, 2013) ....................20

*Cole v. Stateserv Med. of Fla., LLC*,
   No. 8:17-cv-829, 2018 WL 3860263 (M.D. Fla. June 19, 2018).......................18

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   258 F.R.D. 545 (N.D. Ga. July 20, 2007)..................................................... passim

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ...........................................................................21

*Dep't of Labor v. McConnell*,
   305 Ga. 812, 828 S.E.2d 352 (Ga. 2019)............................................................20

*Dickens v. GC Servs. Ltd. P'ship*,
   706 F. App'x 529 (11th Cir. 2017)......................................................................16

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)............................................................................................23

*Fresco v. Auto Data Direct, Inc.*,
   No. 03–61063–CIV, 2007 WL 2330895 (S.D. Fla. May 11, 2007)....................10

*In re Checking Acct. Overdraft Litig.*,
    275 F.R.D. 654 (S.D. Fla. 2011) .......................................................................17

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    999 F.3d 1247 (11th Cir. 2021) ................................................... 9, 11, 14

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    No. 1:17-MD-2800-TWT, 2020 WL 256132
    (N.D. Ga. Mar. 17, 2020)............................................................ 13, 16, 20

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016).........13

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) .................................................... 10, 21

*Klay v. Humana, Inc.*,
    382 F.2d 1241 (2004)..........................................................................15

*Mashburn v. Nat'l Healthcare, Inc.*,
    684 F. Supp. 660 (M.D. Ala. 1988) ...............................................21

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)............................................................................23

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010) .......................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011).......................................................................12

*Woodward v. NOR–AM Chem. Co.*,
    No. Civ-94-0870, 1996 WL 1063670 (S.D. Ala. May 23, 1996).........................21

**Statutes**

28 U.S.C. § 2201 ........................................................................................3

Ga. Code Ann. §§ 10-1-370.....................................................................2

Ga. Code Ann. § 13-6-11 ..........................................................................3

N.Y. Gen. Bus. Law § 349.........................................................................3

**Rules**

Fed. R. Civ. P. 23 ..................................................................................1, 24

Fed. R. Civ. P. 23(a) ........................................................................ 11, 13

Fed. R. Civ. P. 23(a)(1) ...........................................................................11

Fed. R. Civ. P. 23(a)(2) ...........................................................................12

Fed. R. Civ. P. 23(a)(3) ...........................................................................13

Fed. R. Civ. P. 23(a)(4) ...........................................................................14

Fed. R. Civ. P. 23(b) ................................................................................11

Fed. R. Civ. P. 23(b)(3)............................................................ 11, 14, 15, 17

Fed. R. Civ. P. 23(b)(3)(D) ......................................................................15

Fed. R. Civ. P. 23(c)(2)(B) .............................................................. 23, 24

Fed. R. Civ. P. 23(e) .................................................................... passim

Fed. R. Civ. P. 23(e)(1) ............................................................................23

Fed. R. Civ. P. 23(h)(1).............................................................................24

**Other Authorities**

Annotated Manual for Complex Litigation (Fourth) § 21.662 (2012) ....................10

Manual for Complex Litigation (Third) § 30.41 (1995)..........................................10

Pursuant to Federal Rule of Civil Procedure Rule 23(e), and subject to Court approval, Plaintiffs Mariann Archer, Mark Samsel, Tim Marlowe, Melissa Urciuoli, James Urciuoli, Patrick Reddy, Jacint "Jay" Pittman, Joseph John Turowski, Jr., Teresa Turowski, Melissa D. Kauffman, Lebertus Vanderwerff, Adrianne Khanolkar, Dhamendra "DK" Khanolkar, and Joynequa West ("Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully move the Court for preliminary approval of the proposed settlement of this class action under Rule 23 of the Federal Rules of Civil Procedure.

Unless otherwise stated, all definitions herein are the same as in the Settlement Agreement, **Exhibit 1**.

