# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| In re Overby-Seawell Company Customer Data Security Breach Litigation | Case No. 1:23-md-03056-SDG<br><br>Judge Steven D. Grimberg |

## DECLARATION OF M. ANDERSON BERRY IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS

I, M. Anderson Berry, pursuant to section 1746 of title 28 of the United States Code, declare as follows:

1. I am the head of the complex litigation group at Clayeo C. Arnold, A Professional Corporation (the "Arnold Law Firm"), one of the firms representing Plaintiffs and Co-Lead Interim Class Counsel in this matter. I submit this declaration in support of Plaintiffs' Unopposed Motion For Preliminary Approval of Class Action Settlement. I make this declaration based on my own personal knowledge, and if called to do so, could and would testify to the matters contained herein.

2. The Settlement Agreement ("S.A." or "Settlement") executed by the Parties on April 10, 2024, is filed concurrently herewith, as Exhibit 2 to Plaintiffs' Motion For Preliminary Approval of Class Action Settlement (the "Motion").

3. Attached to the Settlement Agreement are the following sub-exhibits, the form and substance of which have been agreed to by the Parties and are submitted with the Motion for the Court's approval:

Exhibit A:  Claim Form

Exhibit B:   Long Form Notice

Exhibit C:   Short Form Notice

Exhibit D:   Proposed Preliminary Approval Order

## I.   THE LITIGATION AND SETTLEMENT NEGOTIATIONS

4.   This matter concerns a putative class action arising out of a Data Security Incident (as defined below) suffered by Defendant Overby Seawell Company ("OSC"), that impacted approximately 607,924 residential mortgage clients of KeyBank and other lenders that used OSC's services as well as certain other individuals (the "Data Security Incident"). On or about August 26, 2022, Defendant Keybank, N.A. ("Keybank" or together with OSC "Defendants") sent Plaintiffs and many Settlement Class Members a *Notice of Vendor Security Incident* in which KeyBank informed Plaintiffs and Settlement Class Members of the OSC Data Security Incident. Subsequently, on June 12, 2023, Plaintiffs filed a consolidated class action complaint against Defendants in the Northern District of Georgia alleging that OSC failed to implement and maintain reasonable data security measures. Plaintiffs asserted claims for negligence, negligence per se, breach of contract, unjust enrichment, violation of the Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. §§ 10-1-370, *et seq.*, violation of California's Unfair Competition Law, violation of New York's General Business Law § 349, *et seq.*, violation of Oregon's Unfair Trade Practices Act, violation of Pennsylvania's Unfair Trade Practices Act, violation of the Washington Consumer Protection Act, a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and statutory claims under O.C.G.A. § 13-6-11. Subsequently, both Keybank and OSC filed Motions to Dismiss, which were fully briefed.

5.   Over the course of several months, the Parties engaged in informal, and always contentious, settlement negotiations. The Parties then agreed to

participate in mediation. As part of the mediation process the Parties exchanged informal discovery, including, but not limited to, the allegations in the Complaint, the class size, the types of data impacted in the Data Security Incident and information supporting Plaintiffs' damages allegations. This informal discovery allowed Plaintiffs to properly evaluate the Settlement Class's damages.

6. The Parties participated in two full-day mediation sessions, one in Atlanta on July 25, 2023, before the briefing of Defendants' Motions to Dismiss and one in New York on December 11, 2023, after those motions were fully briefed. After the exchange of a series of offers and demands during these two mediation sessions, which lasted late into the evening, the Parties were able to resolve the matter for a common fund settlement of $6,000,000.00.

7. This Settlement will resolve all claims related to the Data Security Incident on behalf of the Settlement Class.

8. The Parties then took several months to finalize the full scope of the Settlement. The Parties executed the Settlement Agreement on April 10, 2024, after a series of contentious, arm's length, negotiations first on a Term Sheet, and then on the Settlement Agreement itself.

9. Though cordial and professional, the settlement negotiations were adversarial, arm's-length, and non-collusive in nature.

10. The Settlement was reached after extensive investigation, including vigorously and aggressively gathering all of the information that was available regarding Defendants and the Data Security Incident (including publicly-available documents concerning announcements of the Data Security Incident and notice of the Data Incident to its customers), and other research, including the informal exchange of information as to the size and composition of the Class, the information at issue in the Data Security Incident, and the root cause of the Data Security Incident and a thorough evaluation of Plaintiffs' claims in light of such information.

## II. THE SETTLEMENT

*The Settlement Class*

11. The Settlement will provide relief for the following Settlement Class: "All individuals whose PII was compromised in the Data Incident. There is a Fulton Bank Settlement Subclass defined as all Settlement Class Members who provided their personal data to Fulton Bank, N.A. and were notified that their personal data may have been impacted as a result of Overby-Seawell Company's cybersecurity incident that it discovered on or about July 5, 2022." S.A. ¶ 41. The following persons are excluded from the class definition: "the judges presiding over this Action and members of their direct families and Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline" *Id.*

12. The Settlement Class contains approximately 607,924 individuals who were residential mortgage clients of KeyBank and other lenders that used OSC's services as well as certain other individuals. In addition, the Settlement creates the Fulton Bank Subclass, consisting of All Settlement Class Members who provided their Personal Information to Fulton Bank, N.A. and were notified that their Personal Information may have been impacted as a result of a Data Security Incident discovered on or about July 5, 2022, by Overby-Seawell Company" S.A. ¶ 41.

*The Settlement Consideration*

13. Defendants have agreed to establish a six million dollar ($6,000,000) non-reversionary cash settlement fund (the "Settlement Fund"), which will be used first to pay all approved attorneys' fees and expenses, and the approved costs of

settlement administration and notice. The remaining funds will then be applied until exhausted in the following order: (1) providing identity theft protection and credit monitoring services for all Settlement Class Members who submit a claim for such in the form of three (3) years of three-bureau coverage with at least $1,000,000 of fraud/identity theft insurance; (2) allowing all Settlement Class Members to submit a claim for reimbursement of documented monetary losses up to $6,000 per individual; (3) providing for reimbursement for lost time for all Settlement Class Members who submit a claim for such of up to five (5) hours at a rate of $25 per hour, which is subject to the $6,000 aggregate cap on monetary losses, and a *pro rata* decrease if the aggregate amount of claims exceeds the funds available in the Settlement Fund; (4) providing for all Settlement Class Members who were residents of California from May 26, 2022 to the end of the claims period to be able to submit a claim for a payment of $100 for their statutory claims under the California Consumer Privacy Act; (5) providing for all Settlement Class Members to submit a claim, in the alternative to the benefits listed in (2) and (3) above, for an Alternative *Pro Rata* Cash Payment at a rate to be determined on a *pro rata* basis based on the amount remaining in the Settlement Fund.

14.     All Fulton Bank Subclass Members who participated in the Fulton Bank Settlement will still be eligible to submit a claim in this Settlement, with any amounts received for Reimbursement of Monetary Losses and/or Lost time debited from the same benefits claimed by Fulton Bank Subclass Members.

15.     In addition to the foregoing settlement benefits, OSC has agreed to implement and/or maintain certain reasonable steps to adequately secure its systems and environments, including taking the steps listed in the Settlement Agreement. S.A. ¶ 61. These Business Practice Commitments are paid for entirely outside of the Settlement Fund and no past or future costs associated with the development and implementation of these security procedures has been or will be paid by Plaintiffs or the Settlement Fund.

### III. NOTICE AND CLAIMS ADMINISTRATION

16. The Parties have agreed to the appointment of KCC as the Settlement Administrator and a robust notice program to be administered by KCC. KCC is a nationally recognized and well-respected third-party class administrator that will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member *via* email or mail.

17. KCC has a trusted and proven track record of supporting thousands of class action administrations and KCC was selected based on the scope of the settlement administration services KCC proposed balanced against the cost for such services.

18. Class Counsel understand that any settlement administration costs and expenses will be deducted from the Settlement Fund and have endeavored to select the settlement administrator for this case offering the best service for the best price.

19. The cost of class notice, and settlement administration will be paid from the Settlement Fund (subject to Court approval).

20. Proposed Class Counsel have proposed notice forms and a notice program that comports with due process and provides the best notice practicable to Class Members.

21. In an attempt to obtain a higher claims rate, the Parties have negotiated a robust notice program. OSC and Keybank shall provide KCC with the names and last known addresses for the Settlement Class Members, with KCC then using the National Change of Address database maintained by the United States Postal Service obtaining updates, as needed, to those mailing addresses.

22. KCC will maintain the confidentiality of the Class Lists and related information and will implement appropriate safeguards to prevent unauthorized access to that data and to use that data strictly for the business purpose of

6

administering the Settlement. KCC shall not provide the Class Lists to Class Counsel.

23. Within 37 days following entry of the Preliminary Approval Order, KCC shall mail the Postcard Notice and Claim Form to all Settlement Class Members.

24. Before the dissemination of the Short Notice, KCC shall establish a settlement website (www.[TBD].com) that will inform members of the Settlement Class of the terms of the Settlement Agreement, their rights, dates, and deadlines and related information. The Settlement Website shall include, in .pdf format and available for download, the following: (i) the Long Notice; (ii) the Short Notice; (iii) the Claim Form; (iv) the Preliminary Approval Order; (v) the Settlement Agreement; (vi) the Consolidated Complaint; and (vii) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall provide Settlement Class Members with the ability to complete and submit the claim form electronically.

25. Furthermore, KCC shall establish a toll-free help line to provide Settlement Class Members with information about the Settlement. KCC will provide copies of the Short Notice, Long Notice, and paper Claim Form, as well as the Settlement Agreement, upon request.

26. The Settling Parties did not discuss the payment of attorneys' fees, costs, and expenses to Class Representative Plaintiffs until after the substantive terms of the Settlement had been agreed upon; other than that, reasonable attorneys' fees, costs, and expenses to Plaintiffs would be paid out of the Settlement Fund as ordered by the Court.

27. Proposed Class Counsel have agreed not to request more than one-third of the Settlement Fund ($2,000,000) as reimbursement for attorneys' fees, and no more than $150,000 for reimbursement of Class Counsel's costs and expenses.

28. Proposed Class Counsel's fee request is well within the range of reasonableness for Settlements of this nature and size.

29. Representative Plaintiffs in this case have been vital in litigating this matter, including providing their personal information to Proposed Class Counsel. Furthermore, the Representative Plaintiffs have no conflicts with the Settlement Class; have participated actively in the case; and are represented by attorneys experienced in class action litigation, including data breach cases. The Representative Plaintiffs have been personally involved in the case and support the Settlement. The Representatives diligently represented the class by taking the initiative to commence this litigation, reviewing, and approving the pleadings, and staying abreast of developments in the case.

30. If the Court approves the Settlement, the Parties will request that the Court enter the Final Approval Order, releasing all claims that were or could have been asserted against Defendant in this litigation. The Proposed Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and providing for notice is attached to the Settlement Agreement as Exhibit D.

**IV. RECOMMENDATION OF PROPOSED CLASS COUNSEL**

31. Interim Co-Lead Counsel at Clayeo C. Arnold, APC and the Gibson Consumer Law Group, LLC, as well as all other Plaintiffs' Counsel each have considerable experience in class action litigation, including the prosecution and resolution of consumer class actions and substantial experience with data breach litigation.

32. Proposed Class Counsel collective experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Proposed Class Counsel to represent Plaintiffs' and Class

Members' interests without expending hundreds of hours and enormous financial resources to come up to speed on the subject area.

33. Proposed Class Counsel enthusiastically endorse the settlement as a fair and superb result for the entire Settlement Class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 10th day of April 2024, at Sacramento, California.

_____
M. ANDERSON BERRY