**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re Overby-Seawell Company Customer Data Security Breach Litigation | Case No. 1:23-md-03056-SDG<br><br>Judge Steven D. Grimberg |

# PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

On April 10, 2024, Plaintiffs filed their Unopposed Motion for Preliminary Approval ("Motion") of a Class Action Settlement with Defendants Overby-Seawell Company ("Overby-Seawell") and KeyBank, NA that would resolve the claims of all putative class members in this action. ECF 134. On April 24, 2024, attorney Ben Barnow filed a response in opposition to Plaintiffs' Motion ("Response"), ECF 137, in his individual capacity and purportedly as "Class Counsel in Fulton Bank Settlement." Response at 8. Mr. Barnow argues that the Court should deny preliminary approval because the proposed settlement purportedly "does not treat members of the Fulton Bank Subclass equitably[.]" Response at 5. Mr. Barnow is wrong. Plaintiffs submit this brief reply in support of their Motion to address the blatantly false arguments in Mr. Barnow's Response.

## I. Mr. Barnow Lacks Standing to Object.

As a preliminary matter, Mr. Barnow does not have standing to challenge Plaintiffs' Motion. He is not a member of the class or sub-class for which Plaintiffs seek preliminary approval. While Mr. Barnow represented members of the Fulton Subclass in a separate, early settlement with Fulton Bank (ECF 88), his Response is submitted on his own behalf and not on behalf of any Fulton Subclass Member. *See* Response at 8 ("undersigned counsel respectfully requests that the Court deny Plaintiffs' Motion"); *cf. New Mexico ex rel. State Engr. v. Carson*, 908 F.3d 659, 665 (10th Cir. 2018) ("As a general rule, non-settling parties have no standing to challenge a settlement in district court."); *Esslinger v. HSBC Bank Nevada, N.A.*, No. CIV.A. 10-3213, 2012 WL 5866074, at *7 (E.D. Pa. Nov. 20, 2012) ("In addition to the objections received from Class members, the Attorneys General of Hawaii, Mississippi, and West Virginia … also filed 'objections' to the settlement. However, because the AGs are not Class members, they do not have standing to object to the settlement.") (internal citation omitted). Out of the gate, Mr. Barnow's Response should be disregarded.

## II. Plaintiffs' Settlement with OSC Provides More Benefits to the Fulton Subclass than the Fulton Settlement.

The relief afforded to Fulton Bank Subclass Members in this settlement is superior to the relief afforded in the previous settlement that Mr. Barnow, as counsel for the Fulton Bank Class, negotiated with Fulton Bank. *Compare* ECF 48-2 ¶ 24

(providing two-years of three-bureau credit monitoring and insurance services, as well as compensation for up to 4.5 hours of lost time, $150 in ordinary expenses, and $5,000 in extraordinary expenses, or an alternative cash payment in lieu of all other benefits, including credit monitoring) *with* ECF 134-1 ¶¶ 54-56 (providing three-years of three-bureau credit monitoring and insurance services for every Class Member regardless of whether a cash benefit is claimed, as well as compensation for up to five hours of lost time and $6,000 in ordinary or extraordinary losses or expenses, or a *pro rata* alternative cash payment in lieu of the other cash benefits only). Therefore, individuals in the Fulton Bank Subclass may recover benefits through this settlement that *exceed* the amount of any set off from the previous settlement and may also claim the valuable three-years of credit monitoring regardless of whether they successfully made an alternative cash payment claim in the Fulton Settlement.

    The way in which credit monitoring is offered as a settlement benefit is a critical distinction between the Fulton Settlement and this Settlement.  In the Fulton Settlement, Mr. Barnow forced the Fulton Class Members to make a choice between claiming two years of credit monitoring or the alternative cash payment. *See* ECF 48-2 ¶ 25 (cash payment may be claimed in lieu of all benefits under ¶ 24(a)-(d) -- ¶ 24(d) is the credit monitoring). But here, every Class Member (including the Fulton Subclass Members) can claim the three-years of three-bureau credit monitoring,

regardless of whether they claim any form of cash payment (including the *pro rata* alternative cash payment). 134-1 ¶ 54. This means that however the set-offs play out in this Settlement, Fulton Bank Subclass members can claim and receive (at a minimum) three-years of valuable three-bureau credit monitoring and insurance services).

Mr. Barnow complains that Fulton Bank Subclass members, who previously settled claims with Fulton Bank to resolve injuries stemming from the same data breach, are treated unfairly because the settlement with Overby-Seawell provides for a set-off against damages recovered from the previous settlement. *See* ECF 134-2 ¶ 14. However, the law only permits one award of compensatory damages for the same injury. *See Brewer v. Insight Tech., Inc.*, 689 S.E.2d 330, 337 (Ga. App. 2009) ("[W]here one or more tortfeasors enter a settlement with a plaintiff, a remaining tortfeasor may be entitled to a set off of payments previously made, to prevent double recovery.").

Importantly, the proposed set off only applies to under 4% of Fulton Bank Subclass members – those who submitted claims through the previous settlement. *See* ECF 97-3 ¶¶ 7, 13 ("KCC received from the defendant a list of 111,135 persons identified as the Class List…. To date, KCC has received 4,110 timely-filed claim forms."). This means that more than 96% of the Fulton Subclass received no compensation from the previous settlement, and therefore, are entitled to claim the

4

full measure of the superior benefits offered through the settlement with Overby-Seawell. Far from being treated unfairly, this resolution gives more than 107,000 Fulton Bank consumers a second bite at the apple, with the set-off provisions being a non-factor.

Mr. Barnow then complains that in "the event of a high participation rate in the Proposed Settlement, Fulton Bank Subclass members who select alternative cash payments in both settlements may receive nothing from the Proposed Settlement." Response at 3.[1] This highly speculative argument ignores that 100% of class members—including all members of the Fulton Bank Subclass—are eligible to claim three years of three-bureau credit monitoring and insurance services. *See* ECF 134-2 ¶ 54. To make the point more clearly, every member of the Fulton Bank Subclass – including the 4,110 who filed claims in the Fulton Settlement - can claim this valuable credit monitoring benefit from this Settlement, <u>regardless of whether they claimed cash benefits from either the Fulton Settlement or this Settlement.</u>

As an attorney who has settled data breach cases previously, Mr. Barnow is well aware that three-bureau credit monitoring is an extremely valuable settlement

---

[1] Plaintiffs have sought to reduce expenses in this case (and thus increase the amount of any pro rata payments) by retaining KCC to administer the proposed Settlement in this case. KCC already possesses the claims information from the Fulton Bank-only settlement, allowing the claims of the Fulton Subclass (and calculation of the appropriate set offs) administered in a timely and efficient manner.

benefit. In *Cochran v. The Kroger Co.*, Case No. 5:21-cv-01887-EJD (N.D. Cal.), Mr. Barnow as Class Counsel submitted an expert's declaration in support of a motion for preliminary approval testifying to the value of the three-bureau credit monitoring offered to the class in that case. *See* Declaration of Robert Siciliano, attached hereto as Exhibit A. In that declaration, Mr. Siciliano declared under penalty of perjury that he estimated "the retail value of the 3-Bureau Plan to be at least fifteen dollars ($15) per month for each Settlement Class Member for the two years offered, and arguably more," and "the minimum total value of the 3-Bureau Plan for each Settlement Class Member who elects Credit Monitoring and Insurance Services is three hundred sixty dollars ($360)." *Id*. at ¶¶ 7-8.

Using the metrics that Mr. Barnow himself availed himself of in support of a preliminary approval motion, the 3-years of three-bureau credit monitoring benefit offered to Fulton Subclass Members here is worth $540 per Subclass Member. This benefit may be claimed, in full and without any set-off, by Fulton Subclass Members regardless of whether they previously made a claim for the pro rata cash in the Fulton Bank Settlement, or in this Settlement. It is utterly false to claim, as Mr. Barnow does, that in "the event of a high participation rate in the Proposed Settlement, Fulton Bank Subclass members who select alternative cash payments in both settlements may receive nothing from the Proposed Settlement," where Fulton Subclass Members can receive $540 worth of valuable credit monitoring benefits from this

6

Settlement even if they claim the alternative cash.[2] Under the terms of this Settlement, Fulton Subclass members can have both monitoring and the alternative cash.

Moreover, 100% of class members will benefit from Overby-Seawell's agreed Business Practice Commitments, which will reduce the likelihood of a similar data breach in the future. *See id.* ¶ 15. Notably, the Fulton Bank Settlement contains no business practice changes, nor could it, as the entity holding the compromised data of the Fulton Bank Subclass members is Overby-Sewell (who informed Fulton Bank which Fulton customers' data was affected, so that Fulton could send out notice). This is another valuable benefit that Fulton Subclass members will receive, regardless of whether they made a claim for cash benefits that would cause the set-off requirements to kick in, and further demonstrates the falsity of Mr. Barnow's assertion.

Even facially, Mr. Barnow's complaint about Fulton Subclass Members potentially "receiving nothing" in the event of a high claims rate here is speculative, premature, and misguided. If there is a <u>low</u> claims rate in this Settlement, the *pro rata* cash payment could dwarf the $60 estimated cash payment in the Fulton Settlement, meaning that the Fulton Subclass Members who claim the *pro rata*

---

[2] Class Counsel here actually seeks to plug the very serious hole left by Mr. Barnow's failure to offer Fulton Class Members an opportunity to both protect themselves with credit monitoring and also to claim cash benefits for their injuries.

7

alternative cash payment here could receive cash on top of the cash they already received (and three-years of valuable credit monitoring, which can be claimed along with the cash here).[3] But either way, it is just speculation to try and guess how this will play out, and premature to try and address this prior to preliminary approval.

Perhaps more importantly though, the cash payments in both the Fulton Settlement and in this Settlement are "alternatives" to the documented loss and lost time claims, but are damages for the same injuries, all arising from a single data breach.[4] Despite the multiple lawsuits, the Defendants here are effectively joint tortfeasors, each of whom may have contributed some percentage of fault to a single data breach that engendered a single set of injuries and a single set of damages. It is completely contrary to law that claimants could get a double recovery of damages. "Georgia, as part of its common law and public policy, has always prohibited a plaintiff from a double recovery of damages; the plaintiff is entitled to only one recovery and satisfaction of damages, because such recovery and satisfaction is

---

[3] In the final approval motion for the Fulton Settlement, Mr. Barnow declined to apprise the Court what the cash payment to Fulton Class Members actually turned out to be. *See* ECF Doc. 97-1, 97-2, 97-3. Moreover, Mr. Barnow provided no information about the claims actually approved in the Fulton Bank Settlement. It is therefore entirely possible that less than 4,110 Fulton Subclass Members are even potentially affected by the set-off provisions of this Settlement.

[4] In fact, it is highly likely that there are contribution and indemnity agreements between OSC and Fulton, just as it appears likely from the terms of this Settlement (whereby OSC's insurers are making the entire settlement payment – see ECF 134-1, ¶ 52) that there are contribution and indemnity agreements between KeyBank and OSC.

deemed to make the plaintiff whole." *Georgia Ne. R. Co. v. Lusk*, 277 Ga. 245, 246, 587 S.E.2d 643, 644 (2003). Mr. Barnow does not identify in any way what additional damages the Fulton Class Members allegedly sustained from OSC's conduct. And if they did, the higher limits on the "buckets" of relief offered here provide a mechanism for Fulton Subclass Members to "true up" their damages to the full measure.

Mr. Barnow argues that Fulton Subclass members are treated disparately because "Fulton Bank Subclass members who filed a claim for reimbursement or lost time in the prior settlement are not eligible to claim Alternative Pro Rata Cash Payments pursuant to the Proposed Settlement." Response at 3. But, Fulton Settlement Subclass Members are not being treated any differently than any member of the Proposed Settlement class: "Settlement Class Members can submit a claim for an Alternative Pro Rata Cash Payment *as an alternative* to seeking reimbursement for Monetary Losses and/or Lost Time." 134-1, ¶ 58. The Settlement Class is treated no differently than Fulton Subclass Members. And, Mr. Barnow ignores that Fulton Bank Subclass members may file a claim for reimbursement or lost time that they have incurred *since* the Fulton settlement. 134-1, ¶ 59. Fulton Class members fare far better under the Proposed Settlement.

9

### III. The Fulton Subclass is Represented in the Settlement.

Mr. Barnow argues that separate counsel for the Fulton Bank Subclass was not appointed. Response at 7. Mr. Barnow is wrong again. Plaintiffs filed an opposition to Mr. Barnow's motion seeking appointment explaining that the Plaintiffs' proposed leadership slate includes Gary Klinger "to represent the remaining Fulton Bank Class in their claims against OSC in this MDL." ECF 101 at 2. Further, Mr. Klinger's Fulton Bank client was included in the Consolidated Class Action Complaint filed on June 12, 2023. ECF 90. Fulton Bank Class Members' interests were well-protected by Mr. Klinger and all Class counsel appointed by the Court in the proposed Settlement.

Mr. Barnow acknowledges that one of the proposed Class Representatives (Plaintiff West) is a member of the Fulton Bank subclass but argues that "the failure to designate this plaintiff as representative for the Fulton Bank Subclass brings into question whether this plaintiff understood her role as the only representative of the Fulton Bank Subclass and their interests." Response at 7. Such rank speculation should not be considered, especially at this preliminary stage.[5] *Cf. Ponzio v. Pinon*,

---

[5] Mr. Barnow has a history of lodging dubious objections to class action settlements for his own pecuniary benefit. Recently, Mr. Barnow represented an objector to a proposed data breach settlement who argued that "the Settlement Agreement should be allotted differently," and that Mr. Barnow and his firm should receive an attorneys' fee award of $119,933.84. *In re C.R. England, Inc.*, No. 2:22-CV-374-DAK-JCB, 2024 WL 1157398, at *1 (D. Utah Mar. 18, 2024). The objector "ask[ed]

87 F.4th 487, 499–500 (11th Cir. 2023) ("[W]hen the objections are factual in nature, they cannot be conclusory."). There is no indication that Plaintiff West misunderstands her proposed appointment. Furthermore, the terms of the Settlement Agreement plainly consider – and protect - the interests of the Fulton Subclass as those interests are discussed throughout the Settlement Agreement.

There is no requirement that subclasses have separately appointed representatives—courts just consider whether each subclass has at least one class representative who can adequately represent its interests. *See Gilbert v. Bioplus Specialty Pharm. Servs., LLC*, No. 6:21-CV-2158-RBD-DCI, 2024 WL 1464083, at *11 (M.D. Fla. Feb. 1, 2024) ("Upon consideration of the Initial Motion, … it was not clear if the named Plaintiffs consist of both Non-SSN Class Members and SSN Class Members or if they fall into only one of the groups. The named Plaintiffs clarify that Plaintiff Hullet, as a class representative, is a Non-SSN Class Member and can adequately represent the Non-SSN Class."), *report & recommendation*

---

that this be awarded in light of the substantial benefit his litigation awarded the settlement." *Id.* However, the court disagreed with the objector and declined any award to his counsel, finding "that he did not provide a benefit to the settlement class." *See id.* ("Bohler argues that he provided a benefit for the class because he believes that had he not actively fought against Defendant's Motion to Compel Arbitration, other Class Members who had arbitration clauses would not have been included in the settlement class. This is not the case…. Bohler chose to pursue his own case after class counsel had been designated. Thus, he continued to fight arbitration unnecessarily, and his actions in the *Bohler* Case did not confer any benefit to Class Members.").

11

*adopted*, 2024 WL 939595 (M.D. Fla. Mar. 5, 2024). Here, even if Plaintiffs do not formally designate Plaintiff West as the specific Class Representative for the Fulton Bank Subclass, it is clear at this early stage of the approval process that her interests align with that of the other Fulton Subclass Members and their interests are well protected by Class Counsel. Mr. Barnow makes much ado about nothing.

### IV. Mr. Barnow's Objection is Motivated by His Own Pecuniary Interest.

Finally, this objection is simply Mr. Barnow's latest attempt (after his failed bid for appointment as separate Fulton Class Counsel – *see* ECF 96) to interject himself into a leadership position in this case so that he can be awarded another substantial amount of attorneys' fees (above and beyond the substantial fees he already received from the Fulton Settlement). He falsely criticizes Class Counsel here for allegedly providing no benefits to Fulton Subclass Members, a claim this is belied by the "second chance" that over 107,000 Fulton Class members are getting to claim the full measure of benefits from this Data Security Incident litigation, the three-years of valuable credit monitoring made available to all Class Members, the ability of Fulton Subclass Members who previously made approved claims to "true up" the amounts claimed to the higher limits offered here, and the substantial business practice changes. This of course would then require Mr. Barnow to come in and "fix" Class Counsel's alleged failure to adequately represent (at most) the 4,110 members of the Fulton Class who previously made a claim for cash benefits,

and to help himself to a substantial amount of the fees for his trouble.[6]  There is a certain irony to Mr. Barnow casting himself as the protector of the Fulton Class Members, when he already required them to forego credit monitoring that would have protected them going forward if they decided to elect the cash benefit, and where his actions here have substantially delayed preliminary approval and ultimately payment of the substantial Settlement benefits to this Settlement Class.

## CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Respectfully submitted on May 8, 2024.

/s/ MaryBeth V. Gibson
MaryBeth V. Gibson
Georgia Bar No. 725843
**Gibson Consumer Law Group, LLC**
4279 Roswell Road
Suite 208-108
Atlanta, GA  30342
Tel: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

M. Anderson Berry
**CLAYEO C. ARNOLD,
A PROFESSIONAL CORP.**
865 Howe Avenue
Sacramento, CA 95825

---

[6] Mr. Barnow will surely deny that he is motivated by fees, but until he offers to work *pro bono* for a Fulton Subclass, his denials should be met with skepticism. And even if he does offer to work *pro bono*, his objection lacks any merit, and thus his work would add no benefit to this Settlement Class.

13

Tel: (916) 239-4778
*aberry@justice4you.com*

*Interim Co-Lead Class Counsel*

Gary M. Klinger *
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

Marc Edward Dann*
**Dann Law Firm**
15000 Madison Avenue
Lakewood, OH 44107
Telephone:  216-373-0539
notices@dannlaw.com

Charles E. Schaffer*
**Levin Sedran & Berman**
510 Walnut Street
Suite 500
Philadelphia, PA  19106-3697
Telephone: 215-592-4663
cschaffer@lfsblaw.com

James J. Pizzirusso*
**Hausfeld LLP**
888 16th Street
Ste 300
Washington, DC 20006
Telephone: 202-540-7200
jpizzirusso@hausfeld.com

Joseph P. Guglielmo*
**Scott & Scott, Attorneys at Law, LLP**
230 Park Avenue
17th Floor
New York, NY 10169

Telephone: 212-223-6444
jguglielmo@scott-scott.com

Gary F. Lynch*
**Lynch Carpenter, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA  15222
Telephone: 412-322-9243
Gary@lcllp.com

Matthew Ryan Wilson
Georgia Bar No. 871480
**Meyer Wilson Co., LPA**
305 W Nationwide Blvd.
Columbus OH  43215
Telephone: 614-812-0553
Fax: 614-224-6066
mwilson@meyerwilson.com

*Interim Class Counsel*

***pro hac vice***

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 14-point Times New Roman font in accordance with Local Rule 5.1(C).

Dated: May 8, 2024

                                            */s/ MaryBeth V. Gibson*
                                            MaryBeth V. Gibson

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2024, I filed a copy of the foregoing document using the Court's ECF/CM system, which will automatically send notice of such filing to all counsel of record in this matter.

                                            */s/MaryBeth V. Gibson*
                                            MaryBeth V. Gibson