# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In re Overby-Seawell Company Customer Data Security Breach Litigation | Case No. 1:23-md-03056-SDG<br><br>Judge Steven D. Grimberg |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FINAL CERTIFICATION OF SETTLEMENT CLASS AND SUPPORTING MEMORANDUM

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION………………………………………………………………  1

FACTUAL AND PROCEDURAL BACKGROUND…………………………...  2

I.  History of Litigation……………………………………………………...  2

II.  Negotiations and Settlement…………………………………………...  4

III.  Summary of Settlement Terms………………………………………...  5

    A.  Settlement Benefits………………………………………………  5

        1.  Financial Monitoring………………………………………  5

        2.  Reimbursement of Monetary Loses up to $6,000…………  5

        3.  Reimbursement for Lost Time……………………………  5

        4.  California Statutory Payments……………………………  6

        5.  Alternative *Pro Rata* Cash Payment………………………  6

        6.  Fulton Bank Subclass Members……………………………  6

        7.  Business Practice Commitments…………………………...  7

    B.  Scope of the Release………………………………………………  7

    C.  Attorneys' Fees and Expenses……………………………………  8

IV.  Implementation of the Notice Program and Claims Process……………  8

ARGUMENT…………………………………………………………………...  11

I.  The Settlement Should be Finally Approved as Fair, Adequate and Reasonable………………………………………………………………  11

    A.  The Settlement Occurred at Arm's Length………………………  12

B.    The Settlement Will Avoid Years of Complex and Expensive Litigation…………………………………………………………    13

C.    The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment Regarding the Litigation and the Settlement……………………………….....    14

D.    Plaintiffs Faced Meaningful Obstacles to Success……………    15

E.    The Benefits Provided by the Settlement Are Fair Adequate and Reasonable Compared to the Range of Possible Recoveries……    16

F.    The Opinions of Class Counsel, the Plaintiffs, and Absent Settlement Class Members Favor Final Approval………………    18

II.    The Court Should Finally Certify the Settlement Class…………………    19

A.    The Rule 23(a) Requirements Are Satisfied……………………..    20

B.    The Rule 23(b) Requirements Are Satisfied……………………..    23

III.    The Notice Program, As Implemented, Satisfies Due Process and Rule 23……………………………………………………………………..    24

CONCLUSION……………………………………………………………..    25

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                              **<u>Page</u>**

*Bennett v. Behring Corp.,* 737 F.2d 982 (11th Cir.1984) .........................................12

*Berman v. Gen. Motors LLC*, No. 2:18-CV-14371,
    2019 WL 6163798 (S.D. Fla. Nov. 18, 2019) ....................................................13

*Burrow v. Forjas Taurus S.A.*, No. 16-21606-CIV,
    2019 WL 4247284 (S.D. Fla. Sept. 6, 2019) .....................................................12

*Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016) ..............................23

*Cotter v. Checkers Drive-In Restaurants, Inc.*, No. 8:19-CV-1386-VMC-CPT,
    2021 WL 3773414 (M.D. Fla. Aug. 25, 2021) ...................................................12

*Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR,
    2021 WL 2940240 (S.D. Fla. July 13, 2021).....................................................20

*Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741
    (W.D. Wis. Mar. 4, 2021) ..................................................................................16

*Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD,
    2024 WL 171192 (N.D. Cal. Jan. 16, 2024) ......................................................17

*Henderson v. Emory Univ.*, No. 1:16-CV-02920-CAP, 2020 WL 9848975
    (N.D. Ga. Nov. 4, 2020).....................................................................................25

*In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA,
    2022 WL 18107626 (E.D. Va. Sept. 13, 2022) ..................................................18

*In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011).......11

*In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK,
    2013 WL 11320088 (S.D. Fla. Aug. 2, 2013) ....................................................19

*In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 656 (S.D. Fla. 2015) ................22

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT,

2020 WL 256132 (N.D. Ga. Mar. 17, 2020);....................................................21

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016)..........14

*Leverso v. SouthTrust Bank of AL., N.A.,* 18 F.3d 1527 (11th Cir.1994) ...............12

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
289 F.R.D. 674 (S.D. Fla. 2013) ...........................................................................21

*Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660 (M.D. Ala. 1988) ...............15

*Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237 (S.D. Fla. 2016) ...........................17

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007) .............................13

*Petersen v. Am. Gen. Life Ins. Co.*, No. 3:14-CV-100-J-39JBT,
2019 WL 11093815 (M.D. Fla. Apr. 4, 2019)........................................................19

*Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683 (S.D. Fla. 2014)........13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)...............................................21

## **Statutes**

California's Unfair Competition Law ...........................................................................3

Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq* .................................................3
Fed. R. Civ. P. 23(a). ................................................................................................20

Fed. R. Civ. P. 23(e)...................................................................................................11

Fed. R. Civ. P. 23(e)(2)..............................................................................................11

Fed. R. Civ. P. 23(b) ........................................................................................... passim

Ga. Code Ann. § 13-6-11 ............................................................................................3

Georgia Uniform Deceptive Trade Practices Act .......................................................3

iv

Ga. Code Ann. §§ 10-1-370, *et seq.* ....................................................................3

New York's General Business Law § 349, *et seq* ...............................................3

Oregon's Unfair Trade Practices Act ...................................................................3

Pennsylvania's Unfair Trade Practices Act .........................................................3

Washington Consumer Protection Act .................................................................3

## INTRODUCTION

Plaintiffs, individually and on behalf of all others similarly situated, pursuant to Rule 23(e), respectfully move for Final Approval of the proposed Class Action Settlement Agreement ("Settlement" or "SA") (Doc. 134-1), resolving all claims against Defendants Overby-Seawell Company ("OSC") and KeyBank National Association ("KeyBank") (collectively, "Defendants").[1] Final Approval should be granted because the Settlement provides substantial relief for the Settlement Class, including the establishment of a $6,000,000 settlement fund that will pay valid claims submitted by Settlement Class Members, Administration and Notice Costs, and the Court-approved Fee Award and Expenses. The Settlement's terms are well within the range of reasonableness and granting Final Approval is consistent with applicable law. *See* Joint Declaration Interim Co-Lead Class Counsel ("Joint Decl."), attached as **Exhibit 1**, at ¶¶ 22, 28.

Pursuant to the Court's Preliminary Approval Order, Notice was sent to Settlement Class Members to notify them of the proposed Settlement. The Notice results are overwhelmingly positive. The Objection and Exclusion deadline was September 20, 2024 and not a single member of the Settlement Class has objected in any respect to the Settlement. *See* Declaration of Janeth Antonio ("SA Decl."),

---

[1] Unless otherwise defined herein, all capitalized terms have the same definitions as those set forth in the proposed Settlement Agreement.

attached as **Exhibit 2**, at ¶ 15. Additionally, only twenty-three Settlement Class Members out of over 620,000 have opted-out. *Id.,* at ¶ 14.

As detailed below, the Settlement easily satisfies all the criteria for Final Approval. Accordingly, Plaintiffs respectfully request entry of an Order: (1) granting Final Approval to the Settlement; (2) finally certifying the Settlement Class, for settlement purposes, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3); (3) finally appointing Plaintiffs as Settlement Class Representatives; (4) finally appointing Interim Co-Lead Class Counsel as Class Counsel for the Settlement Class; (5) Approving Plaintiffs' request for Attorneys' fees and reimbursement of litigation expenses; and (5) entering Final Judgment dismissing the Action and reserving jurisdiction over the Settlement's implementation.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    History of Litigation

This putative class action arises out of a data security incident suffered by OSC, impacting approximately 607,924 clients of KeyBank and other banks that used OSC's services as well as certain other persons (the "Data Security Incident"). On or about August 26, 2022, KeyBank sent Plaintiffs and those Settlement Class Members who were mortgage clients of KeyBank a *Notice of Vendor Security Incident* in which it informed Plaintiffs and the Class of the Data Security Incident. On June 12, 2023, Plaintiffs filed the consolidated class action complaint against

Defendants alleging that they failed to implement and maintain reasonable data security measures. [*See generally* Doc. 90]. Plaintiffs asserted claims for negligence, negligence *per se*, breach of contract, unjust enrichment, violation of the Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. §§ 10-1-370, *et seq.*, violation of California's Unfair Competition Law, violation of New York's General Business Law § 349, *et seq.*, violation of Oregon's Unfair Trade Practices Act, violation of Pennsylvania's Unfair Trade Practices Act, violation of the Washington Consumer Protection Act, a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and statutory claims under Ga. Code Ann. § 13-6-11. *Id.*

On September 12, 2023, Defendants filed separate motions to dismiss the Complaint. [Doc. 112, 113.] On October 19, 2023, the Parties moved to stay the case pending mediation. [Doc. 118]. This Court granted the motion in part on October 24, 2023, and the subsequent mediation, held on December 11, 2023, was successful. The Court ordered Plaintiffs to file a Motion for Preliminary Approval by April 10, 2024. [Doc. 133]. Plaintiffs subsequently filed their Motion for Preliminary Approval, which the Court granted on June 13, 2024. [Doc. 147].

In the Court's Preliminary Approval Order, the Court preliminarily certified a proposed Settlement Class consisting of:

> All individuals whose Personal Information was impacted by the Data Security Incident.

[Doc. 147]. The Court also certified a Subclass consisting of:

All Settlement Class Members who provided their Personal Information to Fulton Bank and were notified that their Personal Information may have been impacted as a result of a Data Security Incident discovered on or about July 5, 2022 by Overby-Seawell Company.

*Id.* By that same order, the Court preliminary appointed Plaintiffs as representatives of the Settlement Class and MaryBeth V. Gibson of Gibson Consumer Law Group, LLC and M. Anderson Berry of Clayeo C. Arnold, A Professional Corporation, as Class Counsel for the Settlement Class. *Id.*

## II.    Negotiations and Settlement

The Settlement is the result of arm's-length negotiations and hard bargaining. Joint Decl., at ¶ 15. Over the course of several months, the parties exchanged informal discovery, including, but not limited to, information about the allegations in the Complaint, the class size, the types of data impacted in the Data Security Incident, and information supporting Plaintiffs' damages allegations. *Id.* Through this process, Plaintiffs were able to properly evaluate damages on a class-wide basis. *Id.*, at ¶¶15, 24. The Parties participated in two full-day mediation sessions: one in Atlanta on July 25, 2023, and one in New York on December 11, 2023. *Id.*, at ¶ 16. After the exchange of a series of offers and demands during the two mediation sessions, the parties were able to resolve the matter for a common fund settlement of $6,000,000.00. *Id.* This Settlement, if approved, will resolve all claims related to the Data Security Incident on behalf of the Settlement Class. *Id.*, at ¶ 17.

### III.    Summary of Settlement Terms

Under the proposed Settlement, OSC or its insurers will pay $6,000,000.00 to establish the Settlement Fund to be distributed to Settlement Class Members. The Settlement Fund will be used to make payments to Settlement Class Members and to pay the costs of Notice and Administrative Expenses, CAFA Notice, and attorneys' fees and expenses. *See* S.A., at ¶¶ 44, 52.

### A.    Settlement Benefits

#### 1.    Financial Monitoring

The Settlement Fund provides Financial Account Monitoring to be provided by CyEx. Joint Decl., ¶ 30. All Settlement Class Members, including the Fulton Bank Subclass, were permitted to submit a claim for identity theft protection and credit monitoring services for three (3) years of three-bureau coverage with at least $1,000,000 of fraud/identity theft insurance. S.A., at ¶ 54.

#### 2.    Reimbursement of Monetary Loses up to $6,000

Settlement Class Members were also able to file a claim for reimbursement of documented Monetary Losses up to $6,000 per individual. S.A., at ¶ 55.

#### 3.    Reimbursement for Lost Time

Settlement Class Members were further able to submit a claim for reimbursement of Lost Time of $25 per hour up to five (5) hours, subject to the $6,000 aggregate individual cap and a *pro rata* decrease. S.A., at ¶ 56.

### 4.  California Statutory Payments

Settlement Class Members who were residents of California from May 26, 2022 to the end of the claims period were able to submit a claim for payment of $100 for their statutory claims under the CCPA. Settlement Class Members were able to claim this benefit in addition to either reimbursement of claims for Monetary Losses and/or Lost Time or the Alternative *Pro Rata* Cash Payment. S.A., at ¶ 57.

### 5.  Alternative *Pro Rata* Cash Payment

As an alternative to submitting a claim for reimbursement of Monetary Losses and Lost Time, Settlement Class Members were entitled to submit a claim for an Alternative *Pro Rata* Cash Payment. The amount of the payment will be determined *pro rata* based on the amount remaining in the Settlement Fund following payment of the Fee Award and Expenses, Administration and Notice Costs, CAFA Notice, costs of Financial Account Monitoring, claims for Reimbursement of Monetary Losses and Lost Time, and California Statutory Payments. S.A., at ¶ 58.

### 6.  Fulton Bank Subclass Members

All Fulton Bank Subclass Members who participated in the Fulton Bank Settlement were eligible to submit a claim here. Any money received by the Fulton Bank Subclass Members from the Fulton Bank Settlement will reduce the benefits they are due in this Settlement. If a Fulton Bank Subclass Member did not submit a claim in the Fulton Bank settlement, they were eligible to submit claims under this

Settlement in full. Fulton Bank Subclass Members who claimed and were approved to receive reimbursement of Monetary Losses and/or Lost Time in the Fulton Bank settlement were not eligible for an Alternative *Pro Rata* Cash Payment in this Settlement. S.A., at ¶ 59; Joint Decl.at ¶ 30.

### 7. Business Practice Commitments

OSC agreed to implement and maintain certain reasonable steps to adequately secure its systems and environments. These Business Practice Commitments are paid for entirely outside of the Settlement Fund and no past or future costs associated with the development and implementation of these security procedures has been or will be paid by Plaintiffs or the Settlement Fund. S.A., at ¶ 61.

### B. Scope of the Release

Settlement Class Members who did not timely and validly exclude themselves from the Settlement will be deemed to have released Defendants and certain related entities from claims arising from or related to the Data Security Incident at issue in this litigation. S.A., at ¶ 96. The scope of the release is defined as follows:

> Upon the Effective Date, and in consideration of the Settlement benefits described herein, the Releasing Parties shall be deemed to have fully, finally, and forever released, acquitted, and discharged the Released Parties from any and all Released Claims. This release expressly includes a Release by the Settlement Class Representatives and Settlement Class Members of OSC's insurers with respect to all obligations under any part of any insurance policy applicable to the Released Claims, and from any and all claims arising out of the investigation, handling, adjusting, defense, or settlement of the claim.

*Id.* The Released Claims also include the release of Unknown Claims. *Id.*, at ¶ 97.

### C.    Attorneys' Fees and Expenses

Under the Settlement Agreement, Class Counsel was permitted to request a Fee Award of $2,000,000 and the reimbursement of Expenses up to $150,000. S.A., at ¶ 87. On September 6, 2024, Class Counsel submitted their Motion for Attorneys' Fees and Litigation Expenses. [Doc. 151.]

## IV.    Implementation of the Notice Program and Claims Process

After the Court's Preliminary Approval Order, Verita completed the Notice Plan. *See* SA Decl. at ¶¶ 7-12. The Notice Plan was designed to reach as much of the Class as possible. The Notice included a description of the material Settlement terms; the deadlines to opt-out of and to object to the Settlement; the Final Approval Hearing date and time; and the Settlement Website address where Settlement Class Members could access the Long Form Notice, Settlement Agreement, and other related documents and information. *Id.*; SA Decl., Ex. C-E.

Defendants provided the claims administrator, Verita, with the Class List containing information to provide Settlement Class Members with direct notice. SA Decl., at ¶¶ 5-6. The Class List contained the names, addresses, phone numbers, and email addresses of 620,797 Settlement Class Members. *Id.*, at ¶ 7. Verita reviewed this data, identifying and removing 160 duplicate records. *Id.*, at ¶ 6. Verita then processed the names and addresses through the United States Postal Service National

Change of Address database. *Id.* On July 22, 2024, Verita implemented the Notice Plan, disseminating postcard notices via U.S. mail to 620,797 potential Settlement Class Members. *Id.*, at ¶ 7. 3,492 postcard notices were returned with forwarding addresses and the Notices were immediately re-mailed. *Id.*, at ¶ 8. 20,882 Notices were returned with undeliverable address and Verita searched for available addresses and promptly remailed 5,427 Notices to the found new addresses. *Id.*, at ¶ 9.

Further, on July 8, 2024, Verita established the Settlement Website, www.Overbysettlement.com, allowing Settlement Class Members to obtain detailed information about the litigation, the Settlement, and to review important documents, including the Long Form Notice, Settlement Agreement, claim form, and other case related documents. SA Decl., at ¶ 11. As of November 10, 2024, there have been 1,347,889 users with 1,343,887 active visits to the website and 3,326,071 page views. *Id.* Also, on July 22, 2024, Verita established a toll-free telephone number (1-844-906-1352) to allow Settlement Class Members to call for additional information and/or request a Long-Form Notice. *Id.*, at ¶ 12. This automated phone system is available 24 hours per day, 7 days per week. *Id.* As of November 11, 2024, Verita has received a total of 4,176 calls. *Id.*

As a result of the Notice Plan, at least 97% of the identifiable Settlement Class Members received direct notice of the Settlement. SA Decl., at ¶ 10. The Notice here

was the best notice practicable under the circumstances and fully complied with all requirements of due process and Rule 23.

The deadline to submit an objection or opt-out of Settlement was September 20, 2024. No Settlement Class Member has objected and only twenty-three submitted requests for exclusion. SA Decl., at ¶¶ 14-15. As of the October 31, 2024 Claims Deadline, Verita has received presumptively valid claims from 28,231 known Settlement Class Members. *Id.*, at ¶ 13. This number of presumptively valid claims, standing alone, means that there is at least a 4.55% claims rate -- a rate that meets and exceeds the claims rate in other comparable settlements. For example, the claims rate in the Fulton Bank settlement that also arises from this Data Incident was approximately 3.7% (4,110 claims made out of 111,094 class members. *See* ECF 97-3). *See also* Joint Decl., at ¶ 33. Verita has also received 303 deficient claims and 7,723 claims submitted by unknown Settlement Class Members whose names and addresses were not part of the Class List. SA Decl*.,* at 13. The parties have agreed to send deficiency notices to the 303 individuals in the deficiency group and the 7,723 individuals in the unknown group. *Id*.

Of the 28,231 presumptively valid claims, 15,594 selected Financial Account Monitoring (at a price of $22.20 per Settlement Class Member[2], or $346,186.80 total, paid by the Settlement Fund); 2,439 selected Lost Time for a total of 10,820 hours

---

[2] Joint Decl., at  ¶ 30.

($270,500.00); 15 sought reimbursement for Extraordinary Losses ($6,345.47); 398 selected the California Statutory payment ($39,800); and 22,988 selected the Alternative Payment. SA Decl., at ¶ 13. Based on these claims and Class Counsel's preliminary calculations, the Alternative Cash Payment is currently estimated to be approximately $120 per Settlement Class Member. Joint Decl., at ¶ 30.

## ARGUMENT

## I.     The Settlement Should be Finally Approved as Fair, Adequate and Reasonable

A class action may only be settled with court approval. Fed. R. Civ. P. 23(e)(2). Approval of a class action settlement is proper on a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). "A settlement is fair, reasonable and adequate when the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1344 (S.D. Fla. 2011) (citation omitted). A court's analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *Cotter v. Checkers Drive-In Restaurants, Inc.*, No. 8:19-CV-1386-VMC-CPT, 2021 WL 3773414, at *7 (M.D. Fla. Aug. 25, 2021) (citation omitted). "The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Id.*

In analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e), courts in the Eleventh Circuit look to six factors:

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of the plaintiffs' success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso v. SouthTrust Bank of AL., N.A.,* 18 F.3d 1527, 1530 n.6 (11th Cir.1994); *see also Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984); *see also Burrow v. Forjas Taurus S.A.*, No. 16-21606-CIV, 2019 WL 4247284, at *7 (S.D. Fla. Sept. 6, 2019) (noting the *Bennett* factors are analogous with those identified by Rule 23(e)(2)). Under these factors the Settlement is fair, reasonable, and adequate, and should be finally approved.

## A.    The Settlement Occurred at Arm's Length

This Settlement was the result of intensive, arm's-length negotiations between experienced attorneys with vast experience handling data breach class action cases under the guidance of two mediators through two days of mediation. Joint Decl., at ¶¶ 15-16. The settlement negotiations took place over the course of several months. *Id.*, at ¶ 16.   There is no evidence that any collusion or illegality existed during settlement negotiations. *Id.*, at ¶ 24; *see Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("Where the parties have negotiated at arm's

length, the Court should find that the settlement is not the product of collusion."); *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator."). Thus, the first *Bennett* factor favors final approval.

## B. The Settlement Will Avoid Years of Complex and Expensive Litigation

Under this factor, the Court "consider[s] the vagaries of litigation and compare[s] the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Berman v. Gen. Motors LLC*, No. 2:18-CV-14371, 2019 WL 6163798, at *6 (S.D. Fla. Nov. 18, 2019) (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." *Id.* (citation omitted). Here, continued litigation would entail a lengthy and expensive legal battle that may result in no relief or substantially delayed relief to the Settlement Class. *See Cotter*, 2021 WL 3773414, at *9 (recognizing that the issues raised in data breach cases are complex and the law is ever evolving). Had the parties not reached a settlement, the parties would face a ruling on Defendants' pending motions to dismiss as well as highly contested discovery motions, summary judgment briefing, class certification briefing, trial, and any appeals that may follow. Furthermore, if the litigation continued, the parties

would be required to retain costly experts to perform data analyses and to present those analyses in expert reports, at deposition, and at trial.

In contrast, the Settlement avoids this outcome; ends the litigation; saves the parties and Court considerable time, effort and money; and provides immediate and substantial relief to the Settlement Class. *See, e.g.*, *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *6 (N.D. Ga. Aug. 23, 2016) ("The guaranteed and immediate recovery for the Settlement Class made available by this Settlement far outweighs the mere possibility of future relief after lengthy and expensive litigation."). For these reasons, this factor weighs in favor of final approval.

### C.    The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment Regarding the Litigation and the Settlement

The third *Bennett* factor considers "the degree of case development that class counsel have accomplished prior to settlement" so that "counsel had an adequate appreciation of the merits of the case before negotiating." *Checking Acct.*, 830 F. Supp. 2d at 1348 (citation omitted). "At the same time, '[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations.'" *Id.* (citation omitted).

While the parties did not engage in extensive formal discovery, the informal discovery produced for mediation, along with two rounds of full-day in-person

mediations, provided the information Class Counsel needed to objectively evaluate the strengths and weaknesses of Plaintiffs' and Settlement Class Members' claims. *See* Joint Decl., at ¶¶ 15, 24, 26, 33. At its current stage, the litigation is ripe for settlement, as Class Counsel developed ample information and performed analyses from which "to determine the probability of ... success on the merits, the possible range of recovery, and the likely expense and duration of the litigation." *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988); *see also Cotter*, 2021 WL 3773414, at *9 (similar). Thus, this factor favors final approval.

### D.    Plaintiffs Faced Meaningful Obstacles to Success

In analyzing the fourth *Bennett* factor, "[t]he likelihood of success on the merits is weighed against the amount and form or relief contained in the settlement." *Berman*, 2019 WL 6163798, at *4 (citation omitted). A critical factor in assessing whether the class is made better off by settling is the probability of success if the case were tried. *Home Depot*, 2016 WL 6902351, at *5. Where success at trial is uncertain, this factor weighs in favor of final approval. *Cotter*, 2021 WL 3773414, at *8 ("The uncertainty of recovery suggests that the Settlement Agreement is a better alternative for Plaintiffs and the class versus continued litigation.").

Although Plaintiffs believe that the claims asserted in the litigation are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendants poses significant risks that make any recovery for the

Settlement Class uncertain. Plaintiffs here, as in any complex class action, faced risks, including establishing liability and damages on a class-wide basis; prevailing on Defendants' motion to dismiss; prevailing at class certification; overcoming a potential motion for summary judgment; and prevailing at trial. If Plaintiffs did not prevail on any of these issues, they faced the risk of recovering nothing for themselves and the Settlement Class. *See Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result.").

Given the risks and expenses of continued litigation, including that Plaintiffs and the Settlement Class might receive nothing, the Settlement provides relief and protections for the Settlement Class now and ensures some recovery against Defendants. As such, this factor weighs in favor of final approval.

### E.    The Benefits Provided by the Settlement Are Fair Adequate and Reasonable Compared to the Range of Possible Recoveries

"The range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Home Depot*, 2016 WL 6902351, at *6 (citation omitted). "In determining whether a settlement is fair in light of the potential range of recovery, the Court is guided by the important maxim [ ] that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1250 (S.D.

Fla. 2016) (citation omitted). "It is important that the Court weigh the benefits Class members will receive from the settlement against the risks of moving forward and recovering nothing." *Id.*

As discussed above, the Settlement's fairness is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. Despite the risks involved with further litigation, the Settlement provides outstanding benefits as Settlement Class Members can file claims for monetary losses up to $6,000, credit monitoring, or an alternative cash payment. These benefits compare favorably to those frequently approved in other class action settlements in data breach actions like this one. *See Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192, at *2 (N.D. Cal. Jan. 16, 2024) (granting final approval to data breach settlement that provided credit monitoring, a cash payment, or a documented loss payment); *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 18107626, at *12 (E.D. Va. Sept. 13, 2022) (approving settlement that allowed class members to submit claims for out-of-pocket losses, lost time, and credit monitoring services). Given the reasonableness of the Settlement when weighed against the risks of continued litigation, the Settlement is well within the range of reasonableness warranting final approval.

**F.    The Opinions of Class Counsel, the Plaintiffs, and Absent Settlement Class Members Favor Final Approval**

The fairness of the Settlement is enthusiastically endorsed by experienced Class Counsel and supported by the fourteen Settlement Class Representatives. Joint Decl., at ¶ 34. This is strong evidence that the Settlement is fair, reasonable, and adequate. *Morgan*, 301 F. Supp. 3d at 1251 ("The endorsement of well-informed, experienced class action attorneys is strong support for the final approval of a settlement."); *Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe that these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement.").

Moreover, no Settlement Class Member has objected to the Settlement and only twenty-three have opted out, showing overwhelming support of the Settlement from the 607,000 member Settlement Class as a whole. *See, e.g.*, *Home Depot*, 2016 WL 6902351, at *4 (that the number of objectors amounts to an "infinitesimal percentage" of the class indicates "strong support for the settlement" and weighs strongly in favor of final approval."); *In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11320088, at *10 (S.D. Fla. Aug. 2, 2013) ("[T]he Court also finds it telling that, of over 27,490 members of the Settlement Class, only two members of the Settlement Class have requested to be excluded from, and no Settlement Class Members have objected to the Settlement.").

18

In short, all the factors that the Eleventh Circuit has instructed to be used to evaluate the fairness of a settlement support final approval here.

## II.    The Court Should Finally Certify the Settlement Class

Plaintiffs and Class Counsel respectfully request that the Court finally certify the Settlement Class and Fulton Bank Subclass for purposes of settlement. Where, as here, a settlement is reached before a litigation determination of class certification, the court may certify a class for purposes of settlement. *Petersen v. Am. Gen. Life Ins. Co.*, No. 3:14-CV-100-J-39JBT, 2019 WL 11093815, at *2 (M.D. Fla. Apr. 4, 2019). "[W]hether a class is certified for settlement or trial purposes, the Court must find that the prerequisites for class certification under Rule 23(a) and (b) of the Federal Rules of Civil Procedure" are met. *Id.*

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Where, as here, plaintiffs seek to certify a class under Rule 23(b)(3), plaintiffs must also establish that: (1) the questions of law or fact common to the class members predominate over individual issues of law or fact; and (2) a class action is superior to other available methods for the fair and efficient

19

adjudication of the controversy.[3] Fed. R. Civ. P. 23(b)(3). As discussed below, each of these requirements is satisfied, and the Court should finally certify the Settlement Classes for settlement purposes. *See Home Depot*, 2016 WL 6902351, at *2.

### A.    The Rule 23(a) Requirements Are Satisfied

**Numerosity.** The numerosity requirement of Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). In order to satisfy this requirement, the plaintiff must only establish that joinder is impracticable through some evidence or a reasonable estimate of the number of purported class members. *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *16 (S.D. Fla. July 13, 2021) (internal citation omitted). As a rule of thumb, in the Eleventh Circuit, "less than twenty-one is inadequate, more than forty [is] adequate, with numbers between varying according to the other factors." *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013). Here, joinder of over 620,000 Settlement Class Members would certainly be impracticable, and thus, the numerosity element is satisfied.

**Commonality.** The commonality requirement of Rule 23(a)(2) "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of class

---

[3] When assessing superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011).

Courts in this District have addressed this requirement in the context of data breach class actions and found that it is readily satisfied. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *12 (N.D. Ga. Mar. 17, 2020); *Home Depot*, 2016 WL 6902351, at *2. Indeed, the common issues present here include: whether Defendants had a legal duty to adequately protect Plaintiffs' and Settlement Class Members' PII; whether Defendants breached that legal duty; and whether Defendants knew or should have known that Plaintiffs' and Settlement Class Members' PII was vulnerable to attack. Accordingly, common questions of law and fact abound. *See Home Depot*, 2016 WL 6902351, at *2.

**Typicality.** Rule 23(a)(3)'s typicality requirement is satisfied where the claims of the representative parties are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Courts in this District have previously addressed this requirement and have found that it "is readily met in settlements of nationwide data breach class actions." *Equifax*, 2020 WL 256132, at *12. Here, Plaintiffs' and Settlement Class Members' claims arise from the same Data Security Incident and the same conduct by Defendants. The claims are further based on the same legal theory that Defendants failed to adequately secure their PII. Accordingly, typicality is satisfied.

**Adequacy of Representation.** Rule 23(a)(4)'s requirement is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement is met when (i) the class representatives have no interests conflicting with the class; and (ii) the representatives and their attorneys will properly prosecute the actions." *In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 656, 672 (S.D. Fla. 2015).

Here, adequacy is readily satisfied. First, Plaintiffs have no interests adverse or "antagonistic" to absent Settlement Class Members. Plaintiffs seek to hold Defendants accountable for, among other things, the failure to safeguard Plaintiffs' and Settlement Class Members' PII. Further, Plaintiffs have demonstrated allegiance and commitment to the litigation. Second, Plaintiffs have retained lawyers who the Court has already recognized as abundantly qualified and experienced. Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

### B.    The Rule 23(b) Requirements Are Satisfied

**Predominance.** Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to ... relief." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Here, predominating questions of fact and law

include whether Defendants had a duty to exercise reasonably care in maintaining, safeguarding, securing and protecting the PII of Plaintiffs and the Settlement Class; and whether Defendants breached that duty. As recognized by other courts, these common questions that arise from Defendants' conduct predominate over any individualized issues. For these reasons, predominance is satisfied.

**Superiority.** Rule 23(b)(3)'s superiority requirement addresses whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In conducting this analysis, a court should consider: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Here, each factor weighs in favor of superiority. Plaintiffs and Settlement Class Members, due to Defendants' alleged misconduct, experienced almost identical circumstances. Further, because individual cases would involve a relatively small amount of damages compared to the enormous investment of time and money that it will take to litigate a case against companies like Defendants, individual Settlement Class Members have little interest in and gain little benefit from initiating

separate actions. Further, individual lawsuits would needlessly waste judicial resources as each lawsuit would likely involve the same evidence concerning Defendants' alleged wrongdoing. Indeed, this proposed Settlement effectively resolves approximately 600,000 individuals' lawsuits. For these reasons, superiority is satisfied. *Home Depot*, 2016 WL 6902351, at *2. Accordingly, the Court should finally certify the Settlement Class for settlement purposes.

## III.    The Notice Program, As Implemented, Satisfies Due Process and Rule 23

In its Preliminary Approval Order, the Court approved the Notice Plan, found that it satisfies the requirements of due process and Rule 23, and directed that it be carried out. [ECF No. 147]. Since the entry of the Court's order, the Notice Plan was carried out under supervision of the parties by Verita. Notice was mailed to Settlement Class Members at their last known addresses, efforts were made to reach those whose Notices were returned as undeliverable, and relevant information was made available on the Settlement Website and via a toll-free number. SA Decl., at ¶¶ 7-12. The Notice itself was understandable, described the litigation, set forth the terms of the Settlement, and contained all the information reasonably necessary for a Settlement Class Member to exercise their rights. SA Decl., Ex. C-E. Accordingly, the Court should find that the Settlement Class was provided the best notice practicable under the circumstances, and that the Notice Plan, as implemented,

satisfies the requirements of due process and Rule 23. *See, e.g.*, *Henderson v. Emory Univ.*, No. 1:16-CV-02920-CAP, 2020 WL 9848975, at *3 (N.D. Ga. Nov. 4, 2020).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion and finally approve the Settlement.

Dated: November 25, 2024

Respectfully submitted,

*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson
Georgia Bar No. 725843
**Gibson Consumer Law Group, LLC**
4279 Roswell Road
Suite 208-108
Atlanta, GA 30342
Telephone: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

M. Anderson Berry
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Tel: (916) 239-4778
*aberry@justice4you.com*

*Interim Co-Lead Class Counsel*

Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Phone: 202-640-1168
Fax: 202-429-2294

*gklinger@milberg.com*

Joseph P. Guglielmo
**SCOTT & SCOTT**
**ATTORNEYS AT LAW LLP**
17th Floor, 230 Park Avenue
New York, NY 10169
212-223-6444
Fax: 212-223-6334
*jguglielmo@scott-scott.com*

Matthew R. Wilson
**MEYER WILSON CO., LPA**
305 W. Nationwide Blvd.
Columbus, OH 43215
Tel: 614-812-0553
*mwilson@meyerwilson.com*

Marc Edward Dann
**DANN LAW FIRM**
15000 Madison Avenue
Lakewood, OH 44107
Telephone: 216-373-0539
Fax:216-373-0536
*notices@dannlaw.com*

Gary F. Lynch
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
*gary@lcllp.com*

James J. Pizzirusso
**HAUSFELD LLP**
888 16th Street Ste 300
Washington, DC 20006
Telephone: 202-540-7200
*jpizzirusso@hausfeld.com*

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN**
510 Walnut Street
Suite 500
Philadelphia, PA 19106-3697
Telephone: 215-592-4663
*cschaffer@lfsblaw.com*

*Plaintiffs' Interim Steering Committee*

## <u>CERTIFICATE OF SERVICE AND<br>LOCAL RULE 7.1(D) CERTIFICATION</u>

I hereby certify that on November 25, 2024, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing and effectuate service to all counsel of record in this matter, pursuant to Local Rule 5.1.

I further certify that this Motion has been prepared with one of the fonts and point selections approved by the Court in Local Rule 5.1(C).

*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson

*Interim Co-Lead Class Counsel*