## SUMMARY OF THE SETTLEMENT

Plaintiffs and the proposed Class have reached a nationwide class action settlement with Defendants, Overby-Seawell Company ("OSC") and Keybank, National Association ("Keybank"), for a $6,000,000.00 non-reversionary common fund to resolve claims arising from the July 5, 2022 Data Security Incident discovery by OSC in July 2022 that exposed the personal information of approximately 607,924 residential mortgage clients of KeyBank and other lenders that utilized OSC's services as well as certain other individuals (the "Data Security Incident"). *See* Settlement Agreement (**Exhibit 1**); *see also* Declaration of M. Anderson Berry in Support of Preliminary Approval of Class Action Settlement ("Berry Decl."), ¶ 4

(**Exhibit 2**); Declaration of Christie K. Reed from KCC Class Action Services, LLC ("KCC Decl.") (**Exhibit 3**). The Settlement provides significant relief to Settlement Class Members and is well within the range of reasonableness necessary for this Court to grant preliminary approval of the settlement under Rule 23(e). The Court should preliminarily approve the Settlement, direct that notice be sent to all Settlement Class Members in the manner outlined below, set deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Final Approval and petition for attorneys' fees and expenses, and set a date for the Final Approval Hearing.

## I. BACKGROUND

### A. History of Litigation

On or about August 26, 2022, KeyBank sent Plaintiffs and Settlement Class Members a *Notice of Vendor Security Incident* in which KeyBank informed Plaintiffs and Settlement Class Members of the Data Security Incident. Subsequently, on June 12, 2023, Plaintiffs filed a consolidated class action complaint against Defendants in this District alleging that OSC failed to implement and maintain reasonable data security measures. *See generally* [Doc. 90]. Plaintiffs asserted claims for negligence, negligence per se, breach of contract, unjust enrichment, violation of the Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. §§ 10-1-370, *et seq.*, violation of California's Unfair Competition Law,

violation of New York's General Business Law § 349, *et seq.*, violation of Oregon's Unfair Trade Practices Act, violation of Pennsylvania's Unfair Trade Practices Act, violation of the Washington Consumer Protection Act, a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and statutory claims under Ga. Code Ann. § 13-6-11. *Id.* Thereafter, the Parties' Counsel participated in settlement discussions, after exchanging information necessary to evaluate the merits of this case, including information and documents provided by Defendants in response to Plaintiffs' Pre-Mediation Information and Document Requests. On September 12, 2023, the Defendants filed separate motions to dismiss the Complaint. On October 19, 2023, the Parties moved to stay the case pending mediation. [Doc. 118]. This Court granted the motion in part on October 24, 2023, and the subsequent mediation ordered as successful. The Court ordered Plaintiffs to file a Motion for Preliminary Approval by April 10, 2024. [Doc. 133].

### B. Negotiations and Settlement

The Settlement is the result of arm's-length negotiations and hard bargaining. The Parties exchanged informal discovery, including, but not limited to, information about the allegations in the Complaint, the class size, the types of data impacted in the Data Security Incident and information supporting Plaintiffs' damages allegations. Berry Decl., ¶ 5. Through the informal discovery process, Plaintiffs were able to properly evaluate damages on a class-wide basis. *Id*. The Parties participated

in two full-day mediation sessions: one in Atlanta on July 25, 2023 and one in New York on December 11, 2023. *Id.*, ¶ 6. After the exchange of a series of offers and demands during the two mediation sessions, the Parties were able to resolve the matter for a common fund settlement of $6,000,000.00. This Settlement would resolve all claims related to the Data Security Incident on behalf of the Settlement Class. *See Id.*, ¶ 7.

## C. Summary of Settlement Terms

Under the proposed Settlement, Defendant OSC or its insurers will pay $6,000,000.00 to establish the Settlement Fund to be distributed to Settlement Class Members under the Settlement Agreement. The Settlement defines the Settlement Class as follows:

> All individuals whose Personal Information was impacted by the Data Security Incident.

There is a Fulton Bank Settlement Subclass defined as:

> All Settlement Class Members who provided their Personal Information to Fulton Bank and were notified that their Personal Information may have been impacted as a result of a Data Security Incident discovered on or about July 5, 2022 by Overby-Seawell Company.

Settlement Agreement ("S.A."), ¶ 41. The Settlement Class is comprised of approximately 607,924 individuals nationwide. Berry Decl., ¶ 4. Under the Proposed Settlement, OSC's insurers agree to pay a total of $6,000,000.00 into the Settlement Fund, which will be used to make payments to Settlement Class Members and to

pay the costs of Notice and Administrative Expenses, CAFA Notice, and attorneys' fees and expenses. *See* S.A., ¶¶ 44, 52.

### 1. Settlement Benefits

#### a. Financial Monitoring

The Settlement Fund provides for Financial Account Monitoring. All Settlement Class Members may submit a claim for identity theft protection and credit monitoring services for three (3) years of three-bureau coverage with at least $1,000,000 of fraud/identity theft insurance. S.A., at ¶ 54.

#### b. Reimbursement of Monetary Loses up to $6,000

Settlement Class Members may receive monetary payments by submitting a claim form for reimbursement of documented Monetary Losses up to $6,000 per individual. S.A., at ¶ 55.

#### c. Reimbursement for Lost Time

Settlement Class Members may also receive monetary payments by submitting a claim for reimbursement of Lost Time of $25 per hour up to five (5) hours, subject to the $6,000 aggregate individual cap and a pro rata decrease. S.A., at ¶ 56.

#### d. California Statutory Payments

Settlement Class Members who were residents of California from May 26, 2022 to the end of the claims period may submit a claim for a payment of $100 for

their statutory claims under the California Consumer Privacy Act. Settlement Class Members may claim this benefit in addition to either reimbursement of claims for Monetary Losses and/or Lost Time or the Alternative *Pro Rata* Cash Payment. This benefit is subject to a *pro rata* decrease based on the amount remaining in the Settlement Fund following payment of the Fee Award and Expenses, Administration and Notice Costs, CAFA Notice, costs of Financial Account Monitoring, and claims for Reimbursement of Monetary Losses and Lost Time. S.A., at ¶ 57,

### e.  Alternative *Pro Rata* Cash Payments

As an alternative to submitting a claim for reimbursement of Monetary Losses and Lost Time, Settlement Class Members may submit a claim for an Alternative *Pro Rata* Cash Payment. The amount of the payment will be determined *pro rata* based on the amount remaining in the Settlement Fund following payment of the Fee Award and Expenses, Administration and Notice Costs, CAFA Notice, costs of Financial Account Monitoring, claims for Reimbursement of Monetary Losses and Lost Time, and California Statutory Payments. S.A., at ¶ 58.

### f.  Fulton Bank Subclass Members

All Fulton Bank Subclass Members who participated in the Fulton Bank Settlement will still be eligible to submit a claim in this Settlement.  Any monetary amounts received by the Fulton Bank Subclass Members from the Fulton Bank Settlement shall reduce the benefits due to the Fulton Bank Subclass Members in

this Settlement. To the extent a Fulton Bank Subclass Member did not submit a claim in the previous Fulton Bank settlement that was approved by this Court, they may submit claims under this Settlement in full. Fulton Bank Subclass Members who claimed and were approved to receive reimbursement of Monetary Losses and/or Lost Time in the Fulton Bank settlement are not eligible for an Alternative *Pro Rata* Cash Payment in this Settlement. S.A., at ¶ 59.

### 2. Scope of the Release

In exchange for consideration above, Settlement Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendants and certain related entities from claims arising from or related to the Data Incident at issue in this litigation. S.A., at ¶ 96. The scope of the release is defined as follows:

> Upon the Effective Date, and in consideration of the Settlement benefits described herein, the Releasing Parties shall be deemed to have fully, finally, and forever released, acquitted, and discharged the Released Parties from any and all Released Claims. This release expressly includes a Release by the Settlement Class Representatives and Settlement Class Members of OSC's insurers with respect to all obligations under any part of any insurance policy applicable to the Released Claims, and from any and all claims arising out of the investigation, handling, adjusting, defense, or settlement of the claim.

*Id.* at ¶ 96.

The Released Claims also include the release of Unknown Claims. *Id.,* at ¶ 97.

### 3. The Notice and Settlement Administration Plans

7

Under the Settlement Agreement, Class Counsel, with OSC's approval, has selected KCC Class Action Services, LLC ("KCC") to be the Settlement Administrator, who will provide the Settlement Class with notice and administer the claims. The Settlement Administrator shall create a "Class List" of all available names and mailing addresses of potential Settlement Class Members as set forth in the Settlement Agreement. S.A., at ¶ 14; *see also* Declaration of Christie K. Reed ("KCC Decl."), ¶10 (**Exhibit 3**). Class Counsel's decision to select KCC was based on the scope of settlement administration services KCC proposed balanced against the cost for such services. Berry Decl., ¶ 17. Class Counsel understands that any settlement administration costs and expenses will be deducted from the Settlement Fund and endeavored to select the settlement administrator for this case offering the best service for the best price. *Id.*, ¶ 18.

KCC will first provide a written notice that will be mailed to each Settlement Class Member for whom valid mailing addresses are known. S.A.*,* ¶ 68. The Short Form Notice will be in the form of a postcard notice that clearly and concisely informs Settlement Class Members of the amount of the Settlement Fund, that they may do nothing and be bound by the Settlement, object to the Settlement, exclude themselves and not be bound by the Settlement, or make a claim by completing and returning a claim form and be bound by the Settlement. *Id.* at ¶¶ 46, 75. KCC will publish a Long Notice and Claim Form on the Settlement Website, which shall

contain information about the Settlement, including copies of the Short Notice, Settlement Agreement, and all court documents related to the Settlement. *Id*. at ¶ 72. KCC will also be responsible for accounting for all the claims made and exclusions requested, determining eligibility, and disbursing funds from the Settlement Fund directly to Settlement Class Members. *Id*. at ¶¶ 62-66.

### 4. Attorneys' Fees and Expenses

Class Counsel will separately seek an award of attorneys' fees not to exceed 1/3 (33.33%) of the Settlement Fund (*i.e.*, $2,000,000.00), and for reimbursement of Class Counsel's reasonable litigation expenses not to exceed $150,000.00, which shall be paid from the Settlement Fund. S.A., at ¶ 87. The Fee Award and Expenses application will be filed at least fourteen (14) days before Objection and Opt-Out Deadlines. *Id*.

## II.    LEGAL STANDARD

Under Fed. R. Civ. P. 23(e), a class action may be settled only with court approval, which requires the court to find the settlement "fair, reasonable, and adequate". *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021). Fed. R. Civ. P. 23(e) provides three steps for the approval of a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must

determine whether the proposed settlement is fair, reasonable, and adequate. *See generally* Fed. R. Civ. P. 23(e). Courts in this Circuit have held that first the Court must conduct a preliminary review to determine whether the proposed class settlement "is within the range of possible approval." *Fresco v. Auto Data Direct, Inc.*, No. 03–61063–CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 11, 2007) (internal citations omitted); *see also* MANUAL FOR COMPLEX LITIGATION (Third) § 30.41 (1995). This involves both preliminary certification of the class and an initial assessment of the proposed settlement. *Id.* Plaintiffs request that the Court preliminarily approve the proposed Settlement, the first step in approving a class action settlement in accordance with Fed. R. Civ. P. 23(e).

During the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." ANNOTATED MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.662 (2012). There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). Generally, a large amount of discretion is afforded to courts in approving class action settlements, and the Eleventh Circuit has held the "degree of deference to a decision approving a class action settlement makes sense . . . [s]ettlements

10

resolve differences and bring parties together for a common resolution." *In re Equifax*, 999 F.3d at 1273 (internal citations omitted).

## III.  ARGUMENT

### A. Certification of the Settlement Class is Appropriate.

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For the Court to certify a class, Plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). Here, Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3), which provides that certification is appropriate when common question of law or fact for plaintiffs' claims predominate over any individual issues and a showing that the class action mechanism is the superior method efficiently handling the case. Fed. R. Civ. P. 23(b)(3). As discussed below, these requirements are met here for settlement purposes.

### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). "There is no specific number below which class action relief is

11

automatically precluded . . . [t]o demonstrate numerosity, "plaintiffs need not prove that joinder is impossible; rather, plaintiffs 'need only show that it would be extremely difficult or inconvenient to join all members of the class.'" *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 557 (N.D. Ga. July 20, 2007), quoting *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1384 (N.D. Ga. 1997). Here, the joinder of over 600,000 Settlement Class Members would certainly be impracticable, and thus, the numerosity element is satisfied.

## 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).

Here, the claims turn on whether OSC's security environment was adequate to protect Settlement Class Members' PII. Resolution of that inquiry revolves around evidence that does not vary from Settlement Class Member to Settlement Class Member, and so can be fairly resolved—at least for purposes of settlement—for all Settlement Class Members at once. Courts in this District have previously addressed

this requirement in the context of cybersecurity incident class actions and found it readily satisfied. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *11 (N.D. Ga. Mar. 17, 2020), citing *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding that multiple common issues center on the defendant's conduct, satisfying the commonality requirement).

### 3.  Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. In the *Equifax* MDL, Judge Thrash found that the typicality requirement had been met as "[t]he claims are also based on the same overarching legal theory that [Defendant] failed in its common-law duty to protect their personal information." *In re Equifax*, 2020 WL 256132, at *12.

Here, the claims all involve OSC's conduct toward the Settlement Class Members, and Plaintiffs' and the Class's claims are based on the same legal theories. Thus, Plaintiffs' claims are typical of those of the claims of the Settlement Class, and for purposes of settlement they are appropriate Settlement Class Representatives.

### 4.  Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will

fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For this analysis, courts consider: "(1) whether [the class representatives] have interests antagonistic to the interests of other class members; and (2) whether the proposed class counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall*, 258 F.R.D. at 555. Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 594.

Plaintiffs have no conflicts with the Settlement Class and have participated actively in the case. Berry Decl., at ¶ 29. Moreover, Class Counsel have significant experience in handling data privacy class actions like this one. *Id.*, at ¶ 31.

### 5.  Certification under Rule 23(b)(3) is appropriate.

Plaintiffs seek to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Equifax*, 999 F.3d at 1275. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire

whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial.").

### a.  *Common Questions of Law and Fact Predominate.*

In this case, the common factual and legal questions all cut to the issues at the heart of the litigation. *See Klay v. Humana, Inc*., 382 F.2d 1241, 1264 (2004) ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met."). Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Settlement Class Member. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied for purposes of this settlement.

### b.  *A Class is the Superior Method of Adjudicating this Case.*

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied for the purpose of this settlement. *See* Fed. R. Civ. P. 23(b)(3). A superiority analysis pursuant to rule 23(b)(3) involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation

might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted). The focus is on the efficiency of the class method. *In re Equifax*, 2020 WL 256132 at *14. The Agreement provides Settlement Class Members with certain relief and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Member to object to it or to request exclusion. Moreover, there is no indication that Settlement Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources required to prosecute such an action. *See Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017) (describing "the ways in which the high likelihood of a low per-class-member recovery militates in favor of class adjudication").

Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Settlement Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to

inconsistent rulings. Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial").

Thus, the Court may certify the Settlement Class for settlement under Rule 23(b)(3).

## B. The Proposed Settlement Satisfies the Standard for Preliminary Approval.

After it has been determined that certification of the Settlement Class is appropriate, the Court must then determine whether the Settlement Agreement is worthy of preliminary approval of providing notice to the class. Courts in this Circuit have held that preliminary approval is appropriate "where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (internal quotations omitted). Other courts have looked to the *Bennett* factors to determine whether preliminary approval is appropriate. The *Bennett* factors include,

> (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense

17

and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.

*Columbus Drywall*, 258 F.R.D. at 557, quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Settlement warrants preliminary approval under each approach.

**1. The proposed Settlement was reached after serious, informed, and arm's-length negotiations.**

First, arm's-length negotiations conducted by competent counsel with the assistance of a third-party mediator support finding that the settlement is fair. *See Cole v. Stateserv Med. of Fla., LLC*, No. 8:17-cv-829, 2018 WL 3860263, at *2 (M.D. Fla. June 19, 2018). In this case, the Settlement was the result of intensive, arm's-length negotiations between experienced attorneys with vast experience handling data breach class action cases under the guidance of two mediators through two days of mediation. Settlement negotiations here took place over the course of several months. Berry Decl., ¶ 5. There is no evidence that any collusion or illegality existed during settlement negotiations. Class Counsel support the Settlement as fair and reasonable, and all certify that it was reached at arm's-length. *Id.*, ¶ 33.

**2. The proposed Settlement falls within the range of reasonableness and has no obvious deficiencies, and thus, warrants issuance of notice and a hearing on final approval of settlement.**

Although Plaintiffs believe that the claims asserted in the Class Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendants poses significant risks that make any recovery for the Settlement Class uncertain. The Settlement's fairness is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. Despite the risks involved with further litigation, the Settlement Agreement provides outstanding benefits as Settlement Class Members can claim documented losses up to $6,000. Moreover, there are no grounds to doubt the fairness of the Settlement or other obvious deficiencies, such as unduly preferred treatment of Plaintiffs or excessive attorney compensation. Plaintiffs, like all other Settlement Class Members, will receive their settlement benefits consistent with the Settlement Agreement.

### 3. The *Bennett* factors support preliminary approval.

Although typically a consideration at the final approval stage, here, the *Bennett* factors still point towards preliminary approval. *First*, the benefits of settlement outweigh the risk of trial. Here, Settlement Class Members can claim documented losses up to $6,000. As Judge Thrash noted when approving the *Equifax* settlement, "[Defendant] would likely renew its arguments under Georgia law that it has no legal duty to safeguard personal information, arguments that were

strengthened following the Supreme Court of Georgia's decisions in *Georgia Dep't of Labor v. McConnell*, 305 Ga. 812, 828 S.E.2d 352 (Ga. 2019)." *In re Equifax*, 2020 WL 256132, at *7. Here, Defendants would likely assert the same argument, and although Plaintiffs believe they have strong arguments to counter these potential arguments, the Settlement's benefits outweigh the risk of trial.

*Second* and *third*, the Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. The second and third *Bennett* factors are often considered together. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlement falls within the range of fair recoveries. *Columbus Drywall*, 258 F.R.D. at 559. Here, Settlement Class Members have the ability to claim reimbursement for documented Monetary Losses up to $6,000 and the ability to claim reimbursement for Lost Time capped at $125, or may, in the alternative, choose to receive an Alternative *Pro Rata* Cash Payment, which Class Counsel estimates is likely to be approximately $50. Finally, Settlement Class Members who were residents of California from May 26, 2022 to the end of the claims period may also submit a claim for a payment of $100 for their statutory claims under the California Consumer Privacy Act. Accordingly, the Settlement is

eminently reasonable, especially considering that it avoids the potential contingencies of continued litigation, and the size of the breach, itself.

*Fourth,* continued litigation would be lengthy and expensive. As discussed in the first prong of the *Bennett* factors, data breach litigation is often difficult and complex, particularly in Georgia. A settlement here is beneficial to all parties, including the Court. *Woodward v. NOR–AM Chem. Co.*, No. Civ-94-0870, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) ("Complex litigation . . . 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'"), quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493.

*Fifth*, there has not been an opposition to the Settlement. This factor is better considered after notice has been provided to Settlement Class Members and they are given the opportunity to object. *See Columbus Drywall*, 258 F.R.D. at 561. Thus, at this point, this factor should not weigh heavily in the analysis.

*Sixth*, despite resolving at an early stage, Plaintiffs have sufficient information to evaluate the merits and negotiate a fair, adequate and reasonable settlement. Courts have approved settlements at early stages of the litigation. *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (affirming approval of settlement with little discovery); *see also Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) (holding that early settlements are to be encouraged, and

accordingly, only some reasonable amount of discovery is required to determine the fairness of the settlement). Defendants filed motions to dismiss, which were thoroughly briefed by the parties. The case has been thoroughly investigated by Counsel experienced in data breach litigation. Berry Decl., ¶¶ 5, 10, 31, 32. Moreover, Counsel's informal exchange of discovery has ensured a fair, reasonable, and adequate settlement worthy of preliminary approval. *Id.*, ¶¶ 10.

Accordingly, the Court should find that the proposed Settlement is fair, reasonable, and adequately protects the interests of the proposed Class.

### C. The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator.

Plaintiffs seek to be appointed as Class Representatives for the Class. As discussed above, Plaintiffs have cooperated with Class Counsel, provided informal discovery, and assisted in the preparation of the Complaint. Moreover, Plaintiffs are committed to continuing to vigorously prosecute this case, including overseeing the Notice Plan, and defending the Settlement Agreement against any objectors, all the way through the Court's final approval. Because they are adequate representatives, the Court should appoint them as class representatives. Second, for the reasons previously discussed with respect to adequacy of representation, the Court should designate MaryBeth V. Gibson of Gibson Consumer Law Group, LLC and M. Anderson Berry of Clayeo C. Arnold, a Professional Corporation, as Class Counsel.

Finally, the Parties have agreed that KCC shall act as Settlement Administrator. KCC and its principals have a long history of successful settlement administrations in class actions. KCC Decl., at ¶ 2. Furthermore, KCC was previously approved by this Court to serve as the settlement administrator for the Fulton Bank settlement.

### D. The Proposed Form and Manner of Notice to the Class is Reasonable and Should be Approved.

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice Plan set forth in the Settlement Agreement provides the best notice practicable under the circumstances. The Parties negotiated the form of the Notice with the aid of a professional notice provider, KCC. The Notice will be disseminated to all persons who fall within the definition of the Class and whose names and

addresses can be identified with reasonable effort and through databases tracking nationwide addresses and address changes. In addition, KCC will administer the Settlement Website containing important and up-to-date information about the Settlement. KCC Decl., at ¶ 15.

Moreover, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed Notice Plan satisfies the requirements of Rule 23(h)(1), as it notifies Settlement Class Members that Class Counsel will apply to the Court for attorneys' fees of no more than 1/3 of the Settlement Fund, plus reimbursement of litigation expenses up to $150,000.00. The Notice Plan complies with Fed. R. Civ. P. 23 and due process because, among other things, it informs Settlement Class Members of: (1) the nature of the action; (2) the essential terms of the Settlement, including the definition of the Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that Settlement Class Members may make an appearance through counsel; (5) information regarding the payment of proposed Class Counsel fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the Notice Plan and Notice are designed to be the best practicable under the circumstances, apprise Settlement Class Members of the pendency of the action, and give them an opportunity to object or exclude themselves from the Settlement. *See Agnone v. Camden Cnty.*, No. 2:14-cv-00024-LGW-BKE, 2019 WL 1368634, at *9 (S.D. Ga. Mar. 26, 2019) (finding class notice mailed directly to settlement class members was the best practicable and satisfied concerns of due process). Thus, the Notice Plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

### E. The Court Should Approve a Settlement Schedule

Plaintiffs request that the Court set a settlement schedule that would include, *inter alia*, deadlines for notice to Settlement Class Members; for Settlement Class Members to object to the Settlement, to opt out of the Settlement, and to make claims under the Settlement; and for the filing of papers in support of final approval and in support of attorneys' fees and expenses. A proposed schedule is included in the proposed Preliminary Approval Order. The Court will determine through the Final Approval Hearing whether the Settlement should be approved.

### <u>CONCLUSION</u>

For these reasons, Plaintiffs and Class Counsel respectfully ask the Court to enter an Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

Respectfully submitted this 10th day of April, 2024.

/s/ *MaryBeth V. Gibson*
MaryBeth V. Gibson
Georgia Bar No. 725843
**Gibson Consumer Law Group, LLC**
4729 Roswell Road
Suite 208-108
Atlanta, GA 30342
Telephone: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

M. Anderson Berry
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL CORP.**
865 Howe Avenue
Sacramento, CA 95825
Tel: (916) 239-4778
*aberry@justice4you.com*

*Interim Co-Lead Class Counsel*

Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Phone: 202-640-1168
Fax: 202-429-2294
*gklinger@milberg.com*

Joseph P. Guglielmo
**SCOTT & SCOTT**
**ATTORNEYS AT LAW LLP**
17th Floor, 230 Park Avenue
New York, NY 10169
212-223-6444
Fax: 212-223-6334
*jguglielmo@scott-scott.com*

Matthew R. Wilson
**MEYER WILSON CO., LPA**
305 W. Nationwide Blvd.
Columbus, OH 43215
Tel: 614-812-0553
*mwilson@meyerwilson.com*

Marc Edward Dann
**DANN LAW FIRM**
15000 Madison Avenue
Lakewood, OH 44107
Telephone: 216-373-0539
Fax:216-373-0536
*notices@dannlaw.com*

Gary F. Lynch
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-322-9243
*Gary@lcllp.com*

James J. Pizzirusso
**HAUSFELD LLP**
888 16th Street Ste 300
Washington, DC 20006
Telephone: 202-540-7200
*jpizzirusso@hausfeld.com*

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN**
510 Walnut Street
Suite 500
Philadelphia, PA 19106-3697
Telephone: 215-592-4663
*cschaffer@lfsblaw.com*

*Plaintiffs' Interim Steering Committee*

<u>**CERTIFICATE OF SERVICE AND**</u>
<u>**LOCAL RULE 7.1(D) CERTIFICATION**</u>

I hereby certify that on April 10, 2024, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing and effectuate service to all counsel of record in this matter, pursuant to Local Rule 5.1.

I further certify that this Motion has been prepared with one of the fonts and point selections approved by the Court in Local Rule 5.1(C).

/s/ *MaryBeth V. Gibson*
MaryBeth V. Gibson

*Interim Co-Lead Class Counsel